## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY ASARO, and**<br>**LORI DRING,**<br><br>        Plaintiffs<br>**v.**<br><br>**ROBERT J. CLAUSS,**<br>**THEODORE E. MALAKIN, III,**<br>**JEFFREY BARONE,**<br>**MARILEE BARONE, and**<br>**GENEVIEVE GUTT SAYLOR,**<br><br>                Defendants. | CIVIL ACTION<br>NO.:<br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' COMPLAINT

NOW COME Plaintiffs, LORI DRING and NANCY ASARO, by and through their counsel, Philip A. Davolos, III, Esquire, of Davolos Law Group, and Howard A. Rothenberg, Esquire, and Ryan P. Campbell, Esquire, of Rothenberg & Campbell, and hereby state the following:

### PRELIMINARY STATEMENT

1.      Through the within action, Plaintiffs, Nancy Asaro and Lori Dring (collectively "Plaintiffs" or "Asaro/Dring"), seek not only compensation, and the protection and acknowledgement of property rights, but also finality.

2.      Reluctant though they may be to engage in further litigation, Plaintiffs are left with no choice but to seek finality through this Honorable Court.

1

3.    Plaintiffs are left with no choice but to bring this action because of Defendants' conduct, and to a large extent the conduct of non-party Ariel Land Owners, Inc. ("ALO").

4.    Plaintiffs in this action are two sisters, Nancy Asaro and Lori Dring, who jointly own land that shares a common property boundary with the lake known as Lake Ariel situated in Lake Township, Pennsylvania.[1]

5.    Plaintiffs are the owners in fee of in excess of eighty-nine (89) acres of land, in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania. The majority of Plaintiffs' land is situated near the southwest boundary of Lake Ariel.

6.    In addition, Plaintiffs own a contiguous parcel of land that is referred to in this Complaint as the "West Shore Parcel." The West Shore Parcel is a 1.92

---

[1] "Lake Ariel" is comprised of two bodies of water connected by a channel. The larger body of water is called Lake Ariel, formerly called Jones Pond, and the smaller body of water is known as Mud Pond. Collectively, these two connected bodies of water make up what is technically considered to be "Lake Ariel." Plaintiffs own land with a common property boundary along parts of both Mud Pond and Lake Ariel. Attached hereto as Exhibit "A" is a high-altitude photograph taken of Lake Ariel and the surrounding area. Though not to scale, the blue line in this photograph shows the approximate location of the West Shore Parcel, defined below, over which the Defendants must cross to traverse directly from their respective lots to reach Lake Ariel. The area outlined in pink shows the eighty-six (86) acres owned by Plaintiffs along with lake frontage. The yellow outlined area shows the general area where the lake house purchased in 1985 by Plaintiffs' parents, Joseph Asaro and Elaine Asaro, is situated. (The yellow line is not intended to reflect any approximate property lines only to reflect the location of the lake house.)

acre parcel that is over a mile (5,800 ft) in length, and averages between fourteen (14) and fifteen (15) feet in width, but at its widest is approximately twenty-eight (28) feet wide and at its most narrow location is about five (5) feet wide.

7.     The West Shore Parcel shares a common property boundary with Lake Ariel. In fact, the boundaries of the West Shore Parcel were set by the elevation of the water level of Lake Ariel. Specifically, one boundary of the West Shore Parcel is the natural elevation of the water at lake Ariel, which is approximately 1,423.5 feet above sea level. This is the margin of the natural water line at Lake Ariel. Exhibit "A" and Exhibit "B" show the approximate location of the West Shore Parcel.

8.     Thus, Plaintiffs own land that is "lakefront" in that it shares a common property boundary with Lake Ariel.

9.     Defendants in this action are persons who claim possessory property rights in various dwellings and lots near Lake Ariel in Lake Township, Pennsylvania. Defendants are "leaseholders" who lease lots near the western shore of Lake Ariel. Defendants are part of a much larger group of similarly situated leaseholders with leases for lots along western edge of West Shore Drive in Lake Township, Pennsylvania.

10.     Defendants hold leases for lots that are separated from Lake Ariel, first by land owned by ALO, including a private road referred to as West Shore Drive,

then by land owned by ALO to the east of West Shore Drive (i.e., the berm of West Shore Drive), and then by the West Shore Parcel, which is owned in fee by Plaintiffs.

11.    The West Shore Parcel is situated such that Defendants cannot walk directly from the margins of their respective leased lots to Lake Ariel without physically crossing over the West Shore Parcel.

12.    Thus, Defendants' respective leased lots are not "lakefront" in that Defendants' respective leased lots do not share a common property boundary with Lake Ariel, and more importantly, Defendants cannot access Lake Ariel via the most direct course from the margin of their respective leased lots without first crossing over property owned in fee by Plaintiffs.

13.    Defendants' respective leased lots do not border, touch or share a common property boundary with Plaintiffs' lakefront property, i.e., the West Shore Parcel.

14.    For Defendants to traverse directly and unimpeded from the margins of their respective leased lots to the waters of Lake Ariel, Defendants must first cross land owned by ALO, including West Shore Drive, and then continue across land owned by Plaintiffs, and then continue again on to land owned by ALO and/or the waters of Lake Ariel.

15.    Defendants and/or those associated with Defendants trespass on Plaintiffs' property by crossing over it in order to take the most direct path of travel

4

from Defendants' respective leased lots to Lake Ariel. To be completely clear, there are other means of access for the Defendants to reach the waters of Lake Ariel without traversing over and trespassing on the land owned in fee by Plaintiffs. Defendants could access Lake Ariel without ever touching Plaintiffs' property if they simply walked a little further. Every Defendant could access Lake Ariel by staying on ALO's property and going around Plaintiffs' property to reach the lake.

16.    Moreover, certain Defendants have constructed structures and/or docks on, in and about Plaintiffs' lakefront property – without the consent or permission of Plaintiffs and in violation of Plaintiffs' property rights. There are other locations on the shores of Lake Ariel where Defendants could locate docks and/or boathouses without constructing or maintaining same on Plaintiffs' property.

17.    As set forth in greater detail below, Plaintiffs are at risk and their rights are being violated by the conduct of Defendants.

18.    Plaintiffs pay taxes on their lakefront real property, and Plaintiffs carry liability insurance to insure against injuries that may occur on their lakefront property. Yet, Defendants continue to use and occupy that lakefront property, without permission, and without any legally cognizable right to do so.

19.    Worse yet, Defendants' conduct makes clear that they do not own, and they do not claim to own, the land that they use/traverse to take the most direct path from their respective leased lots to Lake Ariel. Defendants' conduct makes clear that

they do not own, and they do not claim to own, the land on which they have constructed docks/boathouses. This is evident because, *inter alia*, upon information and belief Defendants make payments to ALO for ingress, egress, and access to Lake Ariel and for ALO's "permission" to maintain docks/boathouses on the margin of Lake Ariel, i.e., on the West Shore Parcel. Obviously, Defendants cannot claim to own, nor can they adversely possess, nor can they claim prescriptive rights against, land that they pay a third-party to use. The problem is that Defendants are paying ALO to use property that belongs to Plaintiffs.[2] Moreover, by agreement in April 2019, the Defendants and/or their predecessors in interest and/or "title" expressly stated, agreed, and acknowledged that Plaintiffs own the West Shore Parcel. Finally, set forth in greater detail below, this Honorable Court has repeatedly held that Plaintiffs own the West Shore Parcel.

20.    Plaintiffs bring three counts: (1) Trespass; (2) Ejectment; and (3) Declaratory Judgment and Injunctive Relief. Plaintiffs bring claims for trespasses over the West Shore Parcel that occurred on or after April 1, 2019, and Plaintiffs bring claims for continuing trespass commenced before or after April 1, 2019.

<u>PARTIES</u>

---

[2] In the case of Defendant Robert J. Clauss, ALO forced him to pay $15,000.00 for alleged failure to pay prior fees, and as a condition for his continued to access Lake Ariel.

*Plaintiffs*[3]

21.    The Plaintiff, Nancy Asaro, is an individual residing at 28 Trenton Terrace, Wayne, New Jersey, and is a resident and citizen of the State of New Jersey.

22.    The Plaintiff, Lori Dring, is an adult individual residing at 29 Sleepy Hollow Drive, Oak Ridge, New Jersey 07438, and is a resident and citizen of the State of New Jersey.

*Defendants*

23.    The Defendant, Robert J. Clauss, is upon information and belief an adult individual, and a resident and citizen of the Commonwealth of Pennsylvania, with an address located at 108 West Shore Drive, Lake Ariel, Pennsylvania 18436; and claims an interest in certain real property near the western shore of Lake Ariel, through the recorded documents attached hereto as Exhibit "C", and with street address of 108 West Shore Drive, Lake Ariel, PA 18436. ("Clauss Interest"). Attached hereto as Exhibit "D-1" is a satellite image depicting the location of and area surrounding 108 West Shore Drive. Attached hereto as Exhibit "D-2" is a Landgrid prepared by Loveland Technologies that shows the location of the Clauss

---

[3] Attached hereto as Exhibit "A" is a high-altitude photograph taken of Lake Ariel and the surrounding area. The explanation for the colored highlighting in Exhibit "A" is provided in the preceding footnote. Attached hereto as Exhibit "B" is a reproduction of a "Location Plan" provided for illustrative purposes only that also shows the location of the West Shore Parcel, described in greater detail below, owned in fee by Plaintiffs.

interest and additional information. Exhibit "D-1" and Exhibit "D-2" are for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

24.     The Defendant, Theodore E. Malakin, III, is upon information and belief an adult individual, and a resident and citizen of Pennsylvania, with an address located at 1320 Lake Ariel Highway, Lake Ariel, PA 18436-9438; and claims an interest in certain real property near the western shore of Lake Ariel, through the recorded documents attached hereto as Exhibit "E", and with street address of 1320 Lake Ariel Highway, Lake Ariel, PA 18436-9438 ("Malakin Interest"). Attached hereto as Exhibit "F" are satellite images depicting the location of and area surrounding 1320 Lake Ariel Highway. Exhibit "F" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

25.     The Defendant, Jeffrey Barone, is upon information and belief an adult individual, and a resident and citizen of Pennsylvania, with an address located at 421 Foote Street, Dunmore, PA 18512; and claims an interest in certain real property near the western shore of Lake Ariel, through the recorded documents attached hereto as Exhibit "G", and with street address of 248 West Shore Drive, Lake Ariel, PA 18463 ("Barone Interest"). Attached hereto as Exhibit "H" are satellite images and a Landgrid Data Sheet depicting the location of and area surrounding 248 West

Shore Drive. Exhibit "H" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

26.     The Defendant, Marilee Barone, is upon information and belief an adult individual, and a resident and citizen of Pennsylvania, with an address located at 421 Foote Street, Dunmore, PA 18512; and claims an interest in certain real property near the western shore of Lake Ariel, through the recorded documents attached hereto as Exhibit "G", and with street address of 248 West Shore Drive, Lake Ariel, PA 18463 ("Barone Interest"). Attached hereto as Exhibit "H" are satellite images and a Land Grid Data Sheet depicting the location of and area surrounding 248 West Shore Drive. Exhibit "H" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

27.     The Defendant, Genevieve G. Saylor, is upon information and belief an adult individual, and a resident and citizen of Pennsylvania, with an address located at  830 West Montgomery Ave., Apartment 114, Bryn Mawr, Pennsylvania 19010; and claims an interest in certain real property near the western shore of Lake Ariel, through the recorded documents attached hereto as Exhibit "I", and with street address of 1328 Lake Ariel Highway, Lake Ariel, Pennsylvania, 18436 ("Saylor Interest"). Attached hereto as Exhibit "J" are satellite images depicting the location

of and area surrounding 1328 Lake Ariel Highway. Exhibit "J" is for illustrative purposes only and the content therein is not adopted as accurate as to boundaries or rights associated with the specific properties described or depicted.

## JURISDICTION

28.     This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties, and the amount in controversy, which exceeds seventy-five thousand dollars ($75,000.00) as against each Defendant.

29.     The Plaintiffs reside and are domiciled in New Jersey. The Defendants, upon information and belief, each reside in or are domiciled in a state other than New Jersey and thus the parties are completely diverse.

## BACKGROUND AND GENERAL FACTS

30.     For over one hundred fifty (150) years people have been making their way to the Pocono Mountains region of Northeastern Pennsylvania to enjoy the beautiful waters of Lake Ariel. Lake Ariel is a natural, deep, spring-fed lake with a long, rich history as a resort area.

31.     Lake Ariel is less than twenty (20) miles from Scranton, and the lake was and is one of the most desirable locations for summer, lake homes in Northeastern Pennsylvania.

32.     In or about 1964, ALO through various transactions claimed ownership of Lake Ariel and certain adjacent property. Today, the waters of Lake Ariel remain under the private control of ALO, which is a for-profit entity.

33.     The Plaintiffs began visiting Lake Ariel as young adults in or about early 1985.

34.     Lake Ariel is a special place. Lake Ariel is a place for which Plaintiffs have deep fondness, and where they experienced a lifetime of memories.

35.     Indeed, it is impossible to tell the story of Nancy Asaro and Lori Dring and their family without including their love for Lake Ariel, the community, and the many friendships and positive relationships that they cultivated there over the years.

36.     Likewise, it would not be possible to explain the history of the last thirty (30) years at Lake Ariel without reference to Nancy, Lori, and the Asaro family.

37.     Unfortunately, not all the experiences at Lake Ariel have been positive for the Asaros.

38.     The instant suit involves property rights to a parcel of land owned in fee by Plaintiffs. That parcel, the West Shore Parcel, was at times past referred to as "the Strip" and "the snake property." However, it is anything but a mere strip. Rather, the West Shore Parcel is substantial in area and width. The West Shore Parcel consists of nearly two (2) acres; stretches for over a mile; and averages between 14 and 15 feet in width. The shape of the West Shore Parcel or its

boundaries are set by reference to the elevation of the historical high and low water marks on Lake Ariel.

39.     This lawsuit is the culmination of many years of litigation, during which Plaintiffs Asaro and Dring were repeatedly sued by ALO because of Plaintiffs' attempts to gain access to Lake Ariel and ALO's attempts to deny Plaintiffs access to the lake.

40.     For decades, ALO engaged in litigation against Plaintiffs because Plaintiffs defended their rights to use and enjoy their land and opposed ALO's unilateral and arbitrary denial of access to the lake or attempts to restrict Plaintiffs' use and enjoyment of their property.

41.     ALO has engaged in decades of litigation against Plaintiffs. Upon information and belief, ALO funded this relentless litigation with the fees and dues it collected in exchange for access to Lake Ariel. ALO sells or leases lake access for an annual fee and charges fees to those with nearby property for the use of docks, boathouses, and boats on Lake Ariel.

42.     Indeed, though not a defendant in this litigation, ALO's conduct is culpable. However, it is the Defendants' continued actions that left Plaintiffs no choice but to protect their interests through this litigation.

43.    The named Defendants in this action are part of a larger group of individuals who claim a possessory, if not ownership, interest in properties that are situated to the west of West Shore Drive near Lake Ariel.[4]

44.    Over the decades, ALO repeatedly organized, funded, and instigated lawsuits against Dring/Asaro brought in the name of certain leaseholders with interests in leased lots along West Shore Drive. In the various lawsuits, the leaseholders were represented jointly by counsel for ALO.

45.    ALO has, upon information and belief, dedicated funds collected from Defendants (and others who pay ALO for access to the lake) to pay legal fees rather than maintain Lake Ariel.

46.    Upon further information and belief, fees and/or funds collected from Defendants (and more generally those who pay for access to the lake) were to be used primarily, if not exclusively, for the maintenance and upkeep of Lake Ariel.

47.    Upon information and belief, the truth of Plaintiffs' intentions for their land never reached Defendants, those with lots on the West Shore, or the Lake Ariel community generally, because the litigation with ALO hindered the Plaintiffs' ability to communicate with the Lake Ariel community.

---

[4] It should be noted here that Defendants lease their respective lots and do not own their lots that border West Shore Drive in fee. Defendants largely claim their interests in the lots in the form of leasehold interests and not outright ownership.

48.     Upon information and belief, ALO controlled the flow of information concerning litigation and skewed that information to suggest that Plaintiffs intended to develop their property in a harmful manner that would overcrowd and diminish the waters of Lake Ariel. Nothing could be further from the truth. Plaintiffs first began visiting Lake Ariel in 1985 when they were just young adults. Plaintiffs love the lake and have strong friendships with numerous other families who live near or own property at Lake Ariel.

49.     On December 11, 1984, Nancy and Lori's parents Joseph and Elaine Asaro purchased a summer home near the lake. The parcel purchased by Joseph and Elaine Asaro is not part of the property that is the subject of the instant litigation. See Exhibit "A" generally for an overview of the location of Joe and Elaine Asaro's lake house.

50.     Joe and Elaine Asaro owned a home at Lake Ariel from 1984 until their unfortunate and untimely passing in August 2020. Over the course of more than thirty (30) years, Joe and Elaine Asaro made renovations and continuously improved their home.

51.     For about the first five (5) years things went well. The Asaro family enjoyed the lake house and regularly used Lake Ariel for recreational activities such

as boating, etc. However, in or about 1989-1990, ALO sought to limit Joe and Elaine

Asaro's use of, and direct access to, Lake Ariel through their adjoining property.[5]

52.    Joseph and Elaine Asaro were sued for the first, and not the last, time

by ALO. This foretold of the struggles to come.

53.    The litigation between ALO and Joe and Elaine Asaro resolved with an

October 1990 ***recorded*** settlement agreement.

54.    Following the resolution of that litigation the Asaros became very

involved in the community.

55.    At one time Joseph Asaro was even a member of the governing body

of ALO (the ALO Board).

56.    Joseph and Elaine Asaro did many things as active members of the Lake

Ariel community, such as contributing to the annual 4th of July fireworks display,

and the annual children's fishing derby, as well as participating in the annual boat

parade.

---

[5] In addition to being sued by ALO, in the summer of 1990 the Asaros experienced
the arbitrary aggression of ALO and its management for the first time. While
enjoying the lake as they normally did, on their family boat, all four (4) of the Asaros
were accosted by the then lake manager, who pulled his boat alongside theirs and
through a bullhorn shouted – "YOU ARE TRESPASSING ON THE LAKE AND
MUST LEAVE IMMEDIATELY."  Attached here to as Exhibit "K" is a letter from
Joseph and Elaine Asaro to all ALO shareholders concerning the 1989 litigation that
was settled in 1990. In addition, attached hereto as Exhibit "L" is a letter from the
ALO's former attorney attempting to justify why both he and the ALO Board
previously refused to explain the litigation with the Asaros as requested by numerous
ALO shareholders and members of the community.

57.    Concerned for the environmental health of the lake generally, Joe Asaro successfully persuaded ALO to stop using oil on the dirt roads near Lake Ariel in favor of more environmentally friendly crushed rock.

58.    However, this period of relative harmony did not last. Joe Asaro did not care for the way that ALO was managed and ceased his involvement with the ALO Board in the late 1990s.

59.    Specifically, Mr. Asaro felt that the ALO Board was unfair to some neighbors, while treating others more favorably or preferentially.

60.    By way of example, upon information and belief, in one instance a leaseholder in her seventies put her home and lot up for sale and the ALO stripped her lot of any associated rights of use or access to Lake Ariel. Upon information and belief, this diminished the value of her property.

<u>PLAINTIFFS PURCHASE PROPERTY AND ALO SUES</u>

61.    In 1996, Plaintiffs purchased in excess of fifty-two (52) acres that adjoin Lake Ariel and/or Mud Pond, and in 2001, Plaintiffs purchased an additional thirty-four (34) acres, and finally, later in 2001, Plaintiffs purchased an additional 1.9 acres (the West Shore Parcel). Today, Plaintiffs' combined properties total in excess of eighty-nine (89) acres that abut and share a common property boundary of over 5,800 feet with the waters of Lake Ariel and Mud Pond.

62.     In 1999, ALO sued Plaintiffs in the Wayne County Court of Common Pleas to, *inter alia*, attempt to prevent Plaintiffs from accessing the waters of Lake Ariel from their property. That action was styled: *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 188-C-1999 (Wayne Co. CP)("Original Action"), and was ultimately removed to the United States District Court for the Middle District of Pennsylvania on February 15, 2001, and became styled *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 3:01-cv-00294-ARC ("Dring I").[6]

63.     Following the commencement and removal of the Original Action, in 2001, Plaintiffs purchased the West Shore Parcel, which as set forth above is a 1.92 acre parcel that is over a mile (5,800 ft) in length, and averages between fourteen (14) and fifteen (15) feet in width, but at its widest is approximately twenty-eight (28) feet wide and at its most narrow location is about five (5) feet wide.[7]

64.     The West Shore Parcel shares a common property boundary with Lake Ariel for a long distance, and Defendants in this action, and others similarly situated,

---

[6] As set forth in greater detail below, ALO caused a group of neighbors with leasehold interests in lots along West Shore Drive to sue Dring/Asaro in a second, separate state court action. That action was stayed by this Court and the claims and defenses in that second state court action were consolidated into Dring I, as those leaseholders were added as counterclaim defendants in Dring I.

[7] The West Shore Parcel is the property at the center of this suit commenced in 2025, because, *inter alia*, Defendants in this action cross the West Shore Parcel in order to traverse from their respective leasehold properties to the lake. Defendants could go around the West Shore Parcel and access the lake without entering or touching Plaintiffs' property.

cross the West Shore Parcel in order to traverse unimpeded on the <u>most direct</u> path from the margin of their respective leasehold lots to the waters of Lake Ariel.

65.     ALO organized a group of seventy-one (71) leaseholders  with leasehold interests in lots along West Shore Drive to commence a second state court action in the Wayne County Court of Common Pleas against, *inter alia*, Plaintiffs on June 19, 2002, and that matter was styled:  *Ariel Land Owners, Inc., et al v. Nancy Asaro, et al.*, 248-CV-2002 (Wayne Co. CP) ("Second Action").  Thereafter, following significant motion practice the Second Action was stayed by this Honorable Court with Order dated August 2, 2004. See, *Ariel Land Owners, Inc. v. Lori Dring*, 3:01-cv-00294-ARC, Doc. 96 (Memo. Op and Order August 2, 2004, Caputo, J).

66.     As a result of Judge Caputo's Order of August 2, 2004, Dring/Asaro were permitted to amend their Counterclaim in <u>Dring I</u> and to join the so-called "property owners" (i.e., plaintiffs in the Second Action with leasehold interests in lots on West Shore Drive) as new counterclaim defendants in <u>Dring I</u>.

67.     Thereafter, following the removal of the Original Action, and the stay of the Second Action, the claims and defenses of (1) ALO as plaintiff/counterclaim defendant, (2) the so-called "property owners" as counterclaim defendants, and (3) Dring/Asaro as defendants/counterclaim plaintiffs were consolidated and  litigated in <u>Dring I</u>. Following consolidation <u>Dring I</u> was styled: *Ariel Land Owners, Inc. v.*

*Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., Karl R. Iffland and Alice L. Iffland, et al.*, Docket No.: 3:01-cv-00294-ARC.

68.    Thus, in <u>Dring I</u>, following consolidation, Dring/Asaro became defendants/counterclaim plaintiffs against ALO and about seventy (70) so-called "property owners". In <u>Dring I</u> the counterclaim defendants, and so-called "property owners," sought prescriptive rights/easements over the West Shore Parcel. On April 5, 2005, Dring/Asaro filed their Third Amended Counterclaim in <u>Dring I</u>. The Third Amended Counterclaim included Count V against the so-called "property owners" for, *inter alia*, trespass over the West Shore Parcel.  Count V of the Third Amended Counterclaim included, *inter alia*, the following:

> 61. Additionally, the PROPERTY OWNERS have wrongfully possessed, traversed and/or constructed structures upon the [West Shore Parcel] owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] without the permission of Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] or their predecessors in title. Such action on the part of the PROPERTY OWNERS constitutes a continuing wrongful trespass upon the lands owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring].

> 62. Moreover, upon information and belief, some of the PROPERTY OWNERS described herein have wrongfully trespassed upon the lands owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring] without any lease, assignment or agreement between the PROPERTY OWNER and Plaintiff. Such action on the part of the PROPERTY OWNER constitutes a wrongful trespass upon the property owned in fee by Counterclaim Plaintiffs [Nancy Asaro and Lori Dring].

See Third Amended Counterclaim filed April 5, 2005, in Dring I, *Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc., Karl R. Iffland and Alice L. Iffland, et al.*, Docket No.: 3:01-cv-00294-ARC at Doc. 156 Pg. 33 of 36.

69.    Thereafter on April 22, 2005, the counterclaim defendants in Dring I filed an Answer with Affirmative Defenses to the Third Amended Counterclaim. The Answer with Affirmative Defenses to the Third Amended Counterclaim included, *inter alia*, the following on behalf of the so-called "property owner" counterclaim defendants:

> 75. The Property Owners have adversely, openly, notoriously, continuously and uninterruptedly possessed, traversed and constructed structures on the property described in the Wells and RPI Deeds and, therefore, have a prescriptive easement to continue to do so.

See, Dring I, Docket No.: 3:01-cv-00294-ARC at Doc. 162, Answer and With Affirmative Defenses to Third Amended Counterclaim filed April 22, 2005.

70.    The Defendants in this action do not have prescriptive rights, easements, and/or rights of any kind to use or occupy the West Shore Parcel. Though the counterclaims in Dring I as against the so-called "property owners" were never litigated to conclusion, the Dring I counterclaim defendants then, and the Defendants now, have no claim of right to use or occupy the West Shore Parcel that is owned in fee by Dring/Asaro.

71.    Ultimately, the claims and/or defenses raised in <u>Dring I</u> by the so-called "property owner" counterclaim defendants were released forever. (Of the Defendants in this matter, only Defendant Clauss, and Defendant Saylor were parties to, and counterclaim defendants in, <u>Dring I</u>.)

72.    Prior to the conclusion of the bench trial in <u>Dring I</u>, on or about August 28, 2006, (1) the <u>Dring I</u> counterclaim defendants, i.e., the so-called "property owners", and (2) the <u>Dring I</u> defendants/counterclaim plaintiffs, Lori Dring and Nancy Asaro, and (3) the <u>Dring I</u> plaintiff/counterclaim defendant, ALO, all entered into a partial Settlement Agreement. Said agreement as amended in August 2007 is attached hereto as Exhibit "M" ("2006 Agreement").

73.    The <u>Dring I</u> so-called "property owner" counterclaim defendants, did not have and could not substantiate claims for prescriptive rights in the West Shore Parcel. Nevertheless, Dring/Asaro and the so-called "property owner" counterclaim defendants in <u>Dring I</u> sought to resolve their dispute as to *prior* trespass claims through the attached 2006 Agreement. This did not include any future claims or claims for continuing trespass.

74.    Even absent a release of any kind, the Defendants in this action, and the <u>Dring I</u> so-called "property owner" counterclaim defendants, cannot and could not have substantiated a claim for prescriptive rights of any kind as against the West Shore Parcel. With the 2006 Agreement – the <u>Dring I</u> so-called "property owner"

counterclaim defendants released and waived the right to bring any claims against Dring/Asaro for prescriptive rights or easements over the West Shore Parcel.[8]

75.    Unfortunately, ALO breached the 2006 Agreement because, *inter alia,* it did not actually have title to Cardinal Lane and therefore could not deliver to Asaro/Dring instruments in recordable form granting a permanent easement over Cardinal Lane as was required by ¶ 5 of the 2006 Agreement.[9] As part of the 2006 Agreement, ALO agreed, *inter alia*, to grant Asaro/Dring a permanent easement over a parcel of land know as Cardinal Lane. ALO even provided assurances that it owned Cardinal Lane as part of the 2006 Agreement. However, ALO did not own Cardinal Lane and could not fulfill its obligation to provide an easement over same in recordable form to Dring/Asaro.

76.    Ultimately, due to ALO's breach, the 2006 Agreement was the subject of further litigation in two matters before this Honorable Court: (1) *Gillespie, et al. v. Dring*, 3:15-cv-00950- ARC (commenced, May 15, 2015) ("Gillespie"); and (2) *Dring v. Ariel Land Owners, Inc.*, 3:15-cv-00478-ARC (commenced, March 10, 2015)("Dring II").

---

[8] The late Honorable A. Richard Caputo, United States District Judge ("Judge Caputo"), held that "[t]he release therefore bars the Property Owners' claims in Count Two of their Amended Complaint [for prescriptive easements], and judgment will be entered in Dring's favor." *Gillespie v. Dring*, 350 F.Supp.3d 333, 340 (M.D. Pa. 2018), *aff'd*, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).
[9] See*, Gillespie v. Dring*, 350 F.Supp.3d 333, 336 (M.D. Pa. 2018), *aff'd*, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

77.    The plaintiffs in Gillespie ("Gillespie Plaintiffs") were a group of over sixty (60) so-called "owners" (really leaseholders) of interests in lots on West Shore Drive. Some Gillespie Plaintiffs were Dring I counterclaim defendants and parties to the 2006 Agreement. Some Gillespie Plaintiffs were not parties to Dring I and were not parties to the 2006 Agreement but claimed to have rights under the 2006 Agreement.

78.    Gillespie Plaintiffs sued Dring/Asaro, *inter alia*, (1) to compel conveyance of written easements over the West Shore Parcel under the 2006 Agreement; and (2) alternatively for easements by prescription over the West Shore Parcel.[10]

79.    Dring/Asaro brought counterclaims for trespass in Gillespie. Dring/Asaro's counterclaims for trespass came nearly nine (9) years after the 2006 Agreement was signed, against, *inter alia*, four (4) of the five (5) Defendants in ***this*** action (specifically the two (2) Barone Defendants, and Defendant Clauss and Defendant Saylor). The Defendants **in this action** did not move to dismiss Dring/Asaro's 2015 trespass counterclaim based on the theory of release. The Defendants **in this action** did not move for summary judgment on Dring/Asaro's 2015 trespass counterclaim based on the theory of release. The Defendants **in this**

---

[10] Of the Defendants in this matter only Clauss and Saylor were parties to both Dring I and Gillespie.

**action** did not even raise release as an affirmative defense to the 2015 trespass counterclaim. See, Gillespie, Docket No.: 3:15-cv-950, Doc. 26, Answer of Plaintiffs Marjorie Gillespie, et al., to Counterclaim of Defendants, Lori Dring and Nancy Asaro filed December 29, 2015.

80.    On October 10, 2018, Judge Caputo granted summary judgment in favor of Dring/Asaro on all of Gillespie Plaintiffs' claims. *Gillespie v. Dring*, 350 F. Supp. 3d 333 (M.D. Pa. 2018). As a result, only Dring/Asaro's Counterclaim for Trespass remained unresolved, and Judge Caputo put the trial of Dring/Asaro's Trespass Counterclaim on the April 2019 Trial Calendar. [Gillespie, Docket No.: 3:15-cv-950, Doc. 110, Order of November 20, 2018, Caputo, J. – Denying Gillespie Plaintiffs' Motion for Reconsideration and placing trial of Counterclaim on April 2019 Trial List].

81.    On April 20, 2019, following months of negotiation, Gillespie Plaintiffs and Dring/Asaro entered into a partial settlement and release, as memorialized in an Agreement and Release ("2019 Agreement"). Attached hereto as Exhibit "V" is a copy of the 2019 Agreement.

82.    The 2019 Agreement was executed on April 20, 2019, six (6) months after Judge Caputo granted Dring/Asaro summary judgment on October 10, 2018. Thus, with the 2019 Agreement, Dring/Asaro and ***Gillespie Plaintiffs* agreed** to

dismissal of Dring/Asaro's Counterclaim for Trespass **_without prejudice_** [¶1], and further agreed to the following **partial** release:

> 2. **_Without releasing_** any of their claims for any **_continuing trespass_**, Dring and Asaro hereby release Plaintiffs for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur **_prior to April 1, 2019_**.

[Exhibit "V," 2019 Agreement ¶2]

83.     In exchange for the foregoing partial release, <u>Gillespie</u> Plaintiffs acknowledged Dring/Asaro's ownership of the West Shore Parcel [Exhibit "V" at ¶7] and <u>Gillespie</u> Plaintiffs further **_agreed_** that Dring/Asaro reserved the rights to pursue trespass claims against <u>Gillespie</u> Plaintiffs or **their successors-in-interest** or **successors-in-title** (Defendants in this action) for trespass over the West Shore Parcel committed _on or after April 1, 2019_, and to pursue any claims for any _continuing trespass_ which may have commenced _prior to April 1, 2019_. [Exhibit "V" at ¶3].

84.     Specifically, the 2019 Agreement states, in relevant part, the following:

> NOW THEREFORE, intending to be legally bound, **_[Gillespie] Plaintiffs_** and Dring and Asaro, through their respective counsel, **agree on the following**:
>
> […]
>
> 3. Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore [Parcel] that may be committed by [Gillespie] **Plaintiffs** or **their successors-in-interest** or **successors-in-title** _on or after_

*April 1, 2019*, and to pursue any claims for any *continuing trespass* which commenced *prior to that date*.

[Exhibit "V," 2019 Agreement ¶3, emphasis supplied].

85.    The 2019 Agreement expressly states that counsel for the parties have the authority to enter into the Agreement and Release on behalf of their respective clients. [Exhibit "V" at ¶12].[11] The 2019 Agreement also contains an integration clause – stating that it is the entire agreement and that it may only be amended by a signed writing. [Exhibit "V" at ¶ 11]. Finally, the 2019 Agreement states that "[t]he parties agree that the Release set forth in Paragraph 2, above, shall not be effective unless and until the Court approves the Stipulated Order attached hereto as Exhibit 'A'." [Id ¶13].

86.    The release of only pre-April 1, 2019, trespass claims (specifically not releasing pre-April 1, 2019 claims for continuing trespass) as described in ¶ 2 of the 2019 Agreement only became effective on April 23, 2019, when Judge Caputo entered an Order in <u>Gillespie</u> that approved the proposed stipulated order – and thereby dismissed Dring/Asaro's Counterclaim without prejudice and permitted Dring/Asaro to file an application for Attorneys' Fees within thirty (30) days.

---

[11] Importantly, the 2019 Agreement is signed by the exact same attorneys who signed the 2006 Agreement. The late Michael Profita, Esquire, signed both agreements for Dring/Asaro. Joseph A. O'Brien, Esquire, signed both the 2006 Agreement and the 2019 Agreement on behalf of his clients.

[Gillespie, Docket No.: 3:15-cv-950, Doc. 114, Order signed by Judge Caputo 04/23/2019, attached hereto as Exhibit "W"].

87.    The 2019 Agreement specifically reserves and does not release continuing trespass claims. Moreover, it is simply not plausible, in the context of the subsequent 2019 Agreement, to read the 2006 Agreement as either: (a) a release future claims for trespass, or (b) as intended to release future claims for trespass. The 2019 Agreement and the 2006 Agreement were negotiated and signed by the same attorneys.

88.    Under no circumstances would anyone who believed themselves released from all future trespass claims in 2006 ever enter into a subsequent agreement expressly reserving the rights in an acknowledged landowner to pursue future claims for trespass that occur after April 1, 2019, and/or to pursue all continuing trespass claims that began prior to April 1, 2019. The 2019 Agreement is a clear and unequivocal manifestation of the understating of Dring/Asaro and Gillespie Plaintiffs that the 2006 Agreement only released Dring/Asaro's prior and not future claims for trespass and that the 2006 Agreement did not release any claims for continuing trespass.

89.    On June 13, 2019, Dring/Asaro filed their motion for attorney's fees as prevailing parties in Gillespie. [Gillespie, Docket No.: 3:15-cv-950, Doc. 119-121,

Motion, Proposed Order, and Brief in Support of Motion for Attorneys' Fees, filed on June 13, 2019.]

90.    In August 2019, Gillespie Plaintiffs (which includes Defendants Clauss, Barone, and Saylor, who are Defendants in this litigation) attached the 2019 Agreement and relied on the 2019 Agreement in their briefing in opposition to Dring/Asaro's Motion for Attorneys' Fees. On August 1, 2019, Gillespie Plaintiffs filed a Brief in Opposition [Gillespie, Docket No.: 3:15-cv-950, Doc. 128] to Dring/Asaro's Motion for Attorneys' Fees. Gillespie Plaintiffs attached the 2006 Agreement as an Exhibit to their Opposition at Doc. 128-1. **Gillespie Plaintiffs attached the 2019 Agreement as an Exhibit to their Opposition at Doc. 128-2.** [Gillespie, Docket No.: 3:15-cv-950, Doc. 128-1 and 128-2.] Gillespie Plaintiffs' Brief in Opposition to Dring/Asaro's Motion for Attorneys' Fees, expressly states that the 2019 Agreement only released claims for trespass (not continuing trespass) that occurred before April 1, 2019. [Gillespie Plaintiffs' Brief in Opposition to Dring/Asaro's Motion for Attorneys' Fees, Gillespie, Docket No.: 3:15-cv-950, Doc. 128 at p. 10 of 35, filed on August 1, 2019, is attached hereto as Exhibit "X".] **This is a direct admission by Defendants.**[12]

---

[12] Importantly, the 2019 Agreement actually preserves both past and future claims, because it was signed on April 20, 2019, did not become effective until April 23, 2019, and only releases claims for trespass (not continuing trespass) up to April 1, 2019 – so there are 22 days (between April 1, 2019 and April 23, 2019) of past trespass claims that are also not released under the 2019 Agreement.

91.     This Honorable Court held that <u>Gillespie</u> Plaintiffs were without the ability to bring prescriptive claims against the Plaintiffs' ownership of the West Shore Parcel. This was determined by the late Honorable A. Richard Caputo, United States District Judge, with an opinion entered on October 10, 2018, "The release therefore bars the Property Owners' claims in Count Two of their Amended Complaint [for prescriptive easements], and judgment will be entered in Dring's favor." *Gillespie v. Dring*, 350 F.Supp.3d 333, 340 (M.D. Pa. 2018), aff'd, 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

92.     Judge Caputo's October 10, 2018, Opinion was upheld by the Third Circuit on appeal, where the appellate court held as follows:

> While the Property Owners appeal to the principles of equity, *Gillespie* Reply Br. 18–19, we cannot, as Judge Caputo succinctly explained, "rewrite the agreement to shift the forfeiture from the Property Owners to Dring when ALO is the only party in breach." *Gillespie* App. 6. Because there is no disputed issue of material fact that Dring's obligation to grant the Property Owners an easement over the West Shore Strip was contingent on ALO's performance, we will affirm. FN7
>
> FN7 Conceding that this argument was forfeited because it was not raised below, the Property Owners nevertheless ask us to hold, for the first time on appeal, that the Settlement Agreement grants them an easement over the West Shore Strip as a matter of law. *See Gillespie* Reply Br. 5–9. We decline to consider this because no "exceptional circumstance[]" requires us to consider this otherwise forfeited argument. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). While we agree with the District Court that the

plain language of the Settlement Agreement released the Property Owners' prescriptive easement claim, *see Gillespie App. 88*, the District Court was never asked to consider, nor did it decide, whether Dring, in the Settlement Agreement, released future trespass claims against the Property Owners. ***See Gillespie App. 6–9***. <u>***We leave it for a trial court to consider these issues in the first instance.***</u>

*Gillespie v. Dring*, 19-2073, 2022 WL 1741888, at *4 (3d Cir. May 31, 2022) (emphasis supplied).

93.     Based on the foregoing, and as set forth in greater detail below, it is clear that <u>Gillespie</u> Plaintiffs and the Defendants in this matter do not have a right by chain of title or deed to use or occupy the West Shore Parcel. The ALO does not have title to the West Shore Parcel. The Defendants in this case cannot claim prescriptive rights to use or occupy the West Shore Parcel. Moreover, the claims for prescriptive rights or easements by the <u>Dring I</u> counterclaim defendants, and <u>Gillespie</u> Plaintiffs, as a group, were released by the 2006 Agreement.

94.     Defendants' conduct and the conduct of their predecessors-in-interest and their predecessors-in-title, exposes their absolute understanding that Dring/Asaro did not release future claims with the 2006 Agreement. Not only is this evident by the 2019 Agreement, but also by the subsequent conduct of the Defendants and their predecessors-in-interest and their predecessors-in-title, i.e., <u>Gillespie</u> Plaintiffs.

95.    On October 17, 2019, Judge Caputo awarded Dring/Asaro $282,383.93, in attorneys' fees as prevailing parties under Paragraph 14 of the 2006 Agreement. [Order Awarding Attorneys' Fees, <u>Gillespie</u>, Docket No.: 3:15-cv-950, Doc. 136, entered October 17, 2019.]

96.    On November 5, 2019, Attorney O'Brien, on behalf of <u>Gillespie</u> Plaintiffs, filed a Notice of Appeal of the award of attorneys' fees. [Notice of Appeal, <u>Gillespie</u>, Docket No.: 3:15-cv-950, Doc. 137, entered November 5, 2019.]

97.    On November 26, 2019, Attorney O'Brien sent a letter, and litigation update, generically addressed to "Dear Lake Residents," that states in part, the following:

> Unfortunately, and as we previously informed you, we were not so successful in the lawsuit instituted [against] Dring and Asaro [by] the West Shore Property Owners. **In that case, Judge Caputo decided in favor of Dring and Asaro concluding that the West Shore Property Owners do not have rights to access Lake Ariel over the west shore strip.**

[Letter and Litigation Update to Lake Residents from Attorney O'Brien, dated November 26, 2019, is attached hereto as Exhibit "Y".] Attorney O'Brien's November 26, 2019, letter to the lake community was in the aftermath of the attorneys' fee award.

98.    The foregoing is an unequivocal admission by Defendants through their attorney of exactly what they and everyone else involved with the <u>Gillespie</u> litigation

understood to be the result of Judge Caputo's October 10, 2018, Opinion and Order granting summary judgment to Dring/Asaro. Likewise, the foregoing explains, in part, why <u>Gillespie</u> Plaintiffs were willing to and did enter into the 2019 Agreement which specifically reserves and preserves the claims of Dring/Asaro and releases only certain claims accrued prior to April 1, 2019.

99.     Paragraph 7 of the 2019 Agreement expressly states that Dring/Asaro own the West Shore Parcel and that any construction on the West Shore Parcel by <u>Gillespie</u> Plaintiffs or their successors-in-interest or successors-in-title is at their own risk.

100.    Attorney O'Brien also represented the ALO before and after the execution of the 2019 Agreement. Following the execution of the 2019 Agreement, as of March 2021, the ALO's own building permit type form for permission from ALO to build docks or boathouses on the margin of Lake Ariel tracked the language of the 2019 Agreement. Specifically, the ALO's form bearing the heading: "Approval Notice for Lake Front Improvements" states that Lori Dring and Nancy Asaro own the West Shore Parcel, and further states that those who build in the area of the West Shore Parcel proceed at their own risk. This form issued by ALO is (pseudo) governmental in appearance, and states the following on the bottom of the first page, in bold, underlined and italicized, text:

- ***<u>West Shore Property Owners are advised that Lori Dring and Nancy Asaro are the owners of a strip of land along the west shore of Lake</u>***

> ***Ariel between the high water mark and the natural margin of the lake.
> Any construction within that area is subject to approval of Dring and
> Asaro. Without such approval, property owners are proceeding at their
> own risk.***

See Exhibit "N" attached hereto – March 6, 2021 ALO Form.[13]

101.   The 2006 Agreement did not release the claims that Plaintiffs bring in
this action. The 2019 Agreement expressly preserves and reserves to Dring/Asaro
the claims that Plaintiffs bring in this action.

102.   While there was no release of future claims by Dring/Asaro in the 2006
Agreement, Plaintiffs plead in the alternative, without conceding any such release,
that Dring/Asaro's claims for continuing trespass beginning at any time and claims
for trespass over the West Shore Parcel on or after April 1, 2019 were expressly
acknowledged and revived by the 2019 Agreement.

103.   Defendants are estopped from arguing or asserting that the 2006
Agreement released the claims that Dring/Asaro bring in this matter. Defendants
have waived the argument that the 2006 Agreement released the claims that
Dring/Asaro bring in the instant litigation.

---

[13] The full scope of Dring/Asaro's ownership of the West Shore Parcel is not
completely captured by the description in the ALO form attached as Exhibit "N."
Reference here is intended only to show that even ALO acknowledges that Dring
Asaro own the West Shore Parcel in fee, the description of the West Shore Parcel in
the form is not adopted or incorporated by reference. Rather, it is provided only to
show that even the ALO acknowledges Plaintiffs' ownership in fee, etc., and that the
building permit tracks the language of the 2019 Agreement.

104.    Sadly, in March 2020, Judge Caputo passed away. <u>Gillespie</u> was reassigned to the Honorable Matthew W. Brann on March 23, 2020. Thereafter, <u>Gillespie</u> Plaintiffs added two new attorneys to their legal team who, between October 2020 and October 2021, sought to have the entire <u>Gillespie</u> matter dismissed and treated as a nullity on jurisdictional grounds. This effort by <u>Gillespie</u> Plaintiffs failed on October 27, 2021. [See, *Gillespie v. Dring*, 3:15-CV-00950, 2021 WL 4989888, at *3 (M.D. Pa. Oct. 27, 2021), Docket No.: 3:15-CV-00950, Doc. 177-178, Opinion and Order entered October 27, 2021, Severing Non-Diverse Party and Denying Rule 60 Relief (Brann, J.)].

105.    However, <u>Gillespie</u> Plaintiffs' "Hail Mary" attempt to avoid Judge Caputo's October 10, 2018, Opinion and Order, which Attorney O'Brien described as a disastrous holding that: "the West Shore Property Owners [i.e., <u>Gillespie</u> Plaintiffs] do not have rights to access Lake Ariel over the west shore strip" is telling. As Judge Brann, noted:

> Now, a moment to discuss the somewhat unusual posture of this motion. More often, it is a plaintiff who seeks to invoke the Court's jurisdiction, and a defendant who tries to point out any defects. But here, it is the Plaintiffs who have brought the issue of diversity to my attention, and the Defendants who aim to preserve jurisdiction and Judge Caputo's rulings. It is not lost on the Court that finding no subject-matter jurisdiction would result in unwinding more than a half-decade of litigation and substantial investments of time and money.

*Gillespie v. Dring*, 3:15-CV-00950, 2021 WL 4989888, at *3 (M.D. Pa. Oct. 27, 2021).

106.    Gillespie Plaintiffs spent a year and hundreds, if not thousands, of hours of attorney time and related costs on a Rule 60 Motion seeking to nullify the prior six (6) years of litigation in Gillespie.

107.    Defendants, like Gillespie Plaintiffs, know that they have no right to use or occupy the West Shore Parcel. Gillespie Plaintiffs knew that the 2006 Agreement did not and does not bar Dring/Asaro from suing them for trespass, ejectment, or declaratory judgment, and that Gillespie Plaintiffs have no rights to use the West Shore Parcel. Elsewise, Gillespie Plaintiffs never would have invested so much time and so many resources in attempting to nullify Judge Caputo's Order granting summary judgment in favor of Dring/Asaro.

## THE LAND AND TITLE

108.    Plaintiffs own the West Shore Parcel in fee and that is not in dispute by the parties. For ease of reference attached hereto as Exhibit "A" is a high-altitude photograph showing Lake Ariel and the surrounding areas. Though not to scale, the blue line in this photograph shows the approximate location of the West Shore Parcel, of 1.92 acres. The area outlined in pink shows the over eighty-six (86) acres that are contiguous to the West Shore Parcel owned by Plaintiffs along with lake frontage. The yellow outlined area shows the general area where the lake house

purchased by Joe and Elaine Asaro in 1984 is situated. (The yellow line is not intended to reflect any approximate property lines only to reflect the location of the lake house.) Attached hereto as Exhibit "B" is a Location Plan drawing depicting the approximate location of the West Shore Parcel.

109.   Plaintiffs are the owners in fee of in excess of eighty-nine (89) acres of land in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania by virtue of two conveyances recorded in the Office of the Recorder of Deeds of Wayne County from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Nancy Asaro and Lori Dring, Grantees. The first conveyance of in excess of fifty-two (52) acres of land took place on or about September 13, 1996, which deed is recorded in Wayne County Deed Book 1176 at page 0197, et seq. and which deed is incorporated herein by reference, attached hereto, made a part hereof and marked as Exhibit "O". The second conveyance of in excess of thirty-four (34) acres of land took place on or about July 12, 2001, which deed is recorded in Wayne County Deed Book 1815, at Page 0149, et seq., a copy of which is incorporated herein by reference, attached hereto, made a part hereof and marked as Exhibit "P".

110.   The above parcels of property are contiguous and were once part of a single tract of land owned by "George Cadwalder, Executor of the Last Will and

Testament of Mary Cadwalder." Both properties have now been merged as one parcel, owned now in fee by Plaintiffs.

111.   Plaintiffs are the owners in fee of the lands lying between the lands described in the Deed referenced in Paragraph 109 above and the "historic margin of said bodies of water known as Marsh Pond [now Mud Pond] and Jones Pond [now Lake Ariel] and the channel or stream connecting them" by virtue of the Corrective Deed dated August 25, 1998 from Robert M. Swingle and Irene D. Swingle, his wife, and Glenna J. Curtis and Marion J. Swingle, Grantors to Plaintiffs and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 1418 at page 139, et seq., which is incorporated herein by reference and is attached hereto and made a part hereof and labeled Exhibit "Q".

112.   The description of the lands owned in fee by Plaintiffs pursuant to the Deeds attached as Exhibits "O" and "Q" is as follows:

> BEGINNING at the point of intersection of the 41s t bearing and distances of the 1423.5 elevation line traverse and the extension of line number 1 of the Dring and Asaro Tract as described in Deed Book Volume 1176 at page 0197; thence South 17 degrees 39 minutes 22 seconds East 5.35 feet to an original corner in the said Dring and Asaro Tract; thence along the boundary of the lands of the Dring and Asaro Tract the following nineteen courses and distances (bearings of the magnetic meridian as established by the Little Lake Development survey):

1) South 17 degrees 39 minutes 22 seconds East 299.13 feet to a corner;

2) North 89 degrees 45 minutes 26 seconds West 780.83 feet to a corner;

3) North 53 degrees 52 minutes 12 seconds West 487.83 feet to a corner;

4) North 72 degrees 45 minutes 09 seconds East 104.27 feet to a corner;

5) North 17 degrees 14 minutes 51 seconds West 264.00 feet to a corner;

6) North 50 degrees 13 minutes 13 seconds West 165.51 feet to a corner;

7) North 14 degrees 55 minutes 15 seconds East 547.01 feet to a corner;

8) North 46 degrees 26 minutes 54 seconds East 640.04 feet to a corner;

9) North 17 degrees 42 minutes 24 seconds West 281.13 feet to a corner;

10) North 64 degrees 04 minutes 23 seconds West 242.00 feet to a corner;

11) North 22 degrees 45 minutes 16 seconds East 204.91 feet to a corner;

12) South 42 degrees 09 minutes 44 seconds East 398.52 feet to a corner;

13) South 10 degrees 46 minutes 42 seconds East 941.63 feet to a corner;

14) North 59 degrees 02 minutes 03 seconds East 1347.25 feet to a corner;

15) North 58 degrees 15 minutes 29 seconds East 848.25 feet to a corner;

16) South 43 degrees 20 minutes 48 seconds East 287.77 feet to a corner;

17) South 44 degrees 18 minutes 20 seconds West 246.28 feet to a corner;

18) South 82 degrees 01 minutes 10 seconds West 98.71 feet to a corner; and

19) South 39 degrees 07 minutes 43 seconds East 281.80 feet passing an iron pin at 238.85 feet to a point of intersection with the 1423.5 elevation line traverse; thence

along the 1423.5 elevation line traverse (Bearings of the magnetic meridian as established in the survey of the Little Lake Development) the following forty-one courses and distances:

1) South 43 degrees 58 minutes 58 seconds West 37.81 feet to a corner;
2) South 31 degrees 11 minutes 41 seconds West 58.48 feet to a corner;
3) South 23 degrees 59 minutes 56 seconds West 69.21 feet to a corner;
4) South 42 degrees 25 minutes 05 seconds West 62.22 feet to a corner;
5) South 35 degrees 09 minutes 21 seconds West 71.37 feet to a corner;
6) South 67 degrees 31 minutes 42 seconds West 89.31 feet to a corner;
7) South 59 degrees 31 minutes 51 seconds West 83.31 feet to a corner;
8) South 49 degrees 23 minutes 44 seconds West 72.35 feet to a corner;
9) South 53 degrees 24 minutes 14 seconds West 81.65 feet to a corner;
10) North 85 degrees 01 minutes 01 seconds West 88.90 feet to a corner;
11) South 68 degrees 46 minutes 34 seconds West 84.07 feet to a corner;
12) South 31 degrees 48 minutes 41 seconds West 87.84 feet to a corner;
13) South 31 degrees 20 minutes 44 seconds West 89.58 feet to a corner;
14) South 44 degrees 54 minutes 46 seconds West 11.56 feet to a corner;
15) South 69 degrees 00 minutes 24 seconds West 32.39 feet to a corner;
16) South 81 degrees 06 minutes 13 seconds West 58.32 feet to a corner;
17) South 84 degrees 16 minutes 39 seconds West 104.21 feet to a corner;

18) South 58 degrees 16 minutes 47 seconds West 23.52
feet to a corner;
19) South 89 degrees 27 minutes 29 seconds West 36.47
feet to a corner;
20) South 80 degrees 58 minutes 11 seconds West 16.54
feet to a corner;
21) South 79 degrees 10 minutes 12 seconds West 35.41
feet to a corner;
22) North 42 degrees 45 minutes 31 seconds West 47.34
feet to a corner;
23) North 60 degrees 21 minutes 01 seconds West 38.77
feet to a corner;
24) North 46 degrees 07 minutes 28 seconds West 32.11
feet to a corner;
25) North 43 degrees 06 minutes 19 seconds West 44.30
feet to a corner;
26) North 66 degrees 13 minutes 58 seconds West 100.71
feet to a corner;
27) North 84 degrees 42 minutes 02 seconds West 94.30
feet to a corner;
28) South 74 degrees 01 minutes 25 seconds West 120.70
feet to a corner;
29) South 60 degrees 23 minutes 27 seconds West 122.18
feet to a corner;
30) South 27 degrees 48 minutes 01 seconds West 98.46
feet to a corner;
31) South 19 degrees 13 minutes 07 seconds West 94.00
feet to a corner;
32) South 27 degrees 52 minutes 46 seconds West 7.87
feet to a corner;
33) South 01 degrees 26 minutes 50 seconds East 106.38
feet to a corner;
34) South 23 degrees 26 minutes 43 seconds West 63.45
feet to a corner;
35) South 09 degrees 58 minutes 40 seconds West 76.83
feet to a corner;
36) South 10 degrees 03 minutes 04 seconds West 50.10
feet to a corner;
37) South 46 degrees 29 minutes 53 seconds West 28.53
feet to a corner;

38) South 21 degrees 01 minutes 08 seconds West 61.94
feet to a corner;
39) South 55 degrees 15 minutes 32 seconds West 32.16
feet to a corner;
40) South 12 degrees 38 minutes 59 seconds East 59.90
feet to a corner; and
41) South 84 degrees 58 minutes 33 seconds East 100.83
feet to the point and place
of BEGINNING.

113.    The description of the lands owned in fee by Plaintiffs pursuant to the

Deed attached hereto as Exhibit "P" is as follows:

BEGINNING at a point in the center line of State Route
191 being the common corner of the lands of Grantors and
of George Fitts (D.B. 515, p. 935), thence South 69
degrees 92 minutes 20 seconds East 312.01 feet along the
common line of the lands of Fitts to a point; thence South
82 degrees 29 minutes 21 seconds East 239.19 feet; thence
South 63 degrees 59 minutes 55 seconds East 590.00 feet;
thence South 11 degrees 0 minutes 0 seconds West 160
feet; thence South 79 degrees 0 minutes 0 seconds East
100 feet; thence North 11 degrees 0 minutes 0 seconds
East 179.61 feet; thence North 75 degrees 29 minutes 40
seconds East 878.48 feet to a point in the line of lands of
Gasper Polizzi; thence South 41 degrees 56 minutes 04
seconds East 286.54 feet to a point; thence South 59
degrees 40 minutes 13 seconds West 848.25 feet to a point;
thence South 60 degrees 26 minutes 47 seconds West
1,347.25 feet to a point for a corner; thence North 09
degrees 21 minutes 58 seconds West 941.63 feet to a point;
thence North 40 degrees 45 minutes 0 seconds West
398.52 feet to a point in the center line of State Route 191;
thence along the center line of said Road, North 24 degrees
10 minutes 0 seconds East 278.20 feet to the point or place
of Beginning.

114.   Non-Party, ALO, in the Consolidated Action, claimed/alleged that it held title to certain real property by virtue of that certain deed from A.J. Schrader, et al., to ALO dated April 20, 1964 and recorded in the Office of the Recorder of Deeds of Wayne County in Deed Book 221 at Page 292, et seq., which is incorporated herein by reference and is attached hereto and made a part hereof and labeled Exhibit "R". Plaintiffs own land that adjoins ALO's property. However, it must be noted that Plaintiffs **do not** accept, do not allege, do not contend, and do not admit, but rather Plaintiffs expressly deny that this document attached as Exhibit "R" provides ALO (or anyone else) with title by deed to the bed of Lake Ariel and/or any other property.

115.   This Court has previously ruled and entered judgment against ALO and expressly held that ALO cannot establish title by deed to, *inter alia*, Lake Ariel. Rather, ALO was judicially determined to own the lakebed of Lake Ariel up to the water's natural margin. ALO was also judicially determined to have a prescriptive right to flood part of Plaintiffs' property, i.e., part of the West Shore Parcel, for part of the year, as explained in greater detail below.

116.   Plaintiffs and Non-Party ALO share a common grantor/prior owner in the chain of title of the lands herein above described by the name of "George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder", who, prior to December 13, 1859, was the owner of a tract of land which included the lands owned by the Plaintiffs and ALO.

117.   Plaintiffs are owners in fee of real property that shares a common property boundary along the natural margin of Lake Ariel and the interconnecting stream between Lake Ariel and Mud Pond, in the Township of Lake, County of Wayne, and Commonwealth of Pennsylvania (i.e., the West Shore Parcel) by virtue of Quit Claim Deeds from two educational institutions. One such Quit Claim Deed ("RPI Deed") transfers a two-thirds undivided interest in the West Shore Parcel from Rensselaer Polytechnic Institute ("RPI") to Plaintiffs. Said Deed is dated November 2, 2001. See RPI Deed, attached hereto as Exhibit "S". The second Quit Claim Deed transfers the remaining one-third undivided interest in the West Shore Parcel to Plaintiffs from Wells College ("Wells") and is dated December 6, 2001 ("Wells Deed"), and was amended with Quit Claim Deed dated October 16, 2020 ("Amended Wells Deed"). See Wells Deed, attached as Exhibit "T" and Amended Wells Deed, attached as Exhibit "U."

118.   Pursuant to the Quit Claim Deeds described in paragraph 117 Plaintiffs are the owners in fee of the lands situated between the high-water mark and the natural water mark at certain points, and the highest water mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond, and the interconnecting stream or channel. This is what is referred to as the West Shore Parcel. As such, Plaintiffs are the owners in fee of the West Shore Parcel, including

without limitation the Northern Portion and Southern Portion of the West Shore Parcel.

119.   ALO and Plaintiffs share a common grantor/prior owner in the chain of title of the land described in paragraph 125 by the name of "George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder", who, prior to December 13, 1859, was the owner of a tract of land which included the lands now owned by the ALO and the Plaintiffs respectively.

120.   By Deed dated December 13, 1859, recorded October 16, 1860, in Deed Book 28, Page 36, George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder, deceased, granted and conveyed to Edward W. Weston ("Weston") certain real property in Salem Township (now Lake Township), Wayne County, Pennsylvania. By subsequent Deeds, Weston granted and conveyed portions of the said real property, but did not convey the lands lying between the high water mark and the natural water mark at certain points, and the highest water mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond, thereby reserving to himself a parcel of land along the western shore of the waters of Lake Ariel and Mud Pond.

121.   Naturally, because Weston did not convey the parcel of land which he reserved to himself, upon his death said property passed via the residuary clause of his Last Will and Testament.

122.   Upon the death of Weston, one-third (1/3) of the residue of his Estate passed to his son, Charles S. Weston ("Charles Weston"), one-third (1/3) of the residue of his estate passed to his wife, Susan S. Weston, and one-third (1/3) of his estate passed to his daughter, Caroline Weston Bird.

123.   Upon the death of Susan S. Weston on March 25, 1916, her interest in the property at issue passed in equal shares to her children, Charles Weston and Caroline Weston Bird pursuant to the terms of her Last Will and Testament.

124.   Caroline Weston Bird passed away on October 7, 1931 and, pursuant to the residuary clause of her Last Will and Testament, her interest in the property at issue passed to her brother, Charles Weston.

125.   During his lifetime, Charles Weston did not convey the lands lying between the high water mark and the natural water mark at certain points, and the highest water mark and the natural water mark at other points, along the western shore of Lake Ariel and Mud Pond.

126.   Upon the death of Charles Weston, two-thirds (2/3) of the residue of his estate passed to RPI, and one-third (1/3) of the residue of his estate passed to Wells pursuant to his Last Will and Testament dated January 5, 1937.

127.   ALO owns, though not by Deed or Chain of Title, *inter alia*, the bed of Lake Ariel as determined by this Honorable Court with the Order and Judgment entered on January 18, 2008, as amended by Order of August 13, 2008. That land

owned by ALO, i.e., the lakebed, adjoins the property owned by Plaintiffs by virtue of the Wells and RPI Deeds, i.e., the West Shore Parcel. This was affirmed by the Third Circuit by an unpublished Opinion and Order Filed March 15, 2010. The Third Circuit held, in part, as follows:

> With regard to [ALO's] cross appeals, we do not find any merit in their assertions. The District Court properly concluded that [ALO's] ownership of land underneath the lake did not extend beyond the lowest water level of 1423.5 feet. We do not find any evidence to compel a different factual conclusion from that reached by the District Court concerning the lack of proof of ownership of this strip of land in the chains of title presented to the court. Additionally, as we noted earlier, Pennsylvania precedent makes it clear that occasional intentional flooding of certain property is not, of itself, sufficient to establish ownership of that property. *Costello*, 162 Pa. 397, 29 A. 874. We also cannot stretch the reputational evidence to suffice as proof of ownership. For these reasons, we do not find any error in the District Court's decision.
>
> We also agree with the District Court that, beginning with the deed to Joel Jones, dated January 21, 1862, it is clear that the strip of land that is the subject of the present litigation was reserved to Edward W. Weston, and that ownership of this strip can be traced to the deed held by Dring and Asaro. Accordingly, the District Court did not err in concluding that Dring and Asaro hold, by record deed, title to the disputed strip of land between the high and low water marks of the lake.

*Ariel Land Owners, Inc. v. Dring*, 374 Fed.Appx. 346, 350–51 (3d Cir. 2010)

128.    The natural elevation of the waters of Lake Ariel and Mud Pond on December 13, 1859 (the date of conveyance of said Ponds to ALO's predecessor in interest) was approximately 1,423.5 feet above sea level.

129.    ALO and its predecessors in interest engaged in the construction and maintenance of artificial dams subsequent to December 13, 1859, which dams intermittently raised the elevation of the waters of Lake Ariel and Mud Pond. Each year for a period of months the ALO raises the water from its natural elevation level of 1,423.5 above sea level to an artificially elevated height of 1,425.9 feet above sea level, a difference of 2.4 vertical feet in height.

130.    By Order and Judgement entered on January 18, 2008, as amended by Order of August 13, 2008, this Honorable Court held that the Plaintiffs own the West Shore Parcel in fee, and that ALO has the right to annually raise the water level of the lake to a height of 1,425.9 from May 1 to October 31 and must lower the water level of the lake to 1,423.5 from November 1 to April 30 every year.

131.    However, ALO and its predecessors in interest have at various times wrongfully held themselves out to be the owners in fee of the West Shore Parcel, and have, upon information and belief, invalidly granted or attempted to grant certain rights and/or possessory interests in said West Shore Parcel to third parties, including but not limited to Defendants in this litigation.

132. Defendants in this litigation, upon information and belief, have a possessory interest in lots located near but not directly bordering the West Shore Parcel, Lake Ariel and/or the stream connecting Lake Ariel with Mud Pond.

133. Upon information and belief, ALO and its predecessors in interest attempted to effectuate these invalid and unauthorized transfers of certain rights in the West Shore Parcel by virtue of certain invalid, so-called leases, assignments or agreements whereby ALO or its predecessors in interest invalidly attempted to grant specific rights to the Defendants in this action and/or their predecessors-in-interest or predecessors-in-title, that included but are not limited to the right or privilege to access, ingress, egress, possess, traverse and/or construct structures upon the West Shore Parcel, which is a parcel of land owned in fee by Plaintiffs. ALO and its predecessors had no right to do so, and the privileges or rights that these so-called leases or agreements (or documents by any other name) purport to create are invalid and violative of Plaintiffs' property rights vis-à-vis the West Shore Parcel.

134. Defendants hold leases, agreements, and/or "deeds" for lots of land that are separated from Lake Ariel first by land owned by ALO, including the road known as West Shore Drive, and then by the West Shore Parcel.

135. The dispute here is not over whether Defendants have a possessory interest in the lots on which their dwellings are located. Those lots are located on the other side of West Shore Drive from Plaintiffs' property. Rather, the portions of the

leases/agreements and/or deeds that are in dispute concern the rights that said documents purport to grant the Defendants for the use of other property as a secondary or accessory benefit or privilege associated with the lots on which their dwellings are located, and for which the Defendants make annual payments to ALO. The Defendants make annual payments pursuant to decades old "leases" with ALO or its predecessors for ingress and egress, from the margin of their respective lots to access Lake Ariel, and the leases describe the land to be crossed for access which includes the West Shore Parcel. Thus, Defendants are essentially paying ALO to cross over the West Shore Parcel for the purposes of accessing Lake Ariel, and Defendants are even paying ALO to construct and maintain boathouses and docks on the West Shore Parcel. However, ALO does not own the West Shore Parcel and cannot grant, convey or charge for such rights.

136.   The West Shore Parcel does not share a common property boundary with land owned by any of the Defendants. Rather, Defendants' respective lots whether leased or owned by Defendants are separated from the West Shore Parcel by a road and real property on either side of that road that is owned by ALO.

137.   The leases purport to, *inter alia*, grant access over land between the lots held by Defendants and upon which they have (or may if they choose) constructed dwellings and the margin of Lake Ariel, and even the right to construct docks and boathouses on land not leased to Defendants.

138.   However, Plaintiffs own part of the land over which the leases purport to grant rights of ingress, egress, and on which they purport to grant the right to construct boathouses and docks. The property of the Defendants is separated from the waters of the lake first by the property of ALO, i.e., the road known as West Shore Drive, and then by the West Shore Parcel.

139.   The Defendants' leased lots do not even touch the West Shore Parcel at any point. The West Shore Parcel is bounded by ALO property on both sides.

140.   The invalid leases for the Defendants are attached hereto as part of Exhibits "C," "E," "G," and "I" and are incorporated by reference here. These so-called leases, or otherwise recorded documents include, *inter alia* the following:

    a. Defendant Clauss is party to a so-called "assignment of lease" for the "unexpired portion" of an albeit invalid 999 year lease, said assignment of lease is recorded as Instrument 200800005708 or Volume 3533, Page 39 with the Wayne County Recorder of Deeds, and references leases, agreements, or assignments, which include the following:

        i. Wayne County Deed Book 186 Page 307, a 999 year lease recorded June 15, 1954; and  Wayne County Deed Book 452 Page 953, an assignment of lease from Peter O. Clauss to Robert J. Clauss of the originally referenced 999 year lease, and subject to the conditions therein, dated October 11, 1986, for 7,200 s.f.;

and Wayne County Record Book 670 Page 285, an assignment of lease from Robert J. Clauss to Robert J. Clauss and Linda B. Clauss, his wife, dated August 5, 1991 and recorded on April 23, 1992; and

ii. Defendant Clauss's so-called assignment of lease, contains by reference to the F.E. Bortree lease, *inter alia*, the following invalid language, which purports to identify or convey rights or privileges that do not exist as a matter of law, and which as written infringes on and violates the real property rights of Plaintiffs:

TOGETHER with the right and privilege at any and all times hereafter during the term of this lease, of free access, ingress, and egress from the lands hereby leased to the margin of said Lake Ariel and vice versa, across and upon the strip of land fifty (50) feet in width lying between the lot of land hereby leased and the margin of said Lake.
It being distinctly understood and agreed by and between the parties hereto that no fence, buildings or other obstructions of any kind shall be erected or placed upon said strip of land lying between the lot hereby leased and the margin of said lake to intercept or impede free passage across the same or any part thereof.

Said parties of the second part shall during the term of this Lease, for the consideration herein named, have the right to fish in the waters of said Lake Ariel, but nothing herein contained shall give the parties of the second part a right to fish out of season or in violation of this fish and game laws of the Commonwealth. And the said parties of the second part are hereby expressly prohibited from catching

fish of any kind or description from the waters of said Lake between the first day of November and the first day of June in each and every year.

TOGETHER with the right to erect on the margin of said Lake in front of the premises hereby leased; but so as not to obstruct in any way the full width of the fifty (50) feet passageway or street above mentioned, a boat-house of neat and suitable design to be used only by the parties of the second part for their benefit and the benefit of members of their family and their guests and in no case and at no time for rent or hire.

IN ADDITION to the right of passage to and from the Lake across the land in front of the premises herein described and leased, the parties of the second part shall have the right to use all roads and streets laid out and opened by the said party of the first part, or its predecessors in title, about said Lake in common with other lot-holders having similar privileges.

IN CONSIDERATION of the rights and privileges above mentioned and granted and of boating and fishing upon said Lake, the parties of the second part in addition to the consideration hereinbefore mentioned, agree to pay to the party of the first part the sum of ten and 00/100 ($10.00) dollars per year, payable on or before the first day of June in each and every year. It is, however, agreed, that any rental that remains due and unpaid shall be recoverable only out of the said real estate and the rights and appurtenances hereby demised.

ANY VIOLATION on the part of the second parties of any of the terms of this agreement or any use or appropriation of the lands hereby demised for the purpose or purposes other than such as are mentioned and agreed upon in said contract, shall work an immediate forfeiture of this Agreement of Lease, and proof or proofs of such violation being fully sustained in an action of ejectment or other appropriate action at law, it will be lawful for the said party

of the first part to retake possession of the premises hereby demised, and own, control and use the same in the same manner as if this Agreement of Lease had never been entered into.

ALL and singular the covenants and agreements herein mentioned shall be binding upon and inure to the benefit of the parties hereto and their heirs, administrators and assigns, as fully as if they were in every instance herein named.

IN ADDITION the parties of the second part shall also during the term of this Lease, for the consideration hereinafter named, have the right to own and use upon the waters of said Lake Two row boats, one sailboat and one launch, for their own use and for the use of members of their family and guests, but in no case shall the parties of the second part use or permit their boat or boats to be used by any person/or persons except themselves and members of their family and guests, and in the absence of themselves and all the members of their family, no ·person shall have the right to use their boat or boats on the waters of said Lake.

See Exhibit "C."

b. Defendant Malakin's so-called "deed" dated April 1, 2022, and recorded on April 1, 2022 in the Wayne County Recorder of Deeds Office with Instrument No.: 202200002616 or Volume 6115 Page 197 – 201, from Theodore E. Malakin, Jr. and Linda Malakin, Grantors to Theodore E. Malakin, III, Grantee, references a lease for three parcels, all of which are described in the aforementioned deed as follows:

    i.    The unexpired portion of the 999 year lease, dated July 17, 1970, recorded at Wayne County Deed Book 258 Page 689, of 19,380 s.f. (Parcel I), of 10,500 s.f. (Parcel II), and 7,287 s.f.; and

    ii.    The so-called Malakin deed includes the following further description of the leased premises:

Each of the parcels above described is conveyed SUBJECT TO the following terms and conditions:

Together with the right and privilege at any and all times hereafter during the term of this Lease, of free access, ingress, and egress from the lands hereby leased to the margin of said Lake Ariel and vice versa, across and upon the strip of land fifty (50') feet in width lying between the lot of land hereby leased and the margin of said Lake.

It being distinctly understood and agreed by and between the parties hereto that no fence, buildings or other obstructions of any kind shall be erected or placed upon said strip of land lying between the lot hereby leased and the margin of said lake to intercept or impede free passage across the same or any part thereof.

Said parties of the second part shall during the term of this Lease, for the consideration herein named, have the right to fish in the waters of said Lake Ariel, but nothing herein contained shall give the parties of the second part a right to fish out of season or in violation of this fish and game laws of the Commonwealth. And the said parties of the second part are hereby expressly prohibited from catching fish of any kind or description from the waters of said Lake between the first day of November and the first day of June in each and every year.

Together with the right to erect on the margin of said Lake in front of the premises hereby leased; but so as not to

obstruct in any way the full width of the fifty (50') foot passageway or street above mentioned, a boat-house of near and suitable design to be used only by the parties of the second part for their benefit and the benefit of members of their family and their guests and in no case and at no time for rent or hire.

In Addition to the right of passage to and from the Lake across the land in front of the premises herein described and leased, the parties of the second part shall have the right to use all roads and streets laid out and opened by the said parties of the first part, or its predecessors in title, about said Lake in common with other lot-holders having similar privileges.

In Consideration of the rights and privileges above mentioned and granted and of boating and fishing upon said Lake, the parties of the second part in addition to the consideration hereinbefore mentioned, agrees to pay to the parties of the first part the sum of Fifteen Dollars ($15.00) per year, payable on or before the first day of June in each and every year. It is, however, agreed that any rental that remains due and unpaid shall be recoverable only out of the said real estate and the rights and appurtenances hereby demised.

Any Violation on the part of the second parties of any of the terms of this Agreement, or any use or appropriation of the lands hereby demised for the purpose or purposes other than such as are mentioned and agreed upon in said contract, shall work an immediate forfeiture of this Agreement of Lease, and proof or proofs of such violation being fully sustained in an action of ejectment or other appropriate action at law, it will be lawful for the said parties of the first part to retake possession of the premises hereby demised, and own, control and use the same in the same manner as if this Agreement of Lease had never been entered into.

See Exhibit "E" in which is incorporated herein by reference in its entirety.

c. The Barone Defendants are parties to a so-called "Assignment of Leasehold Interest" for the "unexpired portion" of an albeit invalid 999 year lease, said assignment of lease is recorded as Instrument 201400001274 or Volume 4681, Page 174 with the Wayne County Recorder of Deeds, and references leases, agreements, or assignments, which include, *inter alia*, the following:

   i. Wayne County Deed Book 185 Page 287, lease for 999 years of 6,000 s.f. from F.E. Bortree Land Company to Bernard J. Golden and Mary M. Golden, his wife, dated and recorded on 7-29-1952; and

   ii. Wayne Count Deed Book 193 Page 82, all residue, remainder and balance of those certain leasehold premises that F.E. Bortree Land Company granted and conveyed to John B. Manger and Kathryn M. Manger, his wife, by lease dated 7-29-1952; and

   iii. Wayne County Deed Book 375 Page 1145, "Assignment of Leasehold Agreement" by John and Kathryn Manger to Ronald W. Christie and Mary E. Christie, his wife, dated 11-14-1980, and

   iv. Moreover, the Barrone Defendants' so-called "Assignment of Leasehold Interest" contains, in part, the following:

As part of the property description:

> […]

> Containing 6,000 square feet of land, …, designated as Lot
> No. 182 on which is located a frame, residential dwelling
> ***and incidental dock within the waters of Lake Ariel.***

As (non-existent) rights purportedly granted, without specific attribution to one of

the above referenced leases, the following:

> […]

> TOGETHER with the right and privilege at any and all
> times hereafter during the term of this Lease of free access,
> ingress and regress from the lands hereby leased to the
> margin of said Lake Ariel and vice versa, across and upon
> the strip of land fifty (50) feet in width lying between the
> lot of land hereby leased and the margin of the said Lake.

> It being distinctly understood and agreed by and between
> the Parties hereto that no fence, buildings or other
> obstructions of any kind shall be erected or placed upon
> said strip of land lying between the lot hereby leased and
> the margin of said Lake to intercept or impede free passage
> across the same or any part thereof.

> Said Parties of the Second Part shall during the remaining
> term of this Lease, for the consideration herein named,
> have the right to fish in the waters of said Lake Ariel, but
> nothing herein contained shall give the Party of the Second
> Part a right to fish out of season or in violation of the Fish
> and Game Laws for the Commonwealth of Pennsylvania.
> The Parties of the Second Part shall also during the term
> of this Lease, for the consideration herein named, have the
> right to own and use upon the waters of said Lake Ariel
> two row boats, one sailboat, and one launch for their own
> use and for the use of members of their family and guests,

but in no case shall the Parties of the Second Part use or permit their boat or boats to be used by any person or person except themselves and members of their family and guests, and in the absence of themselves, and all members of their family, no person shall have the right to use their boat or boats on the waters of said Lake.

TOGETHER ALSO with the right to erect on the margin of said Lake in front of the premises hereby leased, but so as not to obstruct in any way the full width of the fifty (50) feet passage or street above mentioned, a boat-house or neat and suitable design to be used only by the Parties of the Second Part for their benefit and the benefit of members of their family and her guests, and in no way and at no time for rent or hire.

IN ADDITION to the right of passage to and from the Lake across the land in front of the premises herein described and leased, the Parties of the Second Part shall have the right to use all roads and streets laid out and opened by the said Parties of the First Part, or their predecessors in title, above said Lake in common with other lot-holders having similar privileges.

IT IS AGREED and expressly stipulated by the Parties of the Second Part hereto that the land hereby demised shall be used only for the purpose of having one private residence thereon for the use of one family, and that it shall not be used for a hotel, boarding house or any business purpose whatsoever.

It is also agreed by the Parties of the Second Part hereto that no venous, spirituous or malt liquors shall be sold or kept for sale on the said premises during the term of this Lease.

IN CONSIDERATION of the rights and privileges above mentioned and granted, and of boating and sighing upon said Lake, Parties of the Second Part, in addition to the consideration hereinbefore mentioned, agrees to pay to the

F. E. Bortree Land Co., or its successors in title, the sum of Fifteen ($15.00) Dollars per year, payable on or before the first day of June in each and every year. It is, however, agreed that any rental that remains due and unpaid shall be recoverable only out of the said real estate and the rights and appurtenances hereby demised.

ANY VIOLATION by the Parties of the Second Part of any of the terms of this Agreement, or any use or appropriation of the lands hereby demised for the purpose or purposes other than such as are mentioned and agreed upon in said contract, shall work immediate forfeiture of this Agreement of Lease, and proof or proofs of such violation being fully sustained in an action of ejectment or other appropriate action of law, it will be lawful for the said Parties of the First Part to retake possession of the premises hereby demised, and own, control and use the same in the same manner as if this Assignment of Lease had never been entered into.

ALL and singular the covenants and agreements herein mentioned shall be binding upon and inure to the benefit of the Parties hereto and their heirs, administrators and assigns, as fully as if they were in every instance herein named.

ASSIGNORS will and do hereby warrant SPECIALLY the property and premises hereinabove described as demised and assigned to Second Parties herein.

See Exhibit "G" which is incorporated herein by reference in its entirety.

d. Defendant Saylor's so-called "deed" and leases, concern four (4) parcels two of which (Parcel One and Parcel Three ) do not, in the recorded documents, purport to lease the right to use or occupy Plaintiffs' property, however the leases referenced concerning Parcel

Two and Parcel Four of the recorded documents concerning the Saylor

Interest, appear to contain the offending and invalid language, those so-

called "leases" are as follows:

i. PARCEL TWO: Wayne County Deed Book 233 Page 387 –

dated July 5, 1966, Recorded July 15, 1966, lease for 999 years

of 9,000 s.f. from Ariel Land Owners, Inc. to Alvin J. Gutt and

Louisa A. Gutt, which states in part the following:

Together with the right and privilege at any and all times
hereafter during the term of this lease, of free access,
ingress and egress from the lands hereby leased to the
margin of said Lake Ariel and vice versa, across and upon
the strip of land fifty feet in width lying between the lot of
land hereby leased and the margin of the said Lake. It
being distinctly understood and agreed by and between the
parties hereto that no fence, buildings or other obstructions
of any kind shall be erected or placed upon said strip of
land lying between the lot hereby leased and the margin of
said Lake to intercept or impeded free passage across the
same or any part thereof. The said party of the second part
shall, during the term of this lease, for the consideration
herein named, have the right to fish in the waters of said
Lake Ariel […]. … The party of the second part shall also
during the term of this lease for the consideration
hereinafter named, have the right to own and use upon the
water of said Lake two row boats, one sailboat and one
launch, for his own use and for the use of members of his
family and their guests […]. … Together with the right to
erect on the margin of said Lake in front of the premises
hereby leased; but so as not to obstruct in any way the full
width of the fifty foot passageway or street above
mentioned, a boat-house of neat and suitable design to be
used only by the party of the second part for his benefit
and the benefit of members of his family and their guests,

and in no case and at no time for rent or hire. … In
consideration of the rights and privileges above mentioned
and granted, and of boating and fishing upon said Lake,
the lessees, in addition to the considerations hereinbefore
mentioned, hereby agrees to pay the lessor the sum of
twenty ($20.00) dollars per year, payable on or before the
first day of June each and every year, beginning the first
day of June after the date of the within instrument.

See Exhibit "I" which is incorporated by reference in its entirety.

ii. PARCEL FOUR: Wayne County Deed Book 182 Page 174, lease

for 999 years of 15,660 s.f. from F. BURTON DERBY and

JEANNETTE DERBY, his wife to FREDERICK C. MOESEL

and MARGARET MOESEL, husband and wife, dated August

29, 1952 and recorded October 3, 1952, which states in part the

following:

Together with the right and privilege at any and all times
hereafter during the term of this lease, of free access,
ingress and egress from the lands hereby leased to the
margin of said Lake Ariel and vice versa, across and upon
the strip of land fifty feet in width lying between the lot of
land hereby leased and the margin of the said Lake. It
being distinctly understood and agreed by and between the
parties hereto that no fence, buildings or other obstructions
of any kind shall be erected or placed upon said strip of
land lying between the lot hereby leased and the margin of
said Lake to intercept or impeded free passage across the
same or any part thereof. The said party of the second part
shall, during the term of this lease, for the consideration
herein named, have the right to fish in the waters of said
Lake Ariel […]. … The party of the second part shall also
during the term of this lease for the consideration
hereinafter named, have the right to own and use upon the

water of said Lake two row boats, one sailboat and one launch, for his own use and for the use of members of his family and their guests […]. … Together with the right to erect on the margin of said Lake in front of the premises hereby leased; but so as not to obstruct in any way the full width of the fifty foot passageway or street above mentioned, a boat-house of neat and suitable design to be used only by the party of the second part for his benefit and the benefit of members of his family and their guests, and in no case and at no time for rent or hire. … In consideration of the rights and privileges above mentioned and granted, and of boating and fishing upon said Lake, the parties of the second part, in addition to the consideration hereinbefore mentioned, hereby agree to pay the parties of the first part the sum of Fifteen and 00/100 ($15.00) dollars per year, payable on or before the first day of June each and every year.

See Exhibit "I" which is incorporated by reference in its entirety.

141. By this Honorable Court holding that the Plaintiffs own the West Shore Parcel in fee (a fact which is acknowledged and admitted by ALO and acknowledged and admitted by <u>Gillespie</u> Plaintiffs in the 2019 Agreement, and binding upon their successors-in-interest and successors-in-title), the Court necessarily held by implication that the leases, assignments and/or agreements whereby the ALO and/or its predecessors attempted to transfer, lease, grant, and/or convey, property rights in the West Shore Parcel to the Defendants and/or their predecessors-in-interest or predecessors-in-title were invalid and incapable of effectuating the transfer of any rights in or to the West Shore Parcel whatsoever.

142. Moreover, upon information and belief, Defendants named in this action, as set forth in greater detail herein, both above and below, have and will continue to wrongfully trespass upon the lands owned in fee by Plaintiffs without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action constitutes a wrongful trespass upon the property of Plaintiffs.

143. Upon information and belief each and every one of the Defendants crosses or allows others to cross from the margin of their respective lots across West Shore Drive and then across the property of ALO and then on to and across the West Shore Parcel.

144. Attached as Exhibit "D" are images showing Defendant Clauss's lot and home located at 108 West Shore Drive. Also shown are West Shore Drive, and Lake Ariel. It is this location that Defendant Clauss and/or those associated with Defendant Clauss cross from the margin of their leased lot over West Shore Drive, and over and across Plaintiffs' West Shore Parcel to access Lake Ariel.

145. Attached as Exhibit "F" are images showing Defendant Malakin's lots and home located at 1320 Lake Ariel Highway. Also shown are West Shore Drive, and Lake Ariel. It is this location that Defendant Malakin and/or those associated with Defendant Malakin cross from the margin of their leased lot over West Shore Drive, and over and across Plaintiffs' West Shore Parcel to access Lake Ariel.

146.  Attached as Exhibit "H" are images showing the Barone Defendants' lot and home located at 248 West Shore Drive. Also shown are West Shore Drive, and Lake Ariel. It is this location that the Barone Defendants and/or those associated with the Barone Defendants cross from the margin of their leased lot over West Shore Drive, and over and across Plaintiffs' West Shore Parcel to access Lake Ariel.

147.  Attached as Exhibit "J" are images showing Defendant Saylor's lots and home located at 1328 Lake Ariel Highway. Also shown are West Shore Drive, and Lake Ariel. It is this location that Defendant Saylor and/or those associated with Defendant Saylor cross from the margin of their leased lots over West Shore Drive, and over and across Plaintiffs' West Shore Parcel to access Lake Ariel.

148.  Each and every one of the Defendants, upon information and belief, has constructed permanent or temporary structures for use associated with Lake Ariel on Plaintiffs' property, namely the West Shore Parcel.

COUNT I
<u>TRESPASS</u>

149.  The allegations in paragraphs 1 through 148 of Plaintiffs' Complaint are incorporated by reference and repeated herein as if fully set forth at length.

150.  Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

151.    In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, improperly, invalidly, and ineffectively, attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

152.    Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

153.    Upon information and belief ALO, and/or its predecessors in interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or  "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

154.   Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

155.   Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors in title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

156.   Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B.  Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 117-119 hereof; and

C.  Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 117-119 hereof, and

D.  Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 117-119 hereof; and

E.  Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs' rights and directly traversing Plaintiffs' property; and

F.  Award Plaintiffs compensatory and punitive damages; and

G.  Order such other relief as may be appropriate, including awarding Plaintiffs' attorneys' fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

COUNT II
EJECTMENT

157.   The allegations in paragraphs 1 through 156 of Plaintiffs' Complaint are incorporated by reference and repeated herein as if fully set forth at length.

158.   Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

159.   In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, invalidly, improperly, and ineffectively, attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

160.   Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

161.   Upon information and belief ALO, and/or its predecessors in interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or   "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

162.   Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

163.   Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors in title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

164.   Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B.  Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 117-119 hereof; and

C. Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 117-119 hereof, and

D. Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 117-119 hereof; and

E. Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs' rights and directly traversing Plaintiffs' property; and

F. Award Plaintiffs compensatory and punitive damages; and

G. Order such other relief as may be appropriate, including awarding Plaintiffs' attorneys' fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

COUNT III
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

165.    The allegations in paragraphs 1 through 164 of Plaintiffs' Complaint are incorporated by reference and repeated herein as if fully set forth at length.

166.    Pennsylvania Rule of Civil Procedure 1061 provides that an action may be brought to determine any right, lien, title or interest in the land or determine the

validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. Pa.R.C.P. 1061(b)(2).

167.   In addition, ALO (and/or its predecessors in interest) wrongfully held itself out to be the owner in fee of the West Shore Parcel as described herein and above, and has, upon information and belief, invalidly, improperly, and ineffectively attempted to grant certain rights and/or possessory interests in the West Shore Parcel to third parties, such as Defendants in this action.

168.   Upon information and belief, Defendants have a possessory interest in certain real property situated near the western shore of Lake Ariel and/or near but not touching the West Shore Parcel as described in the preceding paragraphs.

169.   Upon information and belief ALO, and/or its predecessors-in-interest have attempted to transfer rights in the West Shore Parcel by virtue of certain so-called "leases", or   "assignments" or "agreements" whereby ALO or its predecessors-in-interest attempted to or purported to grant specific rights to the Defendants and/or Defendants' predecessors-in-interest or predecessors-in-title, and said non-existent rights, include but not limited to the right to possess, traverse and/or construct structures upon the West Shore Parcel which is actually owned in fee by Plaintiffs.

170.   Such actions by Defendants constitute continuing and/or intermittent wrongful trespass by Defendants upon the lands owned by Plaintiffs, namely the West Shore Parcel.

171.   Additionally, the Defendants have wrongfully possessed, traversed and/or constructed structures upon the land described herein owned in fee by Plaintiffs, i.e., the West Shore Parcel, without the permission of Plaintiffs or their predecessors-in-title. Such action on the part of the Defendants constitutes a continuing and/or intermittent wrongful trespass upon the lands owned in fee by Plaintiffs.

172.   Moreover, the Defendants described herein have wrongfully trespassed upon the lands owned in fee by Plaintiffs, i.e., the West Shore Parcel, without any lease, assignment or agreement between the respective Defendants and Plaintiffs. Such action on the part of the Defendants constitutes a wrongful trespass upon the property owned in fee by Plaintiffs.

WHEREFORE, the Plaintiffs, LORI DRING and NANCY ASARO, respectfully request this Honorable Court to:

A. Enter an Order fixing, settling and determining the rights of all the parties to this suit in and to the lands and premises described in this Complaint; and

B.  Enforce the Prior Orders of this Court and prohibit the continuing trespass by Defendants across, over, and on and occupying at times the West Shore

Parcel, and that Defendants have no stake, interest or right in, or lien or encumbrance upon, the lands described in paragraphs 117-119 hereof; and

C. Order that Defendants be ejected from the lands of the Plaintiffs described in paragraphs 117-119 hereof, and

D. Order that Defendants be forever barred from contesting the Plaintiffs' ownership of and right to possession of the land described in paragraphs 117-119 hereof; and

E. Order that Defendants do not have the right to access or use and enjoy the waters of Lake Ariel and Mud Pond by violating Plaintiffs' rights and directly traversing Plaintiffs' property; and

F. Award Plaintiffs compensatory and punitive damages; and

G. Order such other relief as may be appropriate, including awarding Plaintiffs' attorneys' fees and costs due to the vexatious, dilatory and intentional actions of Defendants, and because Plaintiffs are prevailing parties.

Respectfully submitted,

DAVOLOS LAW GROUP

BY:   /s/ Philip A. Davolos III
        PHILIP A. DAVOLOS, III, ESQ.
        PO Box 188
        Clarks Summit, PA 18411
        Telephone: (570) 362-3492
        pdavolos@davoloslaw.com

        *Attorneys for Plaintiffs Nancy Asaro*
        *and Lori Dring*

             -AND-

        ROTHENBERG & CAMPBELL
        Howard A. Rothenberg (Id.# 38804)
        Ryan P. Campbell (Id.# 317838)
        345 Wyoming Avenue, Ste. 210
        Scranton, PA 18503
        p. 570.207.2889
        f. 570.207.3991
        HRLaw01@gmail.com
        HRLaw04@gmail.com

        *Attorneys for Plaintiffs Nancy Asaro*
        *and Lori Dring*