EXHIBIT "N"

# Ariel Land Owners, Inc.

## Approval Notice for Lake Front Improvements

Date: March 6, 2021

To: ~~Kevin and Mariclare Hayes, 167 Island View Drive, Lake Ariel, PA 18436~~
~~163R Island View Drive lakefront improvement~~

Phone No. ~~570-362-1576 or 570-498-7373~~

XX     Final Approval, based on attached documents subject to comments below.

      Includes one attachment, drawing with comments.

____    Approval pending further review of requested documents and/or requested information

____    Not Approved – must revise and resubmit

____    Not Approved

COMMENTS:

- Any and all permits required are to be by owners requesting approval of said work.
- All work must be within property lines including any setbacks required, this includes any structure extended into water.
- No structure maybe extended out into body of water other than approved design of work.
- No bubblers and/or deicing equipment maybe used.
- All approvals are based on appearance only, structural design and strength of design by owner requesting approval.
- Boathouse may not have living space (bath or bed rooms, kitchen area etc.), running water and sewage connection.
- Sediment and erosion control must be in place at all times. All clean up when required will be by owner requesting said work.
- Tree's being removed must be replaced in same, alternates maybe submitted for approval.
- ALO is not responsible for any damage due to road snow removal and/or maintenance.
- *__Roads must remain open at all times, using temporary means if needed and approved by ALO.  No work can take place that will affect roads starting one week before Memorial Day through one week after Labor Day without ALO approval.__*
- *__West Shore Property Owners are advised that Lori Dring and Nancy Asaro are the owners of a strip of land along the west shore of Lake Ariel between the high water mark and the natural margin of the lake. Any construction within that area is subject to approval of Dring and Asaro. Without such approval, property owners are proceeding at their own risk.__*

ADDITIONAL COMMENTS:

(1) In this particular location on Lake Ariel and for this particular lake front, wall is being approved.

(2) Final site grading of property must maintain water runoff prior to termination into Lake Ariel. No direct piping to lake must be per Wayne County Conservation regulations.

(3) Only 1 motor launch belonging to the owners of the property maybe attached to the docks in front of this property and as noted in your lake lease agreement.

Signed by lake front committee:

Glenn G. Gardner, Chris Kelleher, Jeff Donohoe

EXHIBIT "O"

DATE: 09/13/1996   TIME: 11:15P   DST NO.: 6744
Wayne County, PA
OFFICE OF THE Recorder of Deeds

RECEIPT NO : 412132   TYPE DOC : DEED
REC FEE                        18.50
LRT                            .50
SRT                            878.54
SRT                            878.54
WRT TAX                        8.50

# THIS DEED

MADE the 13th day of September, in the year of our Lord one thousand nine hundred and Ninety six (1996).

## BETWEEN

ROBERT M. SWINGLE and IRENE D. SWINGLE, his wife, of R.D. 36 Box 6723, Lake Ariel Pennsylvania 18436 and GLENNA J. CURTIS and MARION J. SWINGLE, of R.R. 34 Box 470, Lake Ariel, Pennsylvania 18436, hereinafter referred to as GRANTORS

## AND

NANCY ASARO AND LORI DRING, of 84 Greenvale Avenue, Wayne, New Jersey 07470, hereinafter referred to as GRANTEES

WITNESSETH that in consideration of Eighty Seven Thousand Fifty Three and 80/100 ($87,053.80), in hand paid, the receipt whereof is hereby acknowledged; the Grantors do hereby grant and convey to the said Grantees, their Heirs and Assigns,

ALL, that certain lot, piece or parcel of land, situate, lying and being in the Township of Lake, County of Wayne and State of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at the center of Pa State Route 191; thence South 40 degrees 45 minutes 00 seconds East 398.52 feet to a 1/2" set rebar; thence South 9 degrees 21 minutes 58 seconds East 941.63 feet to a 1/2" set rebar; thence North 60 degrees 26 minutes 47 seconds East 1347.25 feet to a 1/2" set rebar; thence North 59 degrees 40 minutes 13 seconds East 848.25 feet to a 1/2" set rebar; thence South 41 degrees 36 minutes 4 seconds East 287.77 feet to an iron pin found; thence South 45 degrees 43 minutes 4 seconds West 246.28 feet to an iron pin found; thence South 83 degrees 15 minutes 34 seconds West 98.71 feet to an iron pin found; thence South 37 degrees 42 minutes 59 seconds East 138.35 feet to an iron pin found; thence North 87 degrees 15 minutes 13 seconds West 176.94 feet; thence South 63 degrees 17 minutes 36 seconds West 95.64 feet; thence South 66 degrees 04 minutes 51 seconds West 123.62 feet; thence South 72

BOOK 1176 PAGE 0197

degrees 58 minutes 20 seconds West 17.41 feet; thence South 82 degrees 27 minutes 31 seconds West 108.24 feet; thence South 84 degrees 30 minutes 03 seconds West 115.43; thence South 31 degrees 00 minutes 12 seconds East 72.24 feet; thence South 60 degrees 43 minutes 12 seconds East 50.00 feet; thence South 62 degrees 50 minutes 16 seconds East 118.28 feet ; thence South 23 degrees 13 minutes 16 seconds East 83.45 feet; thence South 19 degrees 35 minutes 24 seconds West 51.22 feet; thence South 18 degrees 43 minutes 49 seconds West 61.91 feet; thence South 31 degrees 33 minutes 28 seconds West 40.07 feet; thence South 46 degrees 39 minutes 11 seconds West 179.90 feet; thence South 73 degrees 44 minutes 49 seconds West 90.63 feet; thence South 82 degrees 20 minutes 28 seconds West 74.71 feet; thence North 51 degrees 29 minutes 15 seconds West 40.15 feet; thence North 48 degrees 37 minutes 44 seconds West 72.70 feet; thence North 46 degrees 59 minutes 43 seconds West 71.63 feet; thence North 49 degrees 21 minutes 42 seconds West 91.37 feet; thence North 83 degrees 33 minutes 00 seconds West 106.81 feet; thence South 49 degrees 31 minutes 53 seconds West 91.81 feet; thence South 67 degrees 30 minutes 14 seconds West 83.56 feet; thence South 42 degrees 11 minutes 15 seconds West 87.05 feet; thence South 25 degrees 31 minutes 44 seconds West 106.34 feet; thence South 19 degrees 14 minutes 57 seconds West 83.49 feet; thence South 37 degrees 29 minutes 50 seconds West 119.85 feet; thence South 13 degrees 43 minutes 13 seconds East 83.70 feet; thence South 11 degrees 07 minutes 20 seconds East 63.69 feet; thence South 14 degrees 27 minutes 42 seconds West 47.39 feet; thence South 23 degrees 02 minutes 50 seconds West 57.02 feet;  thence South 15 degrees 11 minutes 21 seconds West 74.79 feet; thence South 59 degrees 19 minutes 21 seconds East 69.24 feet; thence North 68 degrees 57 minutes 37 seconds East 51.95 feet; thence South 16 degrees 14 minutes 38 seconds East 299.13 feet to an iron pin found; thence North 85° degrees 20 minutes 42 seconds West 780.83 feet to a 1/2" set rebar; thence North 52 degrees 27 minutes 28 seconds West 437.83 feet to a 1/2" set rebar; thence North 74 degrees 09 minutes 33 seconds East 104.27 feet to an iron pin found; thence North 15 degrees 50 minutes 07 seconds West 164.00 feet to an iron pin found; thence North 48 degrees 48 minutes 39 seconds West 165.31 feet to an iron pin found; thence North 16 degrees 19 minutes 59 seconds East 547.91 feet to an iron pin found; thence North 47 degrees 51 minutes 28 seconds East 640.04 feet to an iron pin found; thence North 16 degrees 17 minutes 40 seconds West 281.13 feet to an iron pin found; thence North 62 degrees 39 minutes 39 seconds West 242.00 feet to a point in the center of PA Stote Route 191; thence North 24 degrees 10 minutes 00 seconds East 204.91 feet to the point or place of BEGINNING.  CONTAINING 52.210 acres as surveyed by Tim A. Jones, Land Surveyor March 1, 1996.

BEING Parcel No. 1 on the approved subdivision map as recorded at Wayne county Map Book 85 at page 90.

BOOK 1176 PAGE 0198

BEING a part of those lands conveyed to the Grantors herein by Deed recorded at Book 776 page 193, and also at Book 776, page 308.

TOGETHER WITH the right in the grantees, their and assigns to use and improve each of the following two right of way which cross remaining lands of the grantors:

FIRST: BEGINNING in the centerline of T370 at the juncture of those measurements designated L42 and L43 on the aforesaid map; thence along a centerline bearing North 60 degrees 16 minutes 31 seconds East 311.37 feet to the edge of Parcel 1 described above. this right of way to be fifty feet, twenty-five feet to either side of the centerline.

SECOND: BEGINNING at the center of PA State Route 191 at the end point of that measurements designated L48; thence South 61 degrees 49 feet 58 seconds East 242.01; thence North 78 degrees 48 minutes 29 seconds West 165.51 feet along the aforesaid Parcel 1 above. This right of way to be fifty feet in width and parallel to the above two measurements as depicted on the survey map recorded at Map Book 35 at page 90.

TOGETHER WITH the right in the Grantors and their heirs, lives in being on this date, to go across at all reasonable times and places from their remaining lands so much of the land hereby conveyed as the Grantors have historically used to access the waters of Lake Ariel for fishing and boating, including the right to transport a boat to Lake Ariel. Should none of Grantors or their heirs as defined above, own adjoining lands, this right shall cease.

BEING a part of the premises which the Estate of Spencer Swingle, by Glenna J. Curtis, Executor, granted and conveyed unto Robert M. Swingle, Glenna J. Curtis and Marion J. Swingle, by deed dated February 4, 1993 and recorded in Wayne County Record Book 776 at page 193.

For an approved map showing the above described premises see Wayne County Map Book 35 at Page 90.

AND the said Grantors will Warrant SPECIALLY the property hereby conveyed.

BOOK 1176 PAGE 0199

*IN WITNESS WHEREOF*, the Grantors have hereunto set their hands and seals the day and year first above written.

SIGNED, SEALED and DELIVERED

In the presence of

*Robert M. Swingle* (SEAL)
ROBERT M. SWINGLE

*Irene D. Swingle* (SEAL)
IRENE D. SWINGLE

*Glenna J. Curtis* (SEAL)
GLENNA J. CURTIS

*Marion J. Swingle* (SEAL)
MARION J. SWINGLE

STATE OF Pennsylvania

COUNTY OF Wayne

:SS:

On this the 13th day of September 1996, before me a notary public, the undersigned officer, personally appeared ROBERT M. SWINGLE, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

*IN WITNESS WHEREOF*, I hereunto set my hand and official seal.

*Tracy L. VanBlarcom*
NOTARY PUBLIC

Notarial Seal
Tracy L. VanBlarcom, Notary Public
Honesdale Boro, Wayne County
My Commission Expires June 6, 1998

BOOK 1176 PAGE 0200

STATE OF Pennsylvania

COUNTY OF Wayne : ss:

On this the 13th day of September, 1996, before me a notary public, the undersigned officer, personally appeared IRENE D. SWINGLE, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notarial Seal
Tracy L. VanBlarcom, Notary Public
Honesdale Boro, Wayne County
My Commission Expires June 8, 1996

_Tracy L. VanBlarcom_
NOTARY PUBLIC

STATE OF Pennsylvania

COUNTY OF Wayne : ss:

On this the 13th day of September, 1996, before me a notary public, the undersigned officer, personally appeared GLENNA J. CURTIS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Tracy L. VanBlarcom_
NOTARY PUBLIC

Notarial Seal
Tracy L. VanBlarcom, Notary Public
Honesdale Boro, Wayne County
My Commission Expires June 8, 1996

BOOK 1176 PAGE 0201

STATE OF _Pennsylvania_ )
                                    ) SS:
COUNTY OF _Wayne_ )

On this the _13th_ day of _September_ ) 1996, before me a notary public, the undersigned officer, personally appeared *MARION J. SWIGLE*, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

*IN WITNESS WHEREOF*, I hereunto set my hand and official seal.

Notarial Seal
Tracy L. VanBlarcom, Notary Public
Manchester Boro, Wayne County
My Commission Expires June 8, 1999

_Tracy L. VanBlarcom_
NOTARY PUBLIC

*I HEREBY CERTIFY*, that the precise residence of the Grantee is 84 Greenvale Avenue, Wayne, New Jersey 07470.

Attorney for _____

I hereby CERTIFY that this document is recorded in the Recorder's Office of Wayne County, Pennsylvania.

_Ginger Golden_
Ginger Golden
Recorder of Deeds

RECORDER OF DEEDS OF WAYNE COUNTY
PENNSYLVANIA

BOOK 1176 PAGE 0202

H.K.S

EXHIBIT "P"

Case 3:23-cv-01576-JFS   Document 1-23   Filed 09/21/23   Page 2 of 5

12/12/2001   11:49   7172539579   Case 3:01-cv-00294-ARC   Document 155-2   Filed 04/05/05   Page 48 of 51   FRANCES GRUBER LESS   PAGE   02

ested By: Warren 12/12/2001

Instrument          Volume  Page
200100005687 DR    1815   149



200100005687
Filed for Record in
WAYNE COUNTY, PA.
GINGER GOLDEN
07-13-2001 At 04:06 pm.
DEED             16.50
STATE TAX      1373.20
LOCAL TAX      1373.20
DR Volume 1815 Page 149 - 152

_____ (Space Above This Line For Recording Data) _____

# THIS DEED

**MADE** the 4th day of July in the year of Our Lord two thousand one (2001).

### BETWEEN

**ROBERT M. SWINGLE** and **IRENE D. SWINGLE**, his wife; **GLENNA J. CURTIS** and **MARION J. SWINGLE** of 154 Hazel Road, Lake Ariel, Pennsylvania 18436, hereinafter referred to as _____ **GRANTORS**

### AND

**NANCY ASARO** and **LORI DRING** of 84 Greenvale Avenue, Wayne, New Jersey 07470, hereinafter referred to as _____ **GRANTEES**

**WITNESSETH** that in consideration of **ONE HUNDRED THIRTY-SEVEN THOUSAND THREE HUNDRED TWENTY** and 00/100 (**$137,320.00**) **DOLLARS**, in hand paid, the receipt whereof is hereby acknowledged, the Grantors do hereby grant and convey to the said Grantees, their Heirs and Assigns.

**ALL THAT CERTAIN** piece or parcel of land in Lake Township, Wayne County, Pennsylvania, bounded and described as follows:

**BEGINNING** at a point on the centerline of State Route 191 being the common corner of the lands of Grantors and of George Pitts (D.B. 515, P. 935); thence South

Case 3:23-cv-01576-JFS   Document 1-23   Filed 09/21/23   Page 3 of 5

12/12/2001  11:45   Case 3:01-cv-00294-ARC   Document 1-2   Filed 04/05/05   Page 49 of 51   PAGE   03
FRANCES GRUBER ESQ
quoted By: Larsen 12/12/2001

Instrument        Volume  Page
2001000056B7 OR     1815    150

69 degrees 32 minutes 30 seconds East 312.01 feet along the common line of the lands of Fitts to a point; thence South 32 degrees 29 minutes 21 seconds East 239.19 feet; thence South 63 degrees 59 minutes 55 seconds East 590.00 feet; South 11 degrees 0 minutes 0 seconds West 160 feet; thence South 75 degrees 0 minutes 0 seconds East 100 feet; thence North 11 degrees 0 minutes 0 seconds East 179.61 feet; thence North 75 degrees 29 minutes 40 seconds East 813.45 feet to a point in the line of the lands of Gasper Polizzi; thence South 41 degrees 56 minutes 04 seconds East 286.54 feet to a point; thence South 59 degrees 41 minutes 13 seconds West 848.25 feet to a point; thence South 60 degrees 26 minutes 47 seconds West 1,347.25 feet to a point for a corner; thence North 00 degrees 41 minutes 38 seconds West 941.63 feet to a point; thence North 40 degrees 43 minutes 0 seconds West 398.52 feet to a point in the center line of State Route 191; thence along the centerline of said road, North 24 degrees 10 minutes 0 seconds East 275.00 feet to the point or place of BEGINNING. CONTAINING 34.33 acres plus or minus, as surveyed by William F. Schoenagel, P.L.S. on May 4, 2001. Said map is approved by the Lake Township Planning Commission on May 29, 2001 and the Lake Township Board of Supervisors on June 5, 2001. The map is recorded in the Recorder of Deeds Office for Wayne County at Map Book 95 at Page 42.

BEING a part of those lands conveyed to the Grantors herein at Record Book 776, page 193.

TOGETHER with all and singular the buildings, improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, profits thereof; and all the estate, right, title, interest property, claim and demand whatsoever of the said Grantor as well at law as in equity, of, in, and to the same.

TO HAVE AND TO HOLD the said hereditaments and premises hereby granted, or mentioned, and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns forever.

AND the said ROBERT M. SWINGLE and IRENE D. SWINGLE, his wife, GLENNA J. CURTIS and MARION J. SWINGLE, their heirs, executors and administrators, do covenant, promise and agree to and with the said Grantees, their heirs and assigns, by these presents, that they, the said Grantors, and their heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against them, their heirs, and against all and every person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under them, or any of them, shall and will SPECIALLY WARRANT and forever DEFEND.

12/12/2001  11:49   7172539575          FRANCES GRUBER ESQ                    PAGE  04

Jsted By: Warren  12\12\2001

Instrument      Volume Page
200100005687 OR     1815   151

**IN WITNESS WHEREOF** *the Grantors have hereunto set their hands and seals the day and year first above written.*

*SIGNED, SEALED and DELIVERED*
*in the presence of:*

_____  _____ (Seal)
                                ROBERT M. SWINGLE

_____  _____ (Seal)
                                IRENE D. SWINGLE

_____  _____ (Seal)
                                GLENNA J. CURTIS

_____  _____ (Seal)
                                MARION J. SWINGLE

**COMMONWEALTH OF PENNSYLVANIA** }

**COUNTY OF WAYNE** }

On this the _____ day of _____ 2001, before me a notary public, the undersigned officer, personally appeared **ROBERT M. SWINGLE** and **IRENE D. SWINGLE**, his wife, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

*IN WITNESS WHEREOF, I hereunto set my hand and official seal.*

_____
NOTARY PUBLIC

NOTARIAL SEAL
Linda V. Rindock, Notary Public
City of Honesdale, County of Wayne
My Commission Expires Aug. 11, 2003

tested By: Warron 12/12/2001

Instrument   Volume Page
200100005687 OR   1815   152

**COMMONWEALTH OF PENNSYLVANIA** }

**COUNTY OF WAYNE** }

On this the ____ day of _____, 2001, before me a notary public, the undersigned officer, personally appeared GLENNA J. CURTIS known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

NOTARIAL SEAL
Linda V. Rindock, Notary Public
City of Honesdale, County of Wayne
My Commission Expires Aug. 13, 2003

NOTARY PUBLIC

**COMMONWEALTH OF PENNSYLVANIA** }

**COUNTY OF WAYNE** }

On this the ____ day of _____, 2001, before me a notary public, the undersigned officer personally appeared MARION J. SWINGLE, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

NOTARIAL SEAL
Linda V. Rindock, Notary Public
City of Honesdale, County of Wayne
My Commission Expires Aug. 13, 2003

NOTARY PUBLIC

I certify the residence of the within named grantee is:

84 Glenrd., Waymart, PA 01470

EXHIBIT "Q"

# CORRECTIVE DEED

THIS DEED made this _25_ day of _Aug._ A.D., 1998 by and between

ROBERT M. SWINGLE and IRENE D. SWINGLE, his wife, GLENNA J. CURTIS and

MARION J. SWINGLE, of _Lake Township, Wayne_

_County, Pa._, hereinafter called ———————————— GRANTORS.

AND

NANCY ASARO and LORI DRING of 84 Greenrale Avenue, Wayne, New Jersey

07470, hereinafter called ———————————— GRANTEES

WHEREAS, by Deed at Deed Book 119, Page 462, Spencer Swingle and Grace Swingle

obtained title to certain lands including a certain 55 acres tract first described at Deed Book 44,

Page 209 in a Deed from John Torrey, et ux to Jacob S. Smith, recorded April 1, 1874 and a

certain 105 acre parcel first described at Deed Book 30, Page 40 in a deed from Edward W.

Weston to Jeremiah T. Barnes recorded April 18, 1863; and,

WHEREAS, the aforementioned deeds and subsequent deeds in the Grantor's chain of

title, speak of the boundary of the land as being along the margin of said pond (Marsh Pond) at

the high water mark and along the highest flow of water in said pond (Jones Pond) and the Marsh

Pond; and,

WHEREAS, Grantors are descendants of and heirs of Spencer Swingle and other

Swingles in the chain of title who owned these 55 acre and 105 acre parcels; and

WHEREAS, Grantors sold certain lands to Grantees at Record Book 1176 at Page 197 using a survey description as depicted on a map at Map Book 85 at Page 90; and

WHEREAS, the exact historic margin of the flow of said ponds at the high water mark is other than the survey line delineated on the map at Map Book 85 at Page 90 mentioned above which map only depicts the waterline on the date of that survey; and

WHEREAS, the intent of Grantors in their Deed into Grantees was to convey all of their remaining lands bordering on Lake Ariel (formerly Jones Pond) and Marsh Pond (also known as Mud Pond), and the channel or stream connecting them;

NOW, THEREFORE, in consideration of ONE AND 00/100 ($1.00) DOLLAR, Grantors do hereby quit claim unto Grantees, all of their right, title and interest in and to any land to which Grantors have a claim by virtue of those deeds at Record Book 736, Page 318, and Record Book 776, Page 193, and prior deeds in the chain of title, which land lies between the boundary of any land previously conveyed by Grantors or their predecessors in title and the historic margin of said bodies of water known as Marsh Pond (now Mud Pond) and Jones Pond (now Lake Ariel) and the channel or stream connecting them.

No language contained herein shall be interpreted to diminish the reservation of rights by the Grantors in the prior deed to access the waters of Lake Ariel for fishing and boating, including the right to transport a boat to Lake Ariel.

IN WITNESS WHEREOF, the Grantors have hereunto set their hands and seals the day and year above written.

Signed, Sealed and Delivered
in the Presence of

_____          *Robert M. Swingle*
                                 ROBERT M. SWINGLE

_____          *Irene D. Swingle*
                                 IRENE D. SWINGLE

_____          *Glenna J. Curtis*
                                 GLENNA J. CURTIS

_____          *Marion J. Swingle*
                                 MARION J. SWINGLE

COMMONWEALTH OF PENNSYLVANIA   :

COUNTY OF *Wayne*              :

ON this, the 25th day of *August*, 1993, before me a Notary Public, the undersigned Officer, personally appeared ROBERT M. SWINGLE and IRENE D. SWINGLE, his wife, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

*Linda V. Bindock*
Notary Public

NOTARIAL SEAL
LINDA V. BINDOCK, NOTARY PUBLIC
HONESDALE BOROUGH, WAYNE COUNTY
MY COMMISSION EXPIRES AUGUST 1, 1996

EXHIBIT "R"

PENNSYLVNIA STATE STAMPS  $9.00 CANCELLED

AND   the said Grantors do hereby specially warrant the property hereby conveyed.

IN WITNESS WHEREOF,  said Grantors have hereunto   set their hands and seals, the day and year first above written.

SIGNED, SEALED AND DELIVERED

IN THE PRESENCE OF

Macy J.   Wacks,                              Rudy Koelsch                    (L.S.)

                                              Katherine Koelsch              (L.S.)

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF LUZERNE               SS

On this, the 4th,   day of September 1963,   before me, a Notary Public, the under-signed Officer, personally appeared Rudy Koelsch and Katherine Koelsch, his wife known to me (or satisfactorily proven)   to be the persons whose names are subscribed to the within instrument, and acknowledged that   they executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial seal.

                              Macy J. Wacks                    (SEAL)
                              Pittston, Pa. Notary Public,
                              Comm. xps. Mar.6,1965

Recorded in the office for the Recording of Deeds in and for Wayne County in Deed book 221, page 291. Witness my hand and seal this 5th. day of June, A.D. 1964, at 12:24 P.M.

                              L. Byron Davis,   Recorder, (SEAL)

A. J.  SCHRADER, UX, AL.                 THIS INDENTURE  Made the 20 day of

          TO                             April, 1964,  between A. J. SCHRADER

ARIEL LAND OWNERS INCORPORATED.          and  FLORENCE SCHRADER, his wife, of

                                         Roaring Brook Township, Lackawanna

                                         County, Pennsylvania, and  GEORGE W. HUSS,

and  ELIZABETH HUSS, his wife, of Ringtown, Schuylkill County, Pennsylvania, hereinafter called the "Grantors" and  ARIEL LAND OWNERS INCORPORATED  a Pennsylvania corporation, having its principal place of business at Lake Ariel, Pennsylvania, hereinafter called the "Grantee."

WITNESSETH;  That the Grantor for and in consideration of the sum of Eighty-two Thousand ($82,000) Dollars, lawful money of the United States of America, well and truly paid by the Grantee at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, enfeoffed,

released, conveyed and confirmed, and these presents, does grant, bargain, sell, alien, off, release, convey and confirm unto the said Grantee, its successors and Assigns.

FIRST PARCEL: All those certain pieces or parcels of land, and of land covered with water, situate in the Township of Lake, County of Wayne, and State of Pennsylvania numbered hereinafter as from November 1, to 10, inclusive and separately and specifically described as follows:

No. 1. All of a certain parcel of land and of land covered with water, known originally as "Jones Pond" and "Marsh Pond", and in recent years as "Lake Ariel". The Boundary thereof following the shore line of said lake, as said shore line is defined in the several deeds conveying lands bordering on said Lake, from the common owners of said Lake and of land surrounding it. The body of water in said pond or Lake covering approximately three hundred (300) acres of land and including an Island in said Lake near the Southerly shore thereof, known as "Dunman's Island". Being parts:

(a) of three original surveys or warrants in the names of George Kicker, Jr., Moses Gibson and Israel or Isaac Shaw, respectively, which the Commonwealth by patents dated the 27th and 13th, of June, 1815, and enrolled in Patent Book H. Vol. 12, Page 96 165, and 166 confirmed to

(b) Edward Tilghman, and which the said Edward Tilghman, by his last will and testament, dated November 19, 1814, and filed in the office of the Register of Wills for the City and County of Philadelphia, devised to his wife, Elizabeth Tilghman, by deed dated October 16, 1828, and recorded in Wayne County in Deed Book No. 6, page 360, granted and conveyed to

(c) Thomas Cadwalader and which the said Thomas Cadwalader by his last will and Testament, dated February 12, 1835, republished November 16, 1837, and recorded in the Office of the Register of Wills for the City and County of Philadelphia, devised to his wife, Mary Cadwalader, and a part of which, including the first parcel of land conveyed by this indenture.

(d) George Cadwalader, executor of the last Will and Testament of Mary Cadwalader, by deed bearing date April 29, 1872 and recorded in Wayne County in Deed Book No. 41, page 379, granted and conveyed by virtue of a power granted to him in said Will, to

(e) John Torrey, and which the said John Torrey, by deed dated December 12, 1877, and recorded in Wayne County in Deed Book No. 51, page 562, granted and conveyed to

(f) Simon Swingle, and which the said Simon Swingle, et al., by deed dated July 15, 1867, and recorded in Deed Book No. 64, page 360, granted and conveyed to

(g) Charles E. Mills, and which the said Charles E. Mills, et ux., by deed dated April 8, 1896, and recorded in Deed Book No. 80, page 25, granted and conveyed to

(h) Charles H. Schadt and F. J. Horan. Any portion of said body of water, if any, not included in the said deed from John Torrey to Simon Swingle, is included in the deed from Delinda Jones, et al., to Simon Swingle, and set forth in No. 2 of this Indenture.

No. 2. ALL that certain lot or parcel of land and of land conveyed with water, bounded and described as follows:

BEGINNING at a stake and stones on the east side of the so-called Jones Pond, about one hundred (100) feet from the West line of land conveyed by Elizabeth Tilghman to Asa Jones by deed dated June 3, 1820, and recorded in the office for recording deeds, etc., in and for the County of Wayne in Deed Book No. 8, page 111 and 112; thence south sixty-one (61) degrees twelve (12) minutes east thirty-five (35) feet to a rock for a corner; thence south eighteen (18) degrees thirty-five (35) minutes east five hundred and sixteen (516) feet to a stake and stones corner; thence south sixty-three (63) degrees ten (10) minutes west, one hundred eighty-four (184½) and one-half (184½) feet to a stake and stones corner in the line of land of H. M. Polley's Estate; thence along the line of said Polley's land north eighty-nine (89) degrees thirty (30) minutes west six

CCC016

hundred and fifty-six (656) feet to a corner in the margin of said pond in the line of
lands of Charles E. Mills aforesaid;  thence in a Northwesterly direction along the line
of lands of said Charles E. Mills following the margin of the pond, its several courses
and distances, around "outlet pond", to a point at the outlet in the line, first above de-
cribed from Elizabeth Tilghman to Joel Jones;  thence along the said line, north thirty-
(30) minutes east six hundred and thirty-one (631) feet to the margin of the pond at high
watermark, and thence in a southeasterly direction along the shore of the pond at high
water mark its several courses and distances, about three hundred and fifty (350) feet
more or less to the place of BEGINNING.  CONTAINING thirteen and one-half (13½) acres
be the same more or less, Being the same land which;

(a)  Delinda Jones, widow of Joel Jones, and Byron Jones, and Lucy Jones, his wife,
and Reuben P. Jones, and Abigail, his wife, the said Byron and Reuben P. Jones being
sons and heirs at law of the said Joel Jones, deceased, by their deed dated Nov. 29
1883, and recorded in Wayne County in Deed Book No. 63, page 574, etc. granted
and conveyed to

(b)  Simon Swingle, and which the said Simon Swingle, et al., by deed dated July
25, 1887,  and recorded in Wayne County in Deed Book No. 64, page 360, granted and con-
veyed to

(c)  Charles E. Mills, together with the right, title, and interest granted to
Simon Swingle, by the said Delinda Jones, Byron Jones, and Reuben P. Jones, under
that conveyance, and granted by the said Simon Swingle, et al., to the said Charles E.
Mills, in and to any and all land owned by the said Charles E. Mills, in and to any
and all land owned by the said Delinda Jones, Byron Jones, and Reuben P. Jones, or any
of them, on either side of said pond between High water mark of the pond and the pond at
any lower mark; together with also a private right of way as granted by the conveyance
aforesaid, over lands of the said Delinda Jones, Byron Jones, and Reuben P. Jones, or
any of them, from the main road past the barn of Reuben P. Jones, to the old saw mill,
as the said land or way, is now fenced, keeping closed all gates and bars that the
said Delinda Jones, Byron Jones, or Reuben P. Jones may erect and maintain across said land
for their convenience. The second parcel of land and its appurtenances is conveyed by
this Indenture, to be subject to all the conditions and provisions stated and mentioned
in the said Indenture from Delinda Jones, Byron Jones, and wife, and Reuben P. Jones and,
wife, to Simon Swingle, and from the said Simon Swingle, et al., to the said Charles E.
Mills.

No. 3.  Also all that other certain piece or parcel of land bounded and described
as follows:  BEGINNING at a point in the line of lands of Richard Snyder on the
margin of Jones Pond at low water mark;  thence along the shore line of said Jones
Pond at low water mark following the various windings and turnings in a general north-
easterly direction, about ninety-five (95) rods to a line of land purchased by the said
Charles E. Mills, from Simon Swingle, and S. L. Dark;  thence along said line south
eighty-nine and one-half (89½) degrees east fifty (50) feet to a corner;  thence in a
line parallel with the said shore line of the said Jones Pond and fifty (50) feet
therefrom, about ninety-five (95) rods in a general southwesterly direction to the
aforesaid line of land of Richard Snyder;  thence along Snyder's line north twenty-
eight and one-quarter (28¼) degrees west fifty (50) feet to the place of Beginning,
CONTAINING about one (1) acre and one hundred and twenty-seven (127) perches of land;
it being a part of a larger tract which the heirs of Horace M. Polley and Lucy Ann Polley
by their deed dated April 1, 1884, and recorded in Deed Book No. 60, page 184, granted
and conveyed to

(a)  Orian L. Polley, and which the said Orian L. Polley by deed dated December 31,
1887, and recorded in Wayne County in Deed Book No. 68, page 348, etc., granted and
conveyed to

(b)  Charles E. Mills,  by deed of the above premises from Orlan L. Polley, to the
said Charles E. Mills, containing the following clauses:  The true intent and meaning
of this conveyance is that it shall convey to the said Charles E. Mills, a strip of land
fifty (50) feet in width, lying along the shore of Jones Ponds  bounded as the westerly
extremity by lands of Richard Snyder, and at the easterly extremity on lands already
owned by the said Charles E. Mills.

No. 2.  ALL that other certain lot or parcel of land bounded and described as
follows:

BEGINNING  at a corner in the easterly margin of Lake Ariel;  thence along line
of lands included in this description conveyed to Ebenezer R. Jones, to John W. Sandercock
by deed dated September 21, 1874, deed book No. 49,  page 208, north forty-three
and one-fourth (43¼) degrees east, forty (40) rods to a corner;  thence by lands formerly
of Ebenezer R. Jones, now of Harry Simpson, south seventeen and one-half (17½) degrees
east twenty (20) rods to a corner;  thence still by lands of Harry Simpson, north forty
(40) degrees east fifty-two (52) rods to a corner;  thence along lands formerly of
Washington Noel, south thirty and one-half (30½) degrees east seventy-nine and three-
fourths (79-3/4) rods to a corner;  thence along line of lands formerly of Reuben P.
Jones now of Homer Jones, south eighty-five (85) degrees West thirty-two (32) rods to a
stake corner;  thence still along Jones' land south forty-five (45) degrees west forty-
seven and one-half (47½) rods to the northeasterly corner of a lot of land conveyed
by Reuben P. Jones and wife, and Delinda Jones to

(a).  Charles E. Mills,  by deed of November 1, 1888,  Deed Book No.  66, page
323,  and included in this description;  thence by said lot south nineteen (19) degrees
and twelve (12) minutes east forty-nine (49) feet to a  stake and stones corner;
thence south thirty-nine (39) degrees East sixty (60) feet to a stake and stones corner,
thence south fifty-six (56) degrees west two hundred (200) feet to the easterly margin
of Lake Ariel;  and thence along the easterly margin thereof by its various windings
and turnings about seventy and eight-tenths (70.8 ) rods to the place of Beginning.
CONTAINING.  approximately thirty-six (36) acres and sixty-six (66) perches of land,
Excepting and Reserving however,  from said parcel of land, four (4) separate lots which
have hereto been sold and conveyed as follows:

FIRST:  A certain triangular shaped lot of land lying along the northerly boundary
of the lot hereby conveyed, and described as follows:  -  BEGINNING  at the northwesterly
corner of a lot of land leased to B. H. Throop;  thence along the line of the  Throop
lot, north seventy (70) degrees and forty - eight (48) minutes east one hundred seventy
(170) feet to a corner;  thence north nineteen (19) degrees and twelve (12) minutes
west eighty-four (84) feet to a corner;  thence along the northerly boundary line afore-
said by lands now of Harry Simpson,  south forty-three and one-fourth (43¼) degrees west
one hundred ninety and one-half (190½) feet to the place of BEGINNING.  CONTAINING approx
imately seven thousand one hundred and forty (7,140) square feet  of land. Being the same
lot which Charles E. Mills and wife, by deed dated May,  1890,  and recorded in Deed Book,
No. 74,  page 293, etc.  granted and conveyed to John Simpson.

SECOND:  A certain triangular shaped lot of land lying along said northern boundary
bounded and described as follows:  BEGINNING  at a point in said boundary line twenty-
five (25) feet northeasterly from the middle of the public road leading from Lake Ariel
to Polley's Mills;  thence along line of land leased B. H. Throop, north sixty-five
and one-fourth (65¼) degrees east two hundred (200) feet to a stake and stones corner;
thence still by said Throop's land,  thirty and one-fourth (30¼) degrees west eighty
(80) feet to a corner in said boundary line;  thence by said boundary line,  south
forty-three and one-quarter (43¼) degrees west two hundred and fifteen (215) feet to the

Case 3:05-cv-00294-ARC   Document 152-3   Filed 04/05/05   Page 16 of 29

200

place of BEGINNING. CONTAINING seven thousand nine hundred and sixty-three (7,963) feet of land. Being the same land of which Charles E. Mills and wife, (jointly with F. H. Jones and wife) conveyed to the Sue-Pear Filley, by deed dated July 4, 1894, and recorded in the Deed Book No. 79, page 368.

THIRD. A certain other lot of land included within the boundaries of the lot hereby conveyed, bounded and described as follows: BEGINNING at the Northwesterly corner of a lot of land leased to P. H. Throop, Trustee, formerly the Hotel Pines Lot, fifty (50) feet from the easterly margin of Lake Ariel; thence by the line of said lot, north seventy-two (72) degrees east two hundred and thirty and nine-tenths (230.9) feet to the westerly margin of a public road and leading from Lake Ariel to Salem; thence along the margin of said road, north fifteen (15) degrees and eighteen (18) minutes west, one hundred and thirty-seven and one-half (137½) feet to the southeasterly corner of a lot leased to John P. Scragg; thence by the line of the said Scragg's lot, south seventy-two (72) degrees west two hundred and thirty and nine-tenths (230.9) feet to a corner fifty (50) feet distant from the easterly margin of Lake Ariel; and thence keeping fifty (50) feet from said margin south fifteen (15) degrees and eighteen (18) minutes East one hundred and thirty-seven and one-half (137½) feet to the place of BEGINNING. CONTAINING thirty-one thousand six hundred and fifty-eight (31,658) square feet of land, be the same more or less. Said lot of land being conveyed to Flora M. Schadt, Executrix, to Katherine B. Schadt, by two separate deeds, the first of which is dated May 29, 1917, and recorded in Deed Book No. 109, page 578, and the second of which, covering also the land, conveyed in the first deed, is dated August 31, 1921, and recorded in Deed Book No. 117 pge 93, etc.

FOURTH: A certain other lot of land included within the boundaries of a lot hereby conveyed, bounded and described as follows: BEGINNING at a corner in the easterly margin of a public road leading from Lake Ariel to the outlet of Lake Ariel, at the southwesterly corner of a lot of land leased to Margaret C. Throop; thence along the easterly margin of said road, south nineteen (19) degrees and twenty-seven (27) minutes east, three hundred eighty-eight, and eight-tenths (388.8) feet to a corner; thence by land herein conveyed, north sixty-nine (69) degrees and twenty-one (21) minutes east three hundred and twenty-seven and five-tenths (327.5) feet to a corner; thence by land hereby conveyed, north nineteen (19) degrees and three (3) minutes west four hundred and thirty-six and three tenths (436.3) feet to corner; thence by lands of E. P. Jones (Now Harry Simpson) south fifty-five (55) degrees and forty-seven (47) minutes West seventy-four (74) feet to a corner in the said lands leased to Margaret C. Throop; and thence by said lands, south sixty-three (63) degrees and thirteen (13) minutes West, two hundred and fifty-seven and five tenths (257.5) feet to the place of beginning, containing three (3) acres of land, be the same more or less. The said lot of land having been conveyed by Flora M. Schadt, Executrix to Katherine B. Schadt, by two separate deeds; the first one dated August 30, 1921, and recorded in Deed Book No. 117; pge 93, and the second one dated August 3, 1922, and recorded in Deed Book No. 118, page 397. The said parcel of land described in No. 4, of this conveyance having been conveyed to Charles E. Mills, by four separate deeds as follows:

FIRST: Deed from Washington Hoel to Simon Swingle, for six (6) acres and thirty-eight (38) perches, dated September 8, 1880, and recorded in Deed Book No. 53, page 578, etc., and from the said Simon Swingle to Charles E. Mills by deed dated July 15, 1887, and recorded in Deed Book No. 64, page 360, etc.

SECOND: Deed from John W. Sandercook to Simon Swingle, dated March 8, 1881, and recorded in Deed Book No. 53 page 577, and from the said Simon Swingle, to Charles E. Mills, by deed dated July 15, 1887, and recorded in Deed Book No. 64, page 369, etc.

This deed carries with it running with the land " a certain right of way leading through lands of Ebenezer R. Jones (Now Harry S. Simpson) from the lot conveyed to the Township leading to the Cherry Ridge and East Sterling Turnpike. With the provisions that the said private passage shall not be fenced, but that a suitable gate or bars shall be maintained at the point where it meets the said township road. This right of way having been originally granted, in the deed from Ebenezer R. Jones to the said John W. Sandercock.

THIRD: Deed from Washington Hoel to Charles E. Mills dated August 20, 1887 and recorded in Deed Book No. 65, page 113, etc.,.: This deed contains the following covenant; - "It is agreed by and between the aforesaid parties, their heirs and assigns that each shall build one-half of a line fence on the line between lands of the aforesaid parties."

FOURTH: Deed from Reuben F. Jones, and wife, and Delinda Jones to Charles E. Mills, dated Nov. 1, 1888, and recorded in Deed Book No. 66, page 323, etc. This deed contains a covenant, to the effect that Charles E. Mills, his heirs and assigns, shall erect and maintain at their own expense, all of the line fence between the lot conveyed and other lands of the Grantors, and shall be liable for all damages that may accrue by reason of neglect to build and maintain such fence.

No. 5: ALL that certain lot or parcel of land situated in the Village of Ariel, bounded and described as follows: viz. BEGINNING at the northeast corner of Lake Avenue and Maple Avenue in said village of Ariel; thence along said Lake Avenue north sixty (60) degrees and thirty (30) minutes east two hundred and forty-three (243) feet to a corner; thence North twenty-nine (29) degrees and thirty (30) minutes West one hundred and eighty (180) feet to a corner; thence along line between lots numbered twelve (12) and fourteen (14) south sixty (60) degrees and thirty (30) minutes east, two hundred forty-three (243) feet to easterly side of Maple Avenue; thence along said Maple Avenue, south twenty-nine (29) degrees and thirty (30) minutes east one hundred and eighty (180) feet to the place of BEGINNING. CONTAINING one (1) acre and one hundred and eighty (180) square feet of land. Being lots numbered fourteen (14) sixteen (16) and eighteen (18) on Lake Avenue, and one and three and Greene Street together with lots in their rear, as by reference to Village Map of Lake Ariel, will more fully appear. Being what is known as the Lake House Lot. And being a portion of the same lot of land which George Cadwalader, acting executor of Mary Cadwalader, deceased, conveyed to Dwight Mills by deed dated June 3, 1853, and recorded in Wayne County in Deed Book No. 22, page 13, etc., and which the said Dwight Mills by deed dated April 19, 1877 and recorded in Wayne County in Deed Book No. 49, page 329, etc. granted and conveyed to Simon Swingle afores aid, and which the said Simon Swingle, et al; by their deed dated July 15, 1887, and recorded in Wayne County in Deed Book No. 64, page 360, etc. granted, and conveyed to Charles E. Mills.

No. 6: Also one other certain piece or parcel of land situate in the Lake Township, aforesaid which Richard H. Simons and Byron F. Jones, Guardians of the Minor children of William Jones' of Salem Township, deceased, by virtue of a decree of the Orphans' Court of Wayne County made October 15, 1887, did by their deed dated December 5, 1887 and recorded in Wayne County in Deed Book No. 65, page 114, etc., granted and conveyed to Charles E. Mills aforesaid, said parcel of land being described as follows:

Beginning at a stone corner on the western margin of Jones Pond; thence by land of Edward . Weston (the grantor to William Jones) north fifty (50) degrees west, two hundred six and one-half (206½) rods to stones corner in the southwestern line of lands contracted to D. and H. Troesler; thence by land and land of Dwight Mills north forty (40) degrees east one hundred nineteen and one-half (119½) rods to a stones corner; thence by land of said Dwight Mills east eighteen and eight-tenths (18.8) rods to a yellow birch tree corner on margin of Jones Pond; thence southward by high water

mark along the margin of said pond two hundred and fifty (250) rods or thereabouts to the place of BEGINNING. CONTAINING one (100) acre be the same more or less. Comprising parts of lots numbered two hundred and sixty-one (261) and two hundred and sixty-four (264) in the allotment of Wm Wilson, and as recorded in Deed Book No. 28, page 92. Excepting and Reserving nevertheless, out of the above parcel of land, a certain lot of land known as the Hotel Columbia property, which is bounded and described as follows: Beginning at a corner in the center of the public road leading from Lake Ariel, to Hamlin; thence north sixty-eight (68) degrees west two hundred and ninety-five and one-half (295½) feet to a corner; thence north fifteen (15) degrees east three hundred and thirty-eight and nine-tenths (338.9) feet to a corner; thence south seventy-six (76) degrees east two hundred and ninety-five, and one-half (295½) feet to a corner in the midle of the road; thence by the middle of said road, south fifteen (15) degrees west three hundred and thirty-eight and nine-tenths (338.9) feet to the place of Beginning. Containing two and three-(2.3) acres, be the same more or less. Together with the right of bathing in Lake Ariel, and the right to maintain a pump at the shore of said Lake and convey water by sub-surface pipes from the said lake to the said Hotel Columbia property, as said rights are fully set forth in deed of said property from Flora M. Schadt, Executrix, to Thomas K. Fadden, dated June 30, 1922, and recorded in Deed Book No. 118, page 340. Excepting and reserving also another certain parcel of land bounded and described as follows:

BEGINNING on the line between what is known as Byron Jones property and the William Jones property at a distance of twelve hundred and twenty-three and nine-tenths (1,223.9) feet from the southwesterly corner of the William Jones lot (being the lot hereby conveyed); thence south seventy-seven (77) degrees and forty-four (44) minutes east two hundred and eight and eight-tenths (208.8) feet to a corner; thence south eighty-three (83) degrees and seventy (70) minutes east sixty-three and two tenths (63.2) feet to a corner; thence south nineteen (19) degrees and thirty-nine (39) minutes each two hundred and fifteen and six-tenths (215.6) feet to a corner; thence south twenty (20) degrees east ninety-eight and three-tenths (98.3) feet to a corner, and thence along the line between the William Jones and Byron Jones lots, north forty-four (44) degrees west about four hundred and ninety (490) feet to the place of Beginning. Containing approximately eight-tenths (8/10) of an acre, and including a portion of a small pond. Being a portion of a larger tract of land which Flora M. Schadt, Executrix, by deed dated April 29, 1920, and recorded in Deed Book No. 113, page 537, granted and conveyed to

(a) Rose E. Williams. The parcel of land conveyed by this Indenture being the same parcel of land which Richard H. Simons, and Byron E. Jones, Guardians of the minor Children, of William Jones, deceased by virtue of a decree of the Orphan's court of Wayne County Made October 15, 1887, and recorded in Deed Book No. 65, page 114, etc. granted and conveyed by Charles E. Mills.

No. 7. Also all that other certain lot or parcel of land situate in the Township of Lake, Bounded and described as follows: Being a triangular piece or parcel of land and bounded on the easterly side along the line of lands of John Blgart, and on the west side by lands conveyed by deed to said Charles E. Mills, to Jones Lake, R.R. Company for right of way, and on the Northerly side of lands of the Pennsylvania Coal Company. and containing one (1) acre and ninety-nine hundredths (1.99) acres be the same more or less. Excepting and reserving therefrom all the timber and lumber to Christopher W. Miller, with the privilege and right to enter upon the said premises and convey the same away. Excepting and reserving also from said lot a right of way for railroad purposes granted by the said Charles E. Mills to the Jones Lake R.R. Company, by deed, bearing date September 12, 1887, and recorded in Wayne County in Deed Book No. 65, page 210.

The above piece or parcel of land is a part of the same lot or tract of land conveyed by deed from Robert Price to Christopher Miller, dated March 28, 1877, and recorded in Deed Book No. 41, page 300, etc., as by reference to the records in Wayne County Will more fully appear; And being the same lot or parcel of land which the said Christopher Miller and wife by deed bearing date February 17, 1883, and recorded in Wayne County Deed Book No. 68, page 349, granted and conveyed to the etc.

(a)  Said Charles E. Mills, All and every the pieces or parcels of land hereinatove described, excepting such pieces or parcels as as hereinabove excepted and reserved were conveyed by Charles E. Mills and Allie E. Mills, his wife, to

(b)  Charles H. Schadt and P. J. Horan by deed dated April 8, 1896, and recorded in Wayne County in Deed Book No. 89, Page 25.

NO. 8:  ALL  that certain lot of land situate in the said Township of Lake, bounded and described as follows:  BEGINNING  at a corner which was formerly a post under the tressle work of the Pennsylvania Coal Company's light track railroad;  thence crossing the public road leading to Jonestown, and along the line of lands now Harry Simpson, south forty (40) degrees west seventy-four (74) rods to the margin of Jones Pond, now Lake Ariel;  thence along the northerly margin of said pond in a general westward course about sixty-seven and one-quarter (67¼) rods to a yellow birch tree corner and mentioned in the description of parcel six (6) of this conveyance, and the northeasterly corner of the tract of land conveyed to Charles E. Mills by the Estate of William Jones, deceased, as therein set forth;  thence leaving the margin of said pond, crossing the public road leading from Lake Ariel, to Salem, and along the line of lands conveyed as aforesaid from the William Jones Estate to Charles E. Mills west eighteen and one-half (18½) rods to a corner;  thence still along the line of the William Jones lot south forty (40) degrees  west one hundred and twenty-six (126) rods to a corner;  being the southwesterly corner of a certain lot of land conveyed by J. R. Barnes, Sheriff, of Wayne County to Dwight Mills;  thence by land formerly of William Kreiler, north fifty (50) degrees west eighty-one and six-tenths (81.6) rods to a corner;  thence along line of lands conveyed by Flora M. Schadt, Executrix to Howard A. Swingle, north forty-three (43) degrees and ten (10) minutes east nine hundred and eighty-two, and four-tenths (982.4) feet to a corner;  thence still by lands of said Swingle south thirty-eight (38) degrees, and fifty-two (52) minutes east twenty-four (24) feet to a corner;  thence still by lands of said Swingle north seventy (70) degrees and fourteen (14) minutes east three hundred and fifty (350) feet to a corner;  thence by lands conveyed by Flora M. Schadt, Executrix, to John A. Schadt, Jr., the following courses and distances south seventy-two (72) degrees and fifty-eight (58) minutes east four hundred and eighty (480) feet to a corner;  south forty-nine (49) degrees and eight (8) minutes east fifty-nine and six-tenths (59.6) feet to a corner;  south eighty-seven (87) degrees twenty-nine (29) minutes east one hundred and eighty-nine (189) feet to a corner;  south eighty-nine (89) degrees and twenty-three (23) minutes east one hundred and nineteen and one-tenth (119.1) feet to a corner;  thence north seventy-six (76) degrees and four minutes east two hundred and nine (209) feet to the westerly line of the right of way of the Jones Lake, R.R. Company at Station eight (8) plus seventy-one (71);  thence following said right of way line in a northwesterly direction along lands of John A. Schadt, Jr. and W. W. Mills to a point where the said right of way crosses the original line of the Dwight Mills lot;  thence by said original line, crossing the right of way line diagonally, and along lands of the Pennsylvania Coal Company, north two and one-quarter (2¼) degrees east about one hundred and twenty-two (122) feet to a corner;  thence by lands of the Pennsylvania Coal Company, and lands late of Jonathan Brown to the westerly side of the public road leading from Lake Ariel, to Salem;  thence along northerly along said road, north five (5) degrees and fifty-

CCC016

eight (50) minutes east twenty-six and two-tenths (26.2) feet; and north ten (10) degrees and six (6) minutes west one hundred and forty-nine and six-tenths (149.6) feet to the southerly side of Railroad Street, the main street leading through the Village of Arieli; thence along said street north sixty (60) degrees east thirty and seven-tenths (30.7) feet to a corner; thence along line of lands conveyed by George F. Simons, et al. to J.A. Bortree, south twenty-nine (29) degrees and thirty-eight (38) minutes west one hundred and fifty (150) feet to a corner; thence along the rear line of lots conveyed to Dwight Mills, et al., to E. G. Stevens, north sixty and one-half (60½) degrees east one hundred and twenty-seven (127) feet to a corner; thence by line of lands leased to Edgar Simons, by C. M. Schadt, et al., North twenty-six (26) degrees and twenty (20) minutes west one hundred and fifty (150) feet to the southerly line of said Railroad Street; thence along said street, north sixty (60) degrees east sixty-four and six-tenths (64.6) feet to a corner of Railroad Street and Maple Avenue; thence containing said courses across Maple Avenue, forty (40) feet to the easterly side thereof; thence along the easterly side of Maple Avenue, by lands of George Kellam, the Union Church, and Dr. M. C. White, south thirty-three (33) degrees and thirty (30) minutes east three hundred and forty (340) feet to a corner; thence by line dividing the White lot from lot leased to C. D. Jones as Trustees for the Methodist Church north fifty-six (56) degrees and thirty (30) minutes east one hundred and fifty (150) feet to a corner; thence along rear line of the White lot, parallel to the easterly line of Maple Avenue, ninety (90) feet to a corner; thence along the Northerly line of the White Lot, south fifty-six (56) degrees and thirty (30) minutes west, ninety (90) feet to a corner; thence along the rear line of the Union Church lot, parallel to the easterly line of Maple Avenue; sixty-five (65) feet to a corner; thence by land conveyed by Flora M. Schadt, Executrix to Clara T. Johnson, north sixty-three (63) degrees east sixty (60) feet to a corner; thence along said Johnson line north twenty-seven (27) degrees west one hundred and fifty-nine and seven-tenths (159.7) feet to an iron pipe for a corner, (on the southerly side of Railroad Street; thence crossing Railroad Street by the same course to the southerly right of way line of old Pennsylvania Coal Company's gravity railroad; thence easterly along said right of way line about ninety-five (95) rods to the line of the Dwight Mills purchase, which is the first mentioned line in this description; and thence northerly along said line across the southerly half of the Pennsylvania Coal Company right of way twenty-five (25) feet to the place of BEGINNING. Be the quantity of land therein contained more or less. Included within the boundaries of the foregoing description is the lot of land known as the Lake House property mentioned and described in Nos. 5 of this Indenture. Excepting and Reserving out of the parcel of Land No. 8, above described, the following lots or parcels of land hereinafter sold and conveyed, viz:

FIRST, All that certain parcel of land bounded and described as follows: BEGINNING at the southeasterly corner of Lot No. 13, in the westerly line of Lake Avenue, formerly known as Maple Avenue in the Village of Arieli, thence along the westerly line of said street north twenty-nine and one-half (29½) degrees west ninety (90) feet to a corner; thence by the north one-half (½) of Lot No. 11, on said street, and lands of Agnes B. Howe, south sixty and one-half (60½) degrees west one hundred and fifty (150) feet to a corner; thence along lands of the Charles M. Schadt Estate, south twenty-nine and one-half (29½) degrees east ninety (90) feet to a corner; thence by Lot No. 15, now lands of Carl H. Schadt, north sixty and one-half (60½) degrees east one hundred fifty (150) feet to the place of BEGINNING. CONTAINING thirteen thousand five hundred (13,500) square feet be the same more or less. Being the same land which the said Dwight Mills et ux. by deed dated May 13, 1892, and recorded in Wayne County in Deed Book No. 71, page 502, granted and conveyed to Alfa S. Keyes.

SECOND: Also all that certain parcel of land bounded and described as follows: BEGINNING at a corner in the westerly line of Maple Avenue; thence by a line at right angles to said westerly line of Maple Avenue, along lands of Alva S. Keyes one hundred and fifty (150) feet to a corner; thence by a line parallel with the westerly line of Maple Avenue, along line of lands of the Charles H. Schadt Estate, sixty (60) feet to a corner; thence by a line at right angles to the westerly line of Maple Avenue, along land of Roy M. Howe, one hundred and fifty (150) feet to the westerly line of Maple Avenue, and thence along said westerly line sixty (60) feet to the place of BEGINNING. CONTAINING nine thousand (9,000) square feet of land be the same more or less. And being the same parcel of land which Flora M. Schadt, Executrix, by deed dated September 29, 1913, and recorded in Deed Book No. 105, page 318, granted and conveyed to Agnes S. Howe.

THIRD: Also all that other certain piece or parcel of land bounded and described as follows: BEGINNING at a corner in the westerly line of lands of Maple Avenue; thence by a line at right angles thereto and along lands conveyed to Agnes S. Howe at last above described, one hundred and fifty (150) feet to a corner; thence by a line, parallel to the westerly line of Maple Avenue, along lands of the Charles H. Schadt Estate fifty (50) feet to a corner; thence by a line at right angles to the westerly line of Maple Avenue, and along line of lands leased to Samson and Cook, one hundred and fifty (150) feet to the westerly line of Maple Avenue; and thence along said westerly line fifty (50) feet to the place of BEGINNING. CONTAINING seventy-five hundred (7,500) square feet of land be the same more or less. And being the same land which Flora M. Schadt, Executrix by her deed dated September 29, 1913, and recorded in Deed Book No. 105, page 317, granting and conveyed to Roy M. Howe.

FOURTH: Also all that other certain lot or parcel of land bounded and described as follows: BEGINNING at a point on the westerly line of Maple Avenue, in the Village of Ariel; being the southwesterly corner of a lot of land belonging to Ava B. Keyes; thence westerly at right angles to said Maple Avenue, along the line of said Keyes, one hundred and fifty (150) feet to a corner; thence southerly on a line parallel to the line of said Maple Avenue, along lands formerly of the Charles H. Schadt Estate, one hundred and twenty (120) feet or thereabouts to the northerly line of Lake Avenue; thence along said northerly line of Lake Avenue one hundred and fifty (150) feet to its intersection at right angles with the westerly line of said Maple Avenue; and thence along the said westerly line of Maple Avenue one hundred and twenty (120) feet or thereabouts to the place of BEGINNING. CONTAINING approximately eighteen thousand (18,000) square feet of land, being the same parcel of land which Flora M. Schadt, Executrix, by her deed dated June 28, 1922, and recorded in Wayne County Deed Book No. 118 page 107, granted and conveyed to Carl H. Schadt.

FIFTH: Also all that other certain lot or parcel of land, bounded and described as follows: BEGINNING at Station sixty-three (63) by eighty (80) in the center line of the Jones Lake Railroad; thence westerly at right angles to said center line fifteen (15) feet to a corner in line of lands conveyed to the said Dwight Mills by the Pennsylvania Coal Company; thence southerly and curving to the right by a nineteen (19) degree curve to a point opposite Station One (1) of the line of the said proposed railroad to be built on the strip of land described and thirteen (13) feet westerly from said station; thence continuing by said curve to a point opposite Station Two (2) and eleven (11) feet Northerly therefrom; thence continuing by said curve and parallel to center line of said railroad to a point opposite station three and eleven (11) feet northwesterly from said station; thence continuing by said curve to a point opposite station four (4) and twelve (12) feet northerly from said station; thence continuing

by said curve and a reverse curve of twenty (20) degrees curve to a point opposite station five (5) and fourteen (14) feet northwesterly from said station; thence continuing said twenty (20) degrees curve and parallel to the center line of said proposed railroad to a point opposite station six (6) and fourteen (14) feet northwesterly from said station; thence continuing by said twenty (20) degree curve to a point opposite station seven (7) and nine (9) feet northwesterly from said station; thence continuing by said curve and parallel to the center line of said railroad to a point opposite station nine (9) and nine (9) feet westerly from said station; thence westerly at right angles to a tangent drawn to the curve at the last mentioned point thirteen (13) feet or twenty-two (22) feet westerly from said station nine (9); thence continuing by a line parallel to the center line of said proposed railroad to a point opposite station ten (10) and twenty-two (22) feet southwesterly from said station; thence by said curve to a point opposite station eleven (11) and twelve (12) feet southwesterly from said station; thence by said curve parallel to the center line of the said proposed railroad to a point opposite station twelve (12) and twelve (12) feet southerly from said station; thence by a line at right angles to the tangent drawn to the curve at the said last mentioned point ten (10) feet or twenty-two (22) feet from said station twelve (12) to a point in the line of a certain wire fence bordering the plank walk leading to the picnic grove; thence by the line of a said fence south, sixty-eight (68) degrees east three hundred and twenty-three (323) feet to a corner; thence by line of said fence north fifty-eight (58) degrees and fifty-seven (57) minutes east one hundred and seventeen and sixtenths (117.6) feet to a corner; thence by the line of said fence north twenty (20) degrees and fifty-one (51) minutes West two hundred and two (202) feet to a corner; twelve (12) feet easterly from the center line of a said railroad on said twenty (20) degrees curve; thence by said curve parallel to the said center line northerly to a point opposite station eighteen (18) and twelve (12) feet easterly from said station; thence westerly at right angles to a tangent drawn to the curve at said mentioned point crossing the center line of said proposed railroad at said station eighteen (18) twenty-four (24) feet to a point opposite to and twelve (12) feet westerly from said station eighteen (18); thence southerly, westerly and northerly by a twenty (20) degrees curve parallel to the center of the said proposed railroad to point opposite station nine and twelve feet easterly from said station; thence at right angles to a tangent drawn to the curve at said station nine (9) and two (2) feet to a point fourteen (14) feet easterly from said station nine (9); thence curving northerly by said curve and parallel to said center line to a point opposite station five (5) and fourteen (14) feet southeasterly from said station; thence at right angles to a tangent drawn to the curve at said station five (5), two (2) feet to a point opposite to and twelve (12) feet southwesterly from said station five; thence continuing by said curve and a reverse curve of nineteen degrees on a line parallel to the said center line to a point opposite the said station sixty-three (63) by eight (8) and twelve (12) feet easterly from said station; thence by a line at right angles to the center line of the said Jones Lake Railroad westerly twelve (12) feet to the point of beginning. Containing one and two-tenths (1.2) acres of land, be the same more or less. Being the same parcel of land, which the said Dwight Mills and wife by deed dated April 11, 1893, and recorded in Wayne County Deed Book No. 73, page 86, etc. granted and conveyed to the Jones Lake Railroad Company, the said conveyance from Dwight Mills to the said Jones Lake Railroad Company containing the following exceptions, reservations, and conditions, however, and this conveyance is made on the express understanding and agreement that neither the line of land hereby conveyed, nor any curving, filling or other improvement or appurtenances of the railroad proposed to be built on the strip of land

hereby conveyed shall extend west of the stone fence which is the westerly boundary of a certain lands leading from the barnyard of the said first part to the aforesaid picnic grove. And provided also that between the westerly rail of the proposed railroad and the line of said fence there shall be a passageway constructed by said second part not less than eight (8) feet in width on a level with the bed of the railroad to extend along the said stone fence in both directions until the said fence reached a point northerly and southerly at least ten (10) feet from the line of lands hereby conveyed and the said party of the first part, his heirs and Assigns, shall have the right to pass and re-pass along said passageway, to be reserved and constructed, on foot or with their cattle, teams sleighs, or wagons as often and at such times as they shall see fit to do so. Provided, and so that the said party of the first part for himself, his heirs and Assigns, shall have the right to cross the strip of land hereby conveyed and such railroad or other improvement as may be constructed upon it, with a wagon road at grade or near station eighteen (18) above mentioned, and also at or near station 12 above mentioned and to use said road for all purpose for which wagon roads are commonly used, provided that the movement of cars and trains of the second part, its successors and Assigns, shall at no time and in no way be interfered with. Provided also that the said party of the first part shall have the right to maintain a line of water, pipe under and across the strip of land hereby conveyed at such place or places as said pipe may cross, and by himself, his heirs and assigns, to enter upon the land hereby conveyed and do such acts as may be necessary for said maintenance, provided however, that in doing so, no injury shall be done to the lands of the said second party and the movement of cars and trains shall in no way and at no time, be interfered with. Said line of water pipe to be laid by the second party according to the terms of an agreement between the parties, hereby bearing the date of April 8, 1893. Provided also that the said party of the first part, his heirs and assigns, shall have the right to cross and re-cross the said strip of land hereby conveyed and the railroads and other improvements that may be placed upon it, etc., at which points as he may select for the purpose of gaining access from his other lands to the land enclosed in the strip hereby conveyed, which right to be exercised in such a way as not to interfere at any time or in any manner with the movement of cars or trains of the said second part, its successors or assigns. This conveyance is made in pursuance of a written agreement between the parties, said execution April 8, 1893, set forth fully the terms of sale and conditions.

Title to Parcel 8 having been described as follows: Being a portion of the second parcel of land which J. T. Barnes, Sheriff of Wayne County, by Sheriff Deed, Dated February 4, 1865, and recorded in Deed Book No. 32, Page 93, granted and conveyed to Dwight Mills and also Jane B. Mills, widow and Elizabeth M. Digart, et al. heirs of Dwight Mills, deceased, by deed dated April 8, 1896, and recorded in Deed Book No. 80, page 25, granted and conveyed to Charles H. Schudt and P. J. Horan. And being a portion of a certain other lot of land which George Cadwalader, Executor, etc. of Mary Cadwalader, deceased, by deed dated June 3, 1853, and recorded in Deed Book No. 22, page 13, granted and conveyed to the said Dwight Mills and which Jane B. Mills, widow, and Elizabeth M. Digart, et al. heirs of Dwight Mills, deceased BY THEIR deed of April 8, 1896, recorded in Deed Book No. 80, page 25, granted and conveyed to Charles H. Schudt and P. J. Horan.

NO. 9. Also all that other certain separate triangular plot or parcel of land lying on the north side of the abandoned right of way of the Pennsylvania Coal Company's Gravity Railroad; Beginning at a point in the Northeastern line of the parcel of land last above mentioned and having been conveyed by George Cadwalader, Executor of Dwight Mills, by deed dated June 3, 1853, thence by lands formerly of Susan

S. Sandercook, south fifty (50) degrees east two hundred fifty-four (254) feet to a corner on the Northerly right of way line of the abandoned rail road of the Pennsylvania Coal Company, thence following said line of right of way south fifty-five (55) degrees and forty-five (45) minutes west two hundred fifty-five (235) feet to a corner and thence by the rear of certain lots fronting on the public road leading from Lake Ariel to Gravity north one (1) degree and thirty (30) minutes east two hundred ninety (290) feet to the place of beginning. Containing approximately twenty-nine thousand (29,000) square feet of land. Being a portion of that certain parcel of land already mentioned which was conveyed to Dwight Mills by George Cadwelader, Executor by deed dated June 13, 1853 and recorded in Deed Book No. 122, page 13, etc.: The parcel last above described having been included in the conveyance already mentioned from Jane B. Mills, widow and Elizabeth Bigart, et al. heirs of Dwight Mills, deceased to Charles Schadt and P. J. Horan, dated April 8, 1896, and recorded in Deed Book No. 80 page 25.

No. 10. Also all that other certain lot or parcel of land bounded and described as follows: BEGINNING at a corner on the westerly margin of lands of Ariel, thence along the line which divides the lands of Byron Jones and J. S. Smith, North forty-four (44) degrees west two hundred fifty (250) feet to a corner in said land, thence by a line of land formerly of Byron Jones, now Rose E. Williams, the following courses and distances: north thirty-five (35) degrees and forty-four (44) minutes east seven hundred twenty-three (723) feet to a corner, north fifty (50) degrees twenty-seven (27) minutes, east three hundred four (304) feet to a corner, thence north thirty-five (35) degrees, and forty-eight (48) minutes, east nine hundred and ninety-eight (998) feet to a corner in the line dividing the Byron Jones farm from the William Jones farm, thence by said line south forty-four (44) degrees east three hundred sixty (360) feet or thereabouts to a corner at the Westerly margin of Lake Ariel, and thence along the westerly margin of Lake Ariel, as it winds and turns in a southwesterly direction about one thousand four hundred fifty (1,450) feet to the place of beginning. Containing approximately nine (9) acres of land. Being a portion of a larger parcel of land which Joel Jones and wife, by their deed dated January 1864, and recorded in Deed Book No. 31, page 76, etc. granted and conveyed to Byron Jones and Reuben P. Jones, the undivided one-half interest in which was conveyed by the said Reuben P. Jones to Byron Jones by deed dated April 10, 1879, and recorded in Deed book No. 53, page 134, in which said Byron Jones by his deed dated April 4, 1896, and recorded in Deed Book No. 80, page 23, granted and conveyed to the said Charles H. Schadt and P. J. Horan. By deed dated May 1, 1896, and recorded in Deed book No. 80, page 162, P. J. Horan, and wife, conveyed to M. J. Healey and wife an undivided one-half interest of the one-half interest which had thus become vested to P. J. Horan so that thereupon M. J. Healey took title to an undivided one-fourth interest in the whole and on the same at the time of his death having died intestate. By deed dated February 9, 1905, and recorded in Deed Book No. 94, page 281, P. J. Horan, and wife and Mary Healey, et al. heirs at law of M. J. Healey, deceased, joined in a conveyance to Charles H. Schadt of their undivided one-half interest in said property so that thereupon said Charles H. Schadt became vested with title to the entire property, including all of the parcels of land mentioned and described in this conveyance from No. 1, to No. 10 inclusive.

The above described lands being also the same premises that Floyd E. Bortree and Anna G. Bortree, his wife, by their deed dated February 17, 1933, and recorded in Wayne County Deed Book 136, page 454, granted and conveyed to F. E. Bortree Land Company. Being the same premises conveyed by F. E. Bortree Land Company to A. J. Schrader and George W. Mies, by deed dated January 15, 1954, and recorded in the office for the recording of Deeds in and for the County of Wayne in Deed Book 186, page 374 excepting and reserving, however, all pieces and parcels of land granted and conveyed adversely and

recorded in the office of Recorder of Deeds in and for Wayne County by the Sellers herein and their predecessors in title to and including the 19th day of August, 1963, subject also, nevertheless, to such easements, covenants, reservations and restrictions as appear in the chain of title, including lake rights granted to Paul M. Brown and Genevieve Brown his wife, by writing dated July 25, 1963, copy of which has been delivered by the Sellers herein to the Buyers, but which agreement is not recorded as of this date.

TOGETHER with all and singular thewers, waters, water coursed, rights, liberties privileges, hereditaments and appurtenances, whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, and interest, property, claim and demand whatsoever of A. J. Schrader and George W. Huss or their predecessors in title --- including, but not by way limitation, all rights, privileges, rents, rights, or reversions, and otherwise created by A. J. Schrader and George W. Huss, and their predecessors intitle in the execution of the various leases executed by F. E. Bortree Land Company and its predecessors in title, inlaw, equity, or otherwise howsoever of, in and to the same and every part thereof, as well as those created by A. J. Schrader and George W. Huss, Being the same premises conveyed by F. E. Bortree Land Company to A. J. Schrader and George W. Huss, by deed dated June 15, 1954, and recorded in Deed Book 186, Page 374.

SECOND PARCEL : Being all the right, title, and interest of A. J. Schrader and George W. Huss, in and to all those certain pieces or parcels of land situated in the township of Lake Ariel; County of Wayne, Pennsylvania, as are set forth in a deed dated February 3, 1955, from the Erie Railroad Company and duly recorded in the Office of Recorder of Deeds in and for the County of Wayne, in Deed Book 190, page 190, excepting and reserving therefrom conveyance to William H. Cook and duly recorded in Deed Book 192 page 40, also excepting premises conveyed to Arthur K. Davies, et ux. and duly recorded in Deed Book 296, page 192.

Both parcels are subject to such easements, conveyances and restrictions as appear in the chain of title and subject, further, to the conveyances and privileges as granted and conveyed adversely prior to August 19, 1963, and by reference to the various adverse conveyances and privileges, will appear in the chain of title.

TO HAVE AND TO HOLD the said Premises with all and singular the appurtenances and otherwise unto the Grantee, its successors and Assigns, to the only proper use, benefit and behoof of said Grantee, its successors and Assigns, forever, subject, however, to the exceptions and reservations and rendered and subject to the same as aforesaid.

The said Grantors do by these presents covenant, grant and agree to and with the said Ariel Land Owners, Incorporated its successors and Assigns, that they, the said Grantors, all and singular, the hereditaments and appurtenances hereinabove described and granted or mentioned and intended so to be with the appurtenances unto the said Ariel Land Owners, Incorporated its successors and assigns against them and the said Grantors, and against all and every person or persons whosoever lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend.

FEDERAL STAMPS $ .90.20 CANCELLED

PENNSYLVANIA STATE STAMPS $ 820.00 CANCELLED.

IN WITNESS WHEREOF, the said Grantors have hereunto set their hands and seals, the day and year aforesaid.

A. J. Schrader        (Seal)

Florence Schrader      (SEAL)

George W. Huss        (SEAL)

Elizabeth Huss        (SEAL)

STATE OF PENNSYLVANIA
                              SS
COUNTY OF SCHUYLKILL

On this the 20th. day of April, 1964,   before me, a Notary Public, the undersigned Officer, personally appeared George W. Huss and Elizabeth Huss, his wife, known to me (or satisfactorily proven) to be the persons whose names  are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

                                        Weller Hunsinger            (SEAL)
                                        Notary Public. My comm. Exps. Feb. 1, 1965

STATE OF PENNSYLVANIA
                              SS
COUNTY OF LACKAWANNA

On this, the ------ day of April, 1964,   before me, a Notary Public, the undersigned Officer, personally appeared A. J. Schrader and Florence Schrader, his wife known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I Hereunto set my hand and official seal.

                                        Pauline E. Kingsley, Notary Public, (SEAL)
                                        My comm/Exps. My comm. Exps. Jan. 6, 1965
                                        Scranton-Lackawanna County.

I Hereby Certify, that the precise address of the Grantee herein, is Box 205, Lake Ariel, Pa.

                                        William Dempsey,

                                        Attorney for Grantee

Recorded in the office for the Recording of Deeds in and for Wayne County in Deed book 221, page  292. Witness my hand and seal this  5th, day of June, A.D. 1964 at 1:49 P.M.

                                        L. Byron Davis,   Recorder, (SEAL)

JAMES RUTHERFORD,   ET UX.           THIS DEED, Made the second day of June, in the
                TO                   year of our Lord one thousand nine hundred and
LYDIA  SMITH                         sixty-Four.  Between JAMES RUTHERFORD,  and DOROTHY
                                     RUTHERFORD, his wife, of the Township of Texas,
                                     County of Wayne and Commonwealth of Pennsylvania,
GRANTORS,  and  LYDIA SMITH, of the Township of Texas,  County of Wayne, and Commonwealth of Pennsylvania, GRANTEE.

WITNESSETH,  that in consideration of Eighteen Hundred Dollars, in hand paid, the receipt whereof is hereby acknowledged:  the Grantors do hereby Grant and convey to the

EXHIBIT "S"

# QUIT CLAIM DEED

**THIS DEED**, made the _2nd_ day of _November_ in the year two thousand and one (2001), between **RENSSELAER POLYTECHNIC INSTITUTE** of Troy, New York, (hereinafter called the "Grantor") and **LORI DRING AND NANCY ASARO**, of Wayne, New Jersey, as joint tenants with the right of survivorship, and not as tenants in common, (hereinafter called the "Grantees");

**WHEREAS**, by Deed dated December 13, 1859, recorded October 16, 1860, in Deed Book 28, Page 36, George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder, deceased, granted and conveyed to Edward W. Weston certain real property in Salem Township (now Lake Township), Wayne County, Pennsylvania; and

**WHEREAS**, by subsequent Deeds, Weston granted and conveyed portions of the said real property but did not convey the area between the margin of the highest flow of water on the one hand and the margin of the flow of Marsh Pond and the natural western margin of Jones Pond on the other hand; and

**WHEREAS**, upon the death of Weston, one-third (1/3) of the residue of his Estate passed to his son, Charles S. Weston; and

**WHEREAS**, Charles S. Weston during his lifetime did not convey the area between the margin of the highest flow of water on the one hand and the margin of the flow of Marsh Pond and the natural western margin of Jones Pond on the other hand;

**WHEREAS**, upon the death of Charles S. Weston, two-thirds (2/3) of the residue of his estate passed to Rensselaer Polytechnic Institute under Section 30 of his Will dated January 5, 1937;

**NOW, THEREFORE, WITNESSETH**, that in consideration of the sum of One Dollar ($1.00), in hand paid, the receipt whereof is hereby acknowledged, the said Grantor does hereby release and quit claim to the said Grantees the land situated between the highest flow of water of Jones Pond and Marsh Pond on the one hand and the margin of the flow of Marsh Pond (now Mud

306391.1

Pond) and the natural western margin of Jones Pond (now Lake Ariel) on the other hand. Further, the said Grantor does hereby release and quit claim to the said Grantees lands between the middle of the stream or channel connecting these two ponds on the one hand and the western banks to the highest flow of the stream or channel on the other hand. All of the foregoing having been acquired by Grantor as above set forth or by any other means.

By acceptance of this Deed, the Grantee covenants that it will not, without the prior written consent of the Grantor, sell, assign, gift, bequest or transfer in any manner its interest in the real property conveyed hereunder to any person or entity, if such transfer would adversely affect any adjoining property owners or property owners along the same side of the Lake as the parcel conveyed hereunder or the Lake/Homeowners Association. An adverse affect would be created (but is not limited to the following examples) if the Grantee transfers the parcel conveyed herein for any sum of money larger than the price paid to the Grantor or by prohibiting physical access to the Lake. This restriction shall be binding upon any subsequent Grantee. The Grantor herein and its successors or assigns or designees shall have the sole right to enforce, grant relief from, or dissolve this restriction.

**IN WITNESS WHEREOF**, Grantor has caused these presents to be executed by its proper officers the day and year first above written.

ATTEST:                                          RENSSELAER POLYTECHNIC INSTITUTE

_____                By: _____

_____                By: _____

106391.1

STATE OF NEW YORK                              :        SS:
COUNTY OF   Rensselaer                         :

    ON THIS the  2nd  day of   November   , 2001, before me, the undersigned officer, personally appeared   Shirley Ann Jackson   , who acknowledged himself/herself to be the   President   of   Rensselaer Polytechnic Institute   , and that he/she as such officer being duly authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as such officer.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

CHARLES F. CARLETTA
Notary Public, State of New York
Registration #4514874
Residing in Rensselaer County
My Commission Expires July 31, 19__   Oct 19, '05

STATE OF NEW YORK                              :        SS:
COUNTY OF _____             :

    ON THIS the ____ day of _____, 2001, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, and that he/she as such officer being duly authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as such officer.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

306391.1

EXHIBIT "T"

12/17/2001 16:08 FAX 570 826 5640        R. J&G SSC                              ☑012/019

## QUIT CLAIM DEED

THIS DEED, made the 6th day of December in the year two thousand and one (2001), between WELLS COLLEGE, Aurora, New York, ("Grantor") and LORI DRING and NANCY ASARO of Wayne, New Jersey, as joint tenants with the right of survivorship, and not as tenants in common ("Grantee");

WHEREAS, by Deed dated December 13, 1859, recorded October 16, 1860, in Deed Book 28, Page 36, George Cadwalder, Executor of the Last Will and Testament of Mary Cadwalder, deceased, granted and conveyed to Edward W. Weston certain real property in Salem Township (now Lake Township), Wayne County, Pennsylvania; and

WHEREAS, by subsequent Deeds, Weston granted and conveyed portions of the said real property but did not convey the area between the margin of the highest flow of water on the one hand and the margin of the flow of Marsh Pond and the natural western margin of Jones Pond on the other hand; and

WHEREAS, upon the death of Weston, one-third (1/3) of the residue of his estate passed to his son, Charles S. Weston; and

WHEREAS, Charles S. Weston during his lifetime did not convey the area between the margin of the highest flow of water on the one hand and the margin of the flow of Marsh Pond and the natural western margin of Jones Pond on the other hand;

WHEREAS, upon the death of Charles S. Weston, one-third (1/3) of the residue of his estate passed to Wells College under Section 29 of his Will dated January 5, 1937;

**NOW, THEREFORE, WITNESSETH**, that in consideration of the sum of One Dollar ($1.00), in hand paid, the receipt whereof is hereby acknowledged, Grantor does hereby release and quit claim to Grantee the land situated between the highest flow of water of Jones Pond and Marsh Pond on the one hand and the margin of the flow of Marsh Pond (now Mud Pond) and the natural western margin of Jones Pond (now Lake Ariel) on the other hand. Further, Grantor does hereby release and quit claim to Grantee lands between the middle of the stream or channel connecting these two ponds on the one hand and the western banks to the highest flow of the stream or channel on the other hand. All of the foregoing having been acquired by Grantor as above set forth or by any other means.

By acceptance of this Deed, the Grantee covenants that it will not, without the prior written consent of Grantor, sell, assign, gift, bequest or transfer in any manner its interest in the real property conveyed hereunder to any person or entity, if such transfer would adversely affect any adjoining property owners or property owners along the same side of the Lake as the parcel conveyed hereunder or the Lake/Homeowners Association. An adverse affect would be created (but is not limited to the following examples) if the Grantee transfers the parcel conveyed herein for any sum of money larger than the price paid to the Grantor or by prohibiting physical access to the Lake. This restriction shall be binding upon any subsequent Grantee. The Grantor herein and its successors or assigns or designees shall have the sole right to enforce, grant relief from, or dissolve this covenant.

Case 3:23-cv-01576-JFS   Document 1-27   Filed 09/21/23   Page 4 of 5
Case 3:01-cv-00294-ARC   Document 155-3   Filed 04/05/05   Page 24 of 29
12/17/2001 16:08 FAX 570 826 5840          R,J&G-SSC                         Ø014/019

**IN WITNESS WHEREOF,** Grantor has caused these presents to be executed by its proper officer the day and year first above written.

ATTEST:

WELLS COLLEGE

By: _Diane L Hutchinson_
Diane L. Hutchinson
Vice-President and Treasurer

736937.01 12/05/2001

STATE OF NEW YORK          )
COUNTY OF CAYUGA           ) SS.:

      On this the __lo__ day of December in the year 2001, before me, the undersigned, personally appeared DIANE L. HUTCHINSON, who acknowledged herself to be the Vice-President and Treasurer of WELLS COLLEGE, and that she as such officer being duly authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by herself as such officer.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                     _Kit H Van Orman_
                                        Notary Public

                        KIT H. VANORMAN
                Notary Public, State of New York
                      No. 4952102
                Qualified in Cayuga County #2195
            Commission Expires June 12, 20 _23_

EXHIBIT "U"

# QUIT CLAIM DEED

Made this *16* day of October, in the year Two Thousand Twenty (2020)

BETWEEN     **WELLS COLLEGE**, whose address is 170 Main Street, Aurora, State of New York 13026,

GRANTOR

and

**LORI DRING,** of Oak Ridge, New Jersey and **NANCY ASARO,** of Wayne, New Jersey

GRANTEES

**WHEREAS,** by Deed dated December 6, 2001 Wells College of Aurora, New York, (hereinafter called "Grantor") conveyed a strip of property along the West Shore of Lake Ariel in Wayne County, Pennsylvania between the margin of the highest flow of water on the one hand and the margin of the flow of Marsh Pond and the natural western margin of Jones Pond (now known as Lake Ariel) hereinafter referred to as the "West Shore Strip" on the other hand, to Lori Dring, and Nancy Asaro (hereinafter called "Grantees"); and;

*RAW LAKE TWP.*

**WHEREAS,** the December 6th 2001 Deed was recorded in the Office of the Recorder of Deeds of Wayne County to Instrument 200X200001359 or Volume 1931 at page 204; and;

**WHEREAS,** the aforementioned Deed contained a restriction that reads as follows (hereinafter the "Original Restriction"):

> "By acceptance of this Deed, the Grantees covenant that they will not, without the prior written consent of the Grantor, sell, assign, gift, bequest or transfer in any manner it's interest in the real property conveyed hereunder to any person or entity, if such transfer would adversely affect any adjoining property owners or property owners along the same side of the Lake as the parcel conveyed hereunder or the Lake/Homeowners Association. An adverse effect would be created (but is not limited to the following examples) if the Grantees transfer the parcel conveyed herein for any sum of money larger than the price paid to the Grantor or by prohibiting physical access to the Lake. This restriction shall be binding upon any subsequent Grantee. The Grantor herein and its successors and assigns or designees shall have the sole right to enforce, grant relief from or dissolve this covenant."

1020201.1

**WHEREAS**, because the Grantees have been involved in extensive litigation with various parties and Grantees have incurred attorney's fees, expert witness fees and other expenses, fees, and costs which greatly exceed the price paid to the Grantor by the Grantees, the Grantor has agreed to dissolve the Original Restriction and instead impose the following replacement restriction (hereinafter the "Replacement Restriction"):

"By acceptance of this Deed, the Grantees covenant that they will not, without the prior written consent of the Grantor, sell, assign, gift, bequest or transfer in any manner its interest in the real property conveyed hereunder to any person or entity, if such transfer would adversely affect any adjoining property owners along the same side of the Lake as the parcel conveyed in the November 2nd, 2001 Deed or the Lake/Homeowners Association, but only if the consideration to be received by the Grantees for such sale, assignment, gift, bequest or transfer is for a sum of money that exceeds the original price paid to the Grantor, increased all attorney's fees, expert witness fees and other fees, costs and expenses incurred by or on behalf of the Grantees in connection with any lawsuits (included Appeals) instituted against the Grantees contesting Grantees rights in or ownership or exclusive right to use the property conveyed by the November 2, 2001 Deed, and all such fees and expenses incurred in order to defend title to such property The amount of all such fees and expenses shall be as determined by the Grantor based upon records submitted by the Grantees. The Grantor herein and its successors or assigns or designees shall have the sole right to enforce, grant relief from or dissolve this Replacement Restriction"; and

*by RAW*

**NOW THEREFORE**, in consideration of ONE and 00/100 DOLLAR ($1.00) in hand paid, and intending to be legally bound hereby, the said Grantor does hereby release the Grantees from the Original Restriction, and does hereby impose the Replacement Restriction; By acceptance of this Deed the Grantees agree to be bound by the terms hereof:

**IN WITNESS WHEREOF**, said Grantor has caused these presents to be executed by its proper officer the day and year first above written.

WITNESS/ATTEST:

_____

WELLS COLLEGE

By: _____ (Seal)

Name: Jonathan C. Gibralter

Title: Preseident

1020201.1

STATE OF NEW YORK      :
                       :
COUNTY OF ONONDAGA :

     On this the _16_ day of October, 2020, before me, a Notary Public, in and for said State and County, personally appeared Jonathan C. Gibralter who acknowledged himself to be the President of WELLS COLLEGE, and that he as such officer being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company by himself as such officer.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                             Notary Public

JOHN H. CALLAHAN
Notary Public, State of New York
Qualified in Onon. Co. No. 4758407
Commission Expires March 30, _2022_

I HEREBY CERTIFY that the precise address of the Grantee herein is:

     29 Sleepy Hollow Drive
     Oakridge, NJ 07438
     R. Anthony Waldron, Esq.
                          Attorney for Grantee

1020201.1

EXHIBIT "V"

## AGREEMENT AND RELEASE

This Agreement and Release is made this 20th day of April, 2019, between Plaintiffs, Marjorie Gillespie et al and the other plaintiffs (collectively the "Plaintiffs"), and Defendants, Lori Dring and Nancy Asaro ("Dring and Asaro"), through their respective counsel.

WHEREAS, Plaintiffs instituted an action in the United States District Court for the Middle District of Pennsylvania, 2015-CV-00950, seeking an order of court requiring Dring and Asaro to convey to each of them an easement to access Lake Ariel over a parcel of land on the west shore of Lake Ariel, known as the West Shore Strip, and, a declaratory judgment from the Court that each of them owned a prescriptive easement to access Lake Ariel over the West Shore Strip.

WHEREAS, Dring and Asaro filed an Answer in said action denying that they had any obligation to convey to Plaintiffs an easement to access Lake Ariel across the West Shore Strip, and further denying that Plaintiffs held a prescriptive easement to cross the West Shore Strip.

WHEREAS, Dring and Asaro also filed a counterclaim in said action seeking damages and other relief from Plaintiffs on the grounds that Plaintiffs had been trespassing on the West Shore Strip, and a claim for reimbursement of attorney's fees and expenses.

WHEREAS, the Court, on October 10, 2018, granted summary judgment for Dring and Asaro on the claims contained in Plaintiffs' Complaint.

WHEREAS, the Court has scheduled trial on the counterclaim of Dring and Asaro for the July, 2019 trial list, and Dring and Asaro's claim for attorney's fees has been held in abeyance.

WHEREAS, the parties have agreed on a partial settlement of their dispute, which will involve the dismissal of the counterclaim without prejudice.



963046.1

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 87 of 130
Case 3:23-cv-01576-JPW   Document 47-1   Filed 02/23/24   Page 2 of 4
Case 3:15-cv-00950-MWB   Document 128-2   Filed 08/01/19   Page 2 of 4

NOW THEREFORE, intending to be legally bound, Plaintiffs and Dring and Asaro, through their respective counsel, agree on the following:

1.   The counterclaim filed by Dring and Asaro in this matter shall be dismissed without prejudice, and the parties shall sign and file with the Court the Stipulated Order attached hereto as Exhibit "A".

2.   Without releasing any of their claims for any continuing trespass, Dring and Asaro hereby release Plaintiffs for all claims arising out of any trespass over the West Shore Strip that has occurred or may occur prior to April 1, 2019.

3.   Dring and Asaro reserve the right to pursue trespass claims for any trespass over the West Shore Strip that may be committed by Plaintiffs or their successors-in-interest or successors-in-title on or after April 1, 2019, and to pursue any claims for any continuing trespass which commenced prior to that date.

4.   Plaintiffs or their successors-in-interest or successors-in-title reserve the right to defend against any trespass claims filed by Dring and Asaro or their successors-in-interest or successors-in-title for any trespass that may be committed over the west shore strip on or after April 1, 2019 and to defend against any claims for continuing trespass which commenced prior to that date.

5.   This Agreement and Release is not intended to be, nor should it be construed, as a waiver by Plaintiffs, their successors-in-interest or successors-in-title of any defenses that they may have to any trespass claim instituted by Dring and Asaro or their successors-in-interest or successors-in-title for trespass committed on or after April 1, 2019, or any claim instituted by Dring and Asaro or their successors-in-interest or successors-in-title for continuing trespass which commenced prior to that date.

2

6.   This Agreement and Release is not intended to be, nor should it be construed as a waiver by Dring and Asaro of any rights or claims they may have, arising out of trespass occurring on or after April 1, 2019, or for any continuing trespass which commenced prior to that date.

7.   Plaintiffs acknowledge Dring and Asaro's ownership of the west shore strip, and that, any construction that they may perform on the west shore strip is done at their own risk.

8.   Dring and Asaro acknowledge that the approval of the Stipulated Order referred to in this Agreement and Release will constitute a final resolution of all of the issues pending in this matter in the United States District Court, and therefore at that time  Plaintiffs may choose to appeal to the Third Circuit Court of Appeals from the Summary Judgment Order of the District Court entered on October 10, 2018; however, the parties agree that Dring and Asaro may submit an application for an award of attorney's fees, costs and expenses to the District Court within thirty (30) days after approval of the Stipulated Order attached hereto as Exhibit A.

9.   Dring and Asaro reserve the right to contest and/or defend against any such appeal filed by Plaintiffs.

10.    Plaintiffs and Dring and Asaro agree that the time for either of them to pursue any claim for attorney's fees, costs and expenses, arising out of an appeal of this litigation, shall be extended to 30 days after (A) final resolution by the appellate Courts; or (B) the time to appeal a judgment of the appellate Court has expired.

11.   This Agreement and Release constitutes the entire agreement of the parties as to the matters set forth herein. It may be amended only by an amendment signed by the parties or their counsel.

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 89 of 130
Case 3:23-cv-01576-JPW   Document 47-1   Filed 02/23/24   Page 4 of 4
Case 3:15-cv-00950-MWB   Document 128-2   Filed 08/01/19   Page 4 of 4

12.   The undersigned represent that they have the authority to enter into this

Agreement and Release on behalf of their respective clients.

13.   The parties agree that the Release set forth in Paragraph 2, above, shall not be

effective unless and until the Court approves the Stipulated Order attached hereto

as Exhibit "A".

14.   This agreement may be signed in counterparts.

Michael Pronta, Esq.
DeCotiis, FitzPatrick & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666
*Counsel for Defendants/Counterclaim Plaintiffs,*
*Lori Dring and Nancy Asaro*

Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
*Counsel for Plaintiffs/Counterclaim Defendants,*
*Marjorie Gillespie et al.*

EXHIBIT "W"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARJORIE M. GILLESPIE, et al.

                  Plaintiffs

v.

LORI DRING and NANCY ASARO

                  Defendants

No. 3:15-CV-00950 ARC

Judge A. Richard Caputo

(ELECTRONICALLY FILED)

## STIPULATED ORDER

      Plaintiffs/Counterclaim Defendants, Marjorie Gillespie et al., and

Defendants/Counterclaim Plaintiffs, Lori Dring and Nancy Asaro, through their respective

counsel, hereby stipulate pursuant to Federal Rule of Civil Procedure 41(a) and (c) that the

counterclaim filed by Defendants/ Counterclaim Plaintiffs, be voluntarily dismissed without

prejudice. However, Defendant/Counterclaim Plaintiffs' claim for attorneys' fees, costs and

expenses is specifically not dismissed, and the parties agree that Dring and Asaro may submit an

application for an award of attorneys' fees, costs and expenses to the District Court within thirty

(30) days of the approval of this Stipulation.

Respectfully submitted,

Michael Profita, Esq.
DeCotiis, FitzPatrick & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666
*Counsel for Defendants/ Counterclaim Plaintiffs,*
*Lori Dring and Nancy Asaro*

Respectfully submitted,

Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com
*Counsel for Plaintiffs and Counterclaim Defendants,*
*Marjorie Gillespie et al.*

IT IS SO ORDERED, this   23rd   day of   April  , 2019.

By the Court:

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

962948.1



EXHIBIT "X"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARJORIE M. GILLESPIE, et al.

                                Plaintiffs

v.

LORI DRING and NANCY ASARO

                             Defendants

No. 3:15-CV-00950 ARC

Judge A. Richard Caputo

### PLAINTIFFS', MARJORIE M. GILLESPIE, ET AL., BRIEF IN OPPOSITION TO DEFENDANTS' APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO SECTION 14 OF THE SETTLEMENT AGREEMENT

Respectfully submitted,

/s/Joseph A. O'Brien, Esq.
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103

/s/ Jenna Kraycer Tuzze, Esq.
Jenna Kraycer Tuzze, Esq.
Attorney I.D. No.: 324116
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: mjob@oprlaw.com
*ATTORNEYS FOR PLAINTIFFS*



### Table of Contents

I.   Counter Statement of Facts and Procedural History ...........................................1

II.   Counter Statement of Questions Involved ........................................................6

    **A.   Whether Dring and Asaro constitute the prevailing parties under the Settlement Agreement, and thus are entitled to attorneys' fees?** ...................6

    **B.   Whether, in the event the Court determines that Dring and Asaro are the prevailing parties under the Settlement Agreement, the fees claimed in their Application for Attorneys' Fees are reasonable and thus recoverable?** 6

    **C.   Whether the determination as to whether Dring and Asaro are entitled attorneys' fees should be stayed until the resolution of the appeals  of this matter and the ALO litigation to the Third Circuit and whether such applications for attorneys' fees in both matters should be consolidated into one proceeding?** ...................................................................................7

    **D.   Whether Dring and Asaro are entitled to recover attorneys' fees when such fees were not paid by them, but rather were paid by their father, Joseph Asaro?** ...............................................................................7

    **E.   Whether Dring and Asaro are entitled to supplemental attorneys' fees incurred in the litigation of the Application for Attorneys' Fees?** .................7

    **F.   Whether this Court should hold a hearing on the issue of attorneys' fees in this matter if it does not stay the determination of Dring and Asaro's entitlement to attorneys' fees until after the appeal?** ........................8

III.   Argument ...................................................................................8

    **A.   Dring and Asaro are not the prevailing parties under the Settlement Agreement in this matter and thus should not be entitled to attorneys' fees in this matter.** ...........................................................................12

    **B.   In the event the Court determines that Dring and Asaro are the prevailing parties under the Settlement Agreement, the fees claimed by them in their Application for Attorneys' fees are not reasonable and should be limited.** ...............................................................................15

    **C.   This Honorable Court should stay the determination as to whether Dring and Asaro are entitled attorneys' fees until the resolution of the appeals and should consolidate the determination of the entitlement to**

attorneys' fees in both the instant matter and the ALO litigation into one proceeding. ...............................................................................................20

D.   Dring and Asaro should not be entitled to recover attorneys' fees as such fees were not paid by them, but rather were paid by their father, Joseph Asaro. ..............................................................................................22

E.   Dring and Asaro are not entitled to supplemental attorneys' fees incurred in the litigation of the Application for Attorneys' fees. ...................24

F.   This Court should hold a hearing on the issue of attorneys' fees in this matter if it does not stay the determination of Dring and Asaro's entitlement to attorneys' fees until after the appeal. ............................................................27

IV.   Conclusion .............................................................................................27

Certificate of Word Count ....................................................................................29

Certificate of Service ...........................................................................................30

## <u>Table of Authorities</u>

**Cases**

*Allums v. Workmen's Comp. Appeal Bd.*, 532 A.2d 549, 551-52 (Pa. Cmwlth. Ct. 1987)..................................................................................................25

*Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 3:01-cv-0294..............1, 2

*Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)....................................................11

*Christian v. Honeywell Retirement Benefit Plan*, 2014 U.S. Dist. LEXIS 57063 (E.D. P. 2014).......................................................................................................20

*Cordero v. Potomoc Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa. Super. 2002)......12

*e.g. Polselli v. Nationwide Mut. Fire & Ins. Co.*, 126 F.3d 524, 531-32 (3d Cir. 1997) ............................................................................................................. 22, 25

*Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 360-61 (3d Cir. 2001)............................................................................................................11

*Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co.*, 173 A.2d 109, 113 (Pa. 1961)............................................................................................................9

*Gustine Uniontown Associates, Ltd. V. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa. Super. 2006) ......................................................................................9

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)....................................................10

*Interfaith Community Organization v. Honeywell Int'l, Inc.*, 726 F.3d 403 (3d Cir. 2013) .................................................................................................................9

*Local 827 IBEW v. Verizon N.J., Inc.*, 2006 U.S. Dist. LEXIS 56453 at *12-13 (D.N.J. 2006) ................................................................................................ 20, 21

*Lori Dring and Nancy Asaro v. Ariel Land Owners, Inc.*, 3:15-cv-00478-ARC  3, 4, 5

*McMullen v. Kutz*, 925 A.2d 832, 834-35 (Pa. Super. 2007) ...............................9, 10

*Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd.*, 659 A.2d 1067, 1070-71 (Pa. Cmwlth. Ct. 1995) .......................................................................25

*Old Forge School District v. Highmark Inc.*, 924 A.2d 1205, 1211 (Pa. 2007)......20

*Polselli; Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) .................24

*Profit Wize Marketing v. Weist*, 812 A.2d 1270, 1275-76 (Pa. Super. 2002) .........13

*Public Interest Research Group of N.J., Inc. v. Windfall*, 51 F.3d 1179, 1190 (3d Cir. 1995)............................................................................................................24

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)................. 10, 11, 15, 17

*Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.2d 1, 48 (Pa. 2011) .................20

*Security Mortgage Co. v. Powers*, 278 U.S. 149, 154 (1928) ...................................9

*Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 293 (Pa. Super. 2005).....................9

*Souryavong v. Lackawanna County*, 159 F. Supp. 3d 514 (M.D. Pa. 2016) (Caputo, J.) .................................................................................................. 10, 15

*Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996) ..............................................................................10

*Weidner v. Workmen's Comp. Appeal Bd.*, 442 A.2d 242, 245 (Pa. 1982)...... 24, 25

*West v. Keve*, 721 F.2d 91, 95 n. 5 (3d Cir. 1983)..................................20

*White v. New Hampshire*, 455 U.S. 445, 449-50 (1982) ..........................20

**Other Authorities**

Black's Law Dictionary, 6th ed., at 1188 ..............................................13

Black's Law Dictionary, 7th ed. at 1206 ..............................................12

**Rules**

FRCP 41 ................................................................................................14

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 98 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 6 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 6 of 35

AND NOW COMES Plaintiffs, Marjorie M. Gillespie, et al., by and through their counsel, Oliver, Price and Rhodes, and hereby submit this Brief in Opposition to Defendants' Application for Reasonable Attorneys' Fees and Costs Pursuant to Section 14 of the Settlement Agreement, as follows.

## I.   COUNTER STATEMENT OF FACTS AND PROCEDURAL HISTORY

The instant litigation arises out of a long-standing dispute over property rights at Lake Ariel in Wayne County, Pennsylvania. There are three (3) groups of parties involved in the dispute: Ariel Land Owners, Inc. (hereinafter "ALO"), which owns Lake Ariel; Lori Dring and Nancy Asaro (hereinafter "Dring" and "Asaro"), who own approximately eighty-nine (89) acres of land on the western shore of Lake Ariel as well as a strip of land between Gillespie's land and Lake Ariel, which has come to be known as the West Shore Strip; and a group of individuals who own homes along the western shore of Lake Ariel, north of Dring and Asaro's property (hereinafter "Gillespie").

There was prior litigation between the parties prior to the instant suit, which began with the filing of a Quiet Title Action by ALO against Dring and Asaro on May 17, 1999. Dring and Asaro eventually removed the Quiet Title Action to the United States District Court for the Middle District of Pennsylvania and filed counterclaims against ALO. *See Ariel Land Owners, Inc. v. Lori Dring and Nancy Asaro*, 3:01-cv-0294. Dring and Asaro also joined Gillespie as counterclaim

1

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 99 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 7 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 7 of 35

defendants in the prior litigation for trespass over the West Shore Strip, requesting that Gillespie be ejected from the land and also requesting damages for the alleged trespass. The parties eventually entered into a partial settlement and presented to the Court a written settlement agreement (hereinafter the "Settlement Agreement"), which set forth obligations between ALO and Dring and Asaro and between Dring and Asaro and Gillespie. *See* Exhibit "A". The Settlement Agreement provided, among other things, that ALO and Dring and Asaro release claims against each other, and that Gillespie and Dring and Asaro release claims against each other. *Id.* Per the Settlement Agreement, Dring and Asaro were required to subdivide the West Shore Strip into two (2) parcels. *Id.* The Settlement Agreement also required Dring and Asaro to execute and deliver to ALO a quitclaim deed to the north parcel of the West Shore Strip, subject to a permanent easement over that section of the West Shore Strip in favor of Gillespie. Further, the Settlement Agreement required ALO to grant Dring and Asaro a permanent easement over a parcel of property known as Cardinal Lane. *Id.* The Settlement Agreement also provided that all claims against Gillespie would be dismissed with prejudice. *Id.*

Through no fault of Gillespie, the Settlement Agreement was not performed by Dring and Asaro and ALO. At the time of the execution of the Settlement Agreement, it was believed that ALO had good title to Cardinal Lane. ALO had received a deed for the property in 2004 which was recorded in Wayne County

2

shortly thereafter. However, the prior owners of Cardinal Lane had previously
conveyed the same property to other persons, the Culottas, in 2002. Since that
time, the Court of Common Pleas of Wayne County has determined that the
Culottas, not ALO, have title to Cardinal Lane. ALO was thus unable to convey an
easement to Dring and Asaro over Cardinal Lane. Additionally, Dring and Asaro
did not subdivide the West Shore Strip as required by the Settlement Agreement.
Gillespie performed all that was required of them under the Settlement Agreement.

Dring and Asaro then filed suit against ALO on March 10, 2015, claiming
damages for ALO's alleged breach of the Settlement Agreement through ALO's
failure to provide an easement to Dring and Asaro over Cardinal Lane (hereinafter
the "ALO litigation"). *See Lori Dring and Nancy Asaro v. Ariel Land Owners,
Inc.*, 3:15-cv-00478-ARC at Doc. 1. ALO filed a counterclaim against Dring and
Asaro for breach of contract for their failure to subdivide the West Shore Strip on
May 14, 2015. *Id.* at Doc. 6. The parties filed cross-motions for summary judgment
on October 31, 2016. *Id.* at Docs. 32, 37. On August 16, 2018, the Court granted
ALO's Motion for Summary Judgment on the sole count of Dring and Asaro's
Amended Complaint for breach of contract. *Id.* at Docs. 83, 84, 86. The Court also
granted Dring and Asaro's Motion for Partial Summary Judgment on ALO's
counterclaim, and denied it in respect to the sole count of their Amended
Complaint. *Id.* at Docs. 83, 84, 85. Dring and Asaro thus filed a Notice of Appeal

3

on August 28, 2018, which is currently pending. *Id.* at Doc. 88. The Court also

ordered, on August 29, 2018, that the parties' may file a request for attorneys' fees

by a deadline of fourteen (14) days following the final judgment of the Court of

Appeals. *Id.* at Doc. 89.

Gillespie initiated the instant action by the filing of a Complaint in the United

States District Court for the Middle District of Pennsylvania on May 15, 2015,

which was the result of Dring and Asaro refusing to convey an easement over the

West Shore Strip to Gillespie. Doc. 1. Gillespie also asserted a claim for

prescriptive easements over the West Shore Strip. *Id.* Dring and Asaro filed a

Motion to Dismiss Gillespie's Complaint on July 17, 2015. Doc. 6. The Court

granted Dring and Asaro's Motion in part and denied it in part. Docs. 15, 16.

Subsequently, on November 24, 2015, Gillespie filed an Amended Complaint.

Doc. 22. Dring and Asaro filed an Answer on December 23, 2015, including a

counterclaim against Gillespie for trespass over the West Shore Strip and for

damages and other appropriate relief. Doc. 25.

In the intervening time frame, there were multiple Motions filed by both

parties, not relevant for purposes of this Brief. Then, on April 2, 2018, Dring and

Asaro filed a Motion for Summary Judgment. Doc. 61. On June 4, 2018, Gillespie

filed a Brief in Opposition to Dring and Asaro's Motion for Summary Judgment.

Doc. 76. On October 10, 2018, this Court granted Dring and Asaro's Motion for

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 102 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 10 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 10 of 35

Summary Judgment and directed the Clerk of Court to close the case "as no claims remain[ed]." Docs. 98, 99. Dring and Asaro's counterclaim against Gillespie still remained, however, so the Court subsequently directed the Clerk to reopen the case. Doc. 104. On April 20, 2019, the parties executed an Agreement and Release to partially resolve their dispute. *See* Exhibit "B". The Agreement and Release provided in relevant part that Dring and Asaro's counterclaim would be dismissed without prejudice and that all claims arising out of any trespass over the West Shore Strip which occurred prior to April , 2019 were released. *See id.* Based on the Agreement and Release, the parties then entered into a Stipulation (Doc. 113), approved by the Court on April 23, 2019 (Doc. 114), to dismiss Dring and Asaro's counterclaim without prejudice. That Order stated that Dring and Asaro's claim for attorneys' fees and costs shall be submitted within 30 days of such Order. Doc. 114. The Court granted an extension of time to file such Application (Doc. 117), which was ultimately filed by Dring and Asaro on June 13, 2019 (Doc. 119). Gillespie appealed the Court's Order to the United States Court of Appeals for the Third Circuit on May 10, 2019. Doc. 115. Such appeal is currently pending.

Dring and Asaro are represented by the same counsel in both actions (Robert N. Gawlas, Jr., Esq., Garry Taroli, Esq., and Michael Profita, Esq.), and ALO and Gillespie are both represented by the undersigned in both actions.

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 103 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 11 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 11 of 35

The basis for Dring and Asaro's claim for attorneys' fees arises out of Section 14 of the Settlement Agreement, which provides as follows:

14. The United States District Court for the Middle District of Pennsylvania shall have exclusive jurisdiction over any action or proceeding involving the interpretation or breach of this Agreement, and the parties hereto submit to the personal jurisdiction of such Court. The prevailing party in any such action shall be entitled to recover reasonable attorneys' fees from the other party.

## II.   COUNTER STATEMENT OF QUESTIONS INVOLVED

### A.   WHETHER DRING AND ASARO CONSTITUTE THE PREVAILING PARTIES UNDER THE SETTLEMENT AGREEMENT, AND THUS ARE ENTITLED TO ATTORNEYS' FEES?

SUGGESTED ANSWER: No. Dring and Asaro are not the prevailing parties under the Settlement Agreement in this matter and **thus should not be entitled to attorneys' fees in this matter.**

### B.   WHETHER, IN THE EVENT THE COURT DETERMINES THAT DRING AND ASARO ARE THE PREVAILING PARTIES UNDER THE SETTLEMENT AGREEMENT, THE FEES CLAIMED IN THEIR APPLICATION FOR ATTORNEYS' FEES ARE REASONABLE AND THUS RECOVERABLE?

SUGGESTED ANSWER: No. In the event the Court determines that Dring and Asaro are the prevailing parties under the Settlement Agreement, the fees claimed by them in

6

their Application for Attorneys' fees are not reasonable and should be limited.

**C.** **WHETHER THE DETERMINATION AS TO WHETHER DRING AND ASARO ARE ENTITLED ATTORNEYS' FEES SHOULD BE STAYED UNTIL THE RESOLUTION OF THE APPEALS OF THIS MATTER AND THE ALO LITIGATION TO THE THIRD CIRCUIT AND WHETHER SUCH APPLICATIONS FOR ATTORNEYS' FEES IN BOTH MATTERS SHOULD BE CONSOLIDATED INTO ONE PROCEEDING?**

> **SUGGESTED ANSWER**: Yes. This Honorable Court should stay the determination as to whether Dring and Asaro are entitled attorneys' fees until the resolution of the appeals and should consolidate the determination of the entitlement to attorneys' fees in both this matter and the ALO litigation into one proceeding.

**D.** **WHETHER DRING AND ASARO ARE ENTITLED TO RECOVER ATTORNEYS' FEES WHEN SUCH FEES WERE NOT PAID BY THEM, BUT RATHER WERE PAID BY THEIR FATHER, JOSEPH ASARO?**

> **SUGGESTED ANSWER**: No. Dring and Asaro should not be entitled to recover attorneys' fees as such fees were not paid by them, but rather were paid by their father, Joseph Asaro.

**E.** **WHETHER DRING AND ASARO ARE ENTITLED TO SUPPLEMENTAL ATTORNEYS' FEES INCURRED IN THE LITIGATION OF THE APPLICATION FOR ATTORNEYS' FEES?**

> **SUGGESTED ANSWER**: No. Dring and Asaro are not
> entitled to supplemental attorneys' fees incurred in the litigation
> of the Application for Attorneys' fees.

F. **WHETHER THIS COURT SHOULD HOLD A HEARING ON THE ISSUE OF ATTORNEYS' FEES IN THIS MATTER IF IT DOES NOT STAY THE DETERMINATION OF DRING AND ASARO'S ENTITLEMENT TO ATTORNEYS' FEES UNTIL AFTER THE APPEAL?**

> **SUGGESTED ANSWER**: Yes. This Court should hold a
> hearing on the issue of attorneys' fees in this matter if it does
> not stay the determination of Dring and Asaro's entitlement to
> attorneys' fees until after the appeal.

III. **ARGUMENT**

ALO, Dring and Asaro, and Gillespie entered into a Settlement Agreement following prior, similar litigation between the parties. The Settlement Agreement provides that "the United States District Court for the Middle District of Pennsylvania shall have exclusive jurisdiction over any action or proceeding involving the interpretation or breach of this Agreement, and the parties hereto submit to the personal jurisdiction of such Court. The prevailing party in any such action shall be entitled to recover reasonable attorneys' fees from the other party." *See* Exhibit "A".

8

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 106 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 14 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 14 of 35

The intent of the parties to a written contract is ascertained from that writing. *Gustine Uniontown Associates, Ltd. V. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa. Super. 2006). The contractual terms are ascribed their ordinary meaning. *Id.* Where language is unambiguous, the intent is gleaned from the language. *Id.*

Regarding attorneys' fees, generally, Pennsylvania follows the "American rule", which precludes the award of attorneys' fees in the absence of a statutory or contractual obligation. *Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co.*, 173 A.2d 109, 113 (Pa. 1961). If a contractual provision provides for the payment of attorneys' fees, Pennsylvania law requires that attorneys' fees be reasonable. *McMullen v. Kutz*, 925 A.2d 832, 834-35 (Pa. Super. 2007). The construction of a fee-shifting agreement between parties is a question of local law. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154 (1928).

As a general rule, the method for determining a fee for legal services provided on an hourly basis is to multiply the total number of hours reasonably expended by the reasonable hourly rate. *Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 293 (Pa. Super. 2005). This method is known as the "lodestar method". *Id.* Additionally, the "forum rate rule" says that the relevant rate for calculating attorneys' fees is the relevant rate in the forum. *See Interfaith Community Organization v. Honeywell Int'l, Inc.*, 726 F.3d 403 (3d Cir. 2013).

9

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 107 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 15 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 15 of 35

The lodestar method does not complete the fee inquiry, however. Other considerations may lead the court to adjust the fee upward or downward. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Pennsylvania Supreme Court has also forth a number of factors that a court must consider in determining a reasonable award of attorneys' fees, including: the amount of work performed, the character of the services rendered, the difficulty of the problems involved, the importance of the litigation, the amount of money or value of the property in question, the degree of responsibility incurred, the professional skill and standing of the attorney in his or her profession, the results the attorney was able to obtain, and the ability of the client to pay a reasonable fee for the services rendered. *McMullen v. Kutz*, 985 A.2d 769 (Pa. 2009). The Court may also consider the relief rewarded as compared to that requested as one measure of how successful the petitioner was. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996); *Souryavong v. Lackawanna County*, 159 F. Supp. 3d 514 (M.D. Pa. 2016) (Caputo, J.).

The Third Circuit, in *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990), described the procedure relative to an attorneys' fees claim, as follows:

The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed. In a statutory fee case,

10

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 108 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 16 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 16 of 35

the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease the fee award based on facts not raised at all by the adverse party. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections.

*Id.*

An attorney requesting a fee award must establish the rate with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 360-61 (3d Cir. 2001). The fee applicant bears the burden of documenting the applicable hourly rate. *Id.* The fee petitioner bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered, and such evidence is necessary to make out a prima facie case. *Id.*

In the current matter, Dring and Asaro's claim for attorneys' fees is based on the Settlement Agreement between the parties, and is thus governed by Pennsylvania law. The Settlement Agreement provides that attorneys' fees are to

11

be awarded to the prevailing party in any action involving the interpretation or

breach of the Settlement Agreement. *See* Exhibit "A".

**A. Dring and Asaro are not the prevailing parties under the Settlement Agreement in this matter and thus should not be entitled to attorneys' fees in this matter.**

The definition of "prevailing party" differs depending on whether the right to

attorneys' fees derives from a statute or through the contractual agreement of the

parties. The claim for attorneys' fees at issue in this matter arises from the

Settlement Agreement between the parties.

The Settlement Agreement does not provide a definition of "prevailing party".

As a result, the Court should look to the ordinary and plain meaning of "prevail" to

discern the contractual intent of the parties. *See Cordero v. Potomoc Ins. Co. of*

*Illinois*, 794 A.2d 897, 900 (Pa. Super. 2002). For example, Merriam Webster's

has defined "prevail" as "to gain ascendancy through strength or superiority;

TRIUMPH." Merriam Webster's Collegiate Dictionary, 7th Ed. At 924. Similarly,

but in the context of the law, Black's Law Dictionary has defined "prevail" as "to

obtain the relief sought in an action; to win a lawsuit . . .". Black's Law Dictionary,

7th ed. at 1206. Black's Law Dictionary has also defined "prevailing party" as

"[t]he party to a suit who successfully prosecutes the action or successfully defends

against it, prevailing on the main issue, even though not necessarily to the extent of

his original contention; the one in whose favor the decision or verdict is rendered

12

and judgment entered." Black's Law Dictionary, 6th ed., at 1188. The Pennsylvania Superior Court has noted that "prevailing party" is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . Such a pronouncement does not accompany a compromise or settlement." *Profit Wize Marketing v. Weist*, 812 A.2d 1270, 1275-76 (Pa. Super. 2002).

As stated previously, in this matter, Gillespie sued Dring and Asaro for breach of contract, for Dring and Asaro's failure to convey easements to Gillespie over the West Shore Strip, and for prescriptive easements over the West Shore Strip. Dring and Asaro filed a counterclaim against Gillespie for trespassing over the West Shore Strip, seeking damages and other appropriate relief. Dring and Asaro were granted summary judgment in their favor on the claims filed by Gillespie for breach of contract and prescriptive easements. However, after the grant of summary judgment, Dring and Asaro still had a counterclaim pending against Gillespie for trespass. The parties entered into a court-approved stipulation wherein Dring and Asaro voluntarily dismissed their trespass counterclaim without prejudice. That supposed dismissal with prejudice, however, effectively acted as an adjudication on the merits and a dismissal *with* prejudice as a result of the application of the Federal Rules of Civil Procedure. Rule 41 of the Federal Rules, which covers voluntary dismissal of actions, provides that "the plaintiff may

13

dismiss an action without court order by filing a stipulation of dismissal signed by all parties . . ." but also states that the effect of such dismissal, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim,. . . operates as an adjudication on the merits." FRCP 41. The situation contemplated by Rule 41 is the exact situation present in the current matter. As Dring and Asaro had filed a trespass counterclaim seeking damages and ejection from the West Shore Strip against Gillespie in the prior litigation and said counterclaim was dismissed with prejudice in the prior action (*see* Exhibit "A"), the stipulation and dismissal in the current matter does not operate solely as a "compromise or settlement", but operates as an actual adjudication on the merits of the trespass action In other words, the previous litigation was between the same parties, dealt with the same claim, and the dismissal in the current suit now operates as an actual adjudication on the merits. *See* Exhibit "B" and FRCP 41. Thus, Dring and Asaro did not "prevail" on the sole claim raised by them. As a result, with an adjudication on the merits in Gillespie's favor on Dring and Asaro's counterclaim, and summary judgment in Dring and Asaro's favor on Gillespie's claims, the determination regarding which of the two parties should be considered the "prevailing party" for purposes of attorneys' fees becomes less clear. Both parties in effect prevailed in successfully defending the claims against them.

14

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 112 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 20 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 20 of 35

It is, therefore, our position that Dring and Asaro are not the prevailing parties

in this matter. Alternatively, if this Court determines that Dring and Asaro are the

prevailing parties, their right to relief should be limited, an issue which will be

discussed further below.

**B. IN THE EVENT THE COURT DETERMINES THAT DRING AND ASARO ARE THE PREVAILING PARTIES UNDER THE SETTLEMENT AGREEMENT, THE FEES CLAIMED BY THEM IN THEIR APPLICATION FOR ATTORNEYS' FEES ARE NOT REASONABLE AND SHOULD BE LIMITED.**

Should the Court determine that Dring and Asaro are the prevailing parties in

this matter, their relief should be limited for several reasons.

As stated previously, the party seeking attorney's fees has the burden to

prove that its request for attorney's fees is reasonable. *Rode v. Dellarciprete*, 892

F.2d 1177, 1183 (3d Cir. 1990). The Court should look to the relief rewarded in the

action in comparison to the relief requested, in determining whether the fee is

reasonable. In *Souryavong v. Lackawanna County*, 159 F. Supp. 3d 514 (M.D. Pa.

2016, Caputo, J.), the Court looked to the results obtained, noting that "if a plaintiff

has achieved only partial or limited success, the product of hours reasonably

expended on the litigation as a whole times a reasonably hourly rate may be an

excessive amount." *Id.* In explaining the possibility of an excessive fee recovery,

the Court emphasized that the degree of success obtained is the most critical factor.

*Id.* As discussed previously, as a result of the application of Rule 41 of the Federal

15

Rules of Civil Procedure, there was an adjudication on the merits in Gillespie's favor on Dring and Asaro's trespass claim, and summary judgment granted in Dring and Asaro's favor on Gillespie's breach of contract and prescriptive easement claims. Therefore, there is no clear "winner" of the suit; both parties obtained some relief which was sought by them, in effect both successfully defending claims against them. To put this matter into context, the instant suit revolves around the West Shore Strip, which was created through deed reservations over one hundred (100) years ago. Dring and Asaro have not put the West Shore Strip to apparent use. Twice in litigation, Dring and Asaro sought to prevent Gillespie from utilizing the West Shore Strip and twice in litigation, Dring and Asaro dismissed their claims. Thus, in effect, Dring and Asaro did not prevail on the sole stake they had in the suit(s). However, even if Dring and Asaro constitute prevailing parties, their relief should be limited because they did not prevail on all claims and all issues, and requesting attorneys' fees for the entirety of the time expended on the matter would result in an excessive, and unreasonable amount.

Further, it is our position that not all of the billable hours claimed in the Petitioners' Application for Attorneys' Fees relate to the instant suit, and thus are not reasonable. To meet the burden of establishing a reasonable fee, the fee petitioner must submit evidence supporting the hours worked and rates claimed.

16

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 114 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 22 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 22 of 35

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In filing their

Application for Attorneys' Fees, Dring and Asaro filed three hundred thirty (330)

pages of documents relating to their claim for attorneys' fees. However, several of

the invoices detail fees relating to matters unrelated to the instant suit. By way of

example, several of the invoices detail fees relating to Culotta, Cardinal Lane,

Swingle, and Lehutsky, and the preparation of a title report by R. Anthony

Waldron, Esq. These fees relate to an unrelated quiet title action for the Cardinal

Lane property filed in Wayne County, Pennsylvania as well as an unrelated legal

malpractice action filed in Wayne County, Pennsylvania. These legal fees should

not be recoverable in a separate federal court action. However, even if these legal

fees do relate to the instant suit, it is difficult to determine whether they should be

recoverable in the ALO litigation or the Gillespie litigation, or split between the

suits in some other manner. Similarly, as the Court is aware, there is substantial

overlap between the instant matter and the ALO litigation. Some of the fees may

relate to both actions or may otherwise need further distinction and clarification.

By way of example, in both suits, there was a Motion filed by ALO/Gillespie for

Election of Remedies. Time expended for work on this issue is indicated on the

invoices, but is unclear whether the invoices indicate time worked on the Gillespie

or ALO matter, or whether the time should be reduced in some other manner

because of the overlap of the issue. Also importantly, for determining the

17

reasonableness of the fees claimed, Dring and Asaro contend that they have redacted information in the bills and invoices unrelated to the current litigation. It is unclear to Gillespie whether all of the current unredacted bills relate solely to the Gillespie matter or whether they relate to the ALO matter, which is impossible to discern without access to the full, unredacted documentation. Further, there are several other matters billed which, upon information and belief, do not reflect work which is related to the instant matter, including, but not limited to, the Grodack litigation, fees relating to individuals who reside on the West Shore Strip who may have entered into agreements with Dring and Asaro, including Barone and Gardner, and the Keystone Landfill Condemnation.

Additionally, there were two (2) groups of attorneys working on the litigation, Garry Taroli, Esq. and Robert N. Gawlas, Jr., Esq. from the law firm of Rosenn, Jenkins and Greenwald in Wilkes-Barre, Pennsylvania, and Michael Profita, Esq., a New Jersey attorney who represents Dring and Asaro's father in other matters. It is unclear why that Dring and Asaro retained counsel from two (2) separate firms and states to handle matters in the Middle District of Pennsylvania. Regardless, the work performed by the attorneys may have been unnecessary and duplicative. Further, Attorney Profita's billing rate at $425.00 per hour is clearly an excessive rate for the Middle District of Pennsylvania/the Wayne County, Pennsylvania

region, made obvious through the fact that Attorney Taroli and Attorney Gawlas's billing rates in the litigation are at least $150.00 less per hour.

Lastly, the Court should address the actual factual background of the matters in determining the reasonableness of the fee. In the ALO litigation, the Court found that ALO anticipatorily breached the Settlement Agreement through its inability to convey an easement over Cardinal Lane to Dring and Asaro.[1] Further, Dring and Asaro did not subdivide the West Shore Strip, and refused to transfer the easements over the West Shore Strip to Gillespie. Accordingly, Gillespie sued Dring and Asaro for breach of the contract, for the failure to convey the easements, and for prescriptive easements over the West Shore Strip. Gillespie was the sole party not at fault and the sole party which performed all that was required of them under the Settlement Agreement. Fairness dictates that the attorneys' fees due to Dring and Asaro, if any, should be reduced in an equitable manner to compensate for the fact that Gillespie is an innocent party in the litigation.

---

[1] The Court held that its holding relating to repudiation was being analyzed for the sole purpose of determining whether Dring and Asaro's performance would have been futile, as Dring and Asaro did not maintain a claim for anticipatory breach in the Amended Complaint. *See* Dring v. ALO, 3:15-cv-00478-ARC at Document 83 at 14.

19

**C. THIS HONORABLE COURT SHOULD STAY THE DETERMINATION AS TO WHETHER DRING AND ASARO ARE ENTITLED ATTORNEYS' FEES UNTIL THE RESOLUTION OF THE APPEALS AND SHOULD CONSOLIDATE THE DETERMINATION OF THE ENTITLEMENT TO ATTORNEYS' FEES IN BOTH THE INSTANT MATTER AND THE ALO LITIGATION INTO ONE PROCEEDING.**

A motion for counsel fees is an ancillary matter separate from the appeal of the trial court's judgment in the case. *See White v. New Hampshire*, 455 U.S. 445, 449-50 (1982); *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.2d 1, 48 (Pa. 2011); *Old Forge School District v. Highmark Inc.*, 924 A.2d 1205, 1211 (Pa. 2007). The filing of an appeal does not divest the trial court of jurisdiction over such a motion for counsel fees. *See id.*; *West v. Keve*, 721 F.2d 91, 95 n. 5 (3d Cir. 1983). If an appeal on the merits of the case is taken, the district court may rule on the claim for fees, defer its ruling on the motion, or may deny the motion, without prejudice. *See id.*, *Christian v. Honeywell Retirement Benefit Plan*, 2014 U.S. Dist. LEXIS 57063 (E.D. P. 2014). For example, in *Local 827 IBEW v. Verizon N.J., Inc.*, 2006 U.S. Dist. LEXIS 56453 at *12-13 (D.N.J. 2006), the Court denied the plaintiff's motion for attorney's fees in light of the pending appeal of the underlying summary judgment decision. The Court stated that "[w]hile there is no mandate that a court wait to award attorney's fees if an appeal is pending, the situation at hand dictates that it is best to wait. Other courts have reached a similar conclusion. If this Court were to grant Plaintiff's instant application, the parties would be

forced to revisit the issue if the Third Circuit reverses the [order at issue on appeal]." *Id.*

The Court's Order granting summary judgment to Dring and Asaro on Gillespie's claims is currently pending on appeal to the Third Circuit by Gillespie. Further, as this Court is aware, there is another appeal pending in the Third Circuit in the ALO litigation. The ALO litigation is similar, but distinct, to the current litigation, as it deals with different issues, different sections of the Settlement Agreement and different obligations which were allegedly breached by the parties. In the ALO litigation, ALO was granted summary judgment in its favor, and Dring and Asaro appealed the Court's Order to the Third Circuit. The determination as to attorney's fees in the ALO litigation is currently stayed pending the resolution of the appeal, as this Court ordered that the parties have until fourteen (14) days after the final judgment from the Third Circuit to file an application for attorneys' fees.

The Court in the instant matter should likewise stay the determination of the entitlement to attorneys' fees until after the Gillespie appeal is final. The definition of "prevailing party" under the Settlement Agreement should entail the party who is ultimately successful on the merits of his claim(s) after the resolution of the appeals. This would be beneficial not only to the parties, to have finality in the determination of the matter, but it would also be efficient and economical for the Court to stay such decisions until the pending appeal has been decided. Thus, the

21

Court will not have to revisit or adjust its decision regarding the award of attorneys' fees to the parties in the event the Third Circuit does not affirm the decision of this Court. It is thus our position that this Court should stay the determination regarding attorneys' fees until the instant litigation is through the appellate process.

Additionally, to maximize judicial economy, the determination as to attorneys' fees in the instant matter and the ALO litigation should be consolidated into one proceeding before the Court. As stated previously, the two actions are similar but distinct. The actions are interrelated, in that they both arise out of issues relating to the Settlement Agreement, but both actions address different issues, claims and different sections of the Settlement Agreement, and deal with different parties. By consolidating the decisions relating to attorneys' fees, it will be easier for the Court to determine, with all the evidence before it, which legal fees can reasonably be paid for which suit and to which party, rather than viewing the evidence in a piecemeal fashion, thus wasting judicial resources.

**D. <u>DRING AND ASARO SHOULD NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES AS SUCH FEES WERE NOT PAID BY THEM, BUT RATHER WERE PAID BY THEIR FATHER, JOSEPH ASARO.</u>**

It can be argued that the intent for attorneys' fees clauses in contracts is to make the successful party whole. *See e.g. Polselli v. Nationwide Mut. Fire & Ins. Co.*, 126 F.3d 524, 531-32 (3d Cir. 1997) (holding that an award of attorneys' fees

under statutory authorization is meant to compensate the plaintiff for having to pay an attorney to obtain relief and make the successful plaintiff whole).

While the Settlement Agreement provides that the prevailing party shall be entitled to recover reasonable attorneys' fees from the other party, the Settlement Agreement did not address such recovery in a situation comparable to the instant action. The invoices from Rosen, Jenkins & Greenwald indicate that the client is Joseph Asaro (and his wife Elaine) and the person to whom the invoices were addressed to, and paid by, is Joseph Asaro. Additionally, while the invoices of Michael Profita, Esq. list Dring and Asaro as the client, the reconstructed invoice attached to Dring and Asaro's fee Application at Exhibit "C" indicates in several places that the client is "JA" or "J. Asaro". It further appears that virtually all of the communications with counsel were by Joseph Asaro, not Dring and Asaro. Joseph Asaro is not a party to the instant action, nor was he a party to the Settlement Agreement, which was executed by three separate groups: ALO, Gillespie and Dring and Asaro. It does not appear of record, including in Dring and Asaro's affidavits relative to their Application for Attorneys' Fees, that the payment of attorneys' fees by their "agent", Joseph Asaro, were paid out of their own funds. Instead, per the invoices, it appears that all payment of attorneys' fees in the Gillespie litigation were paid solely by Joseph Asaro. As Dring and Asaro did not make payment of the legal fees, nor does the evidence demonstrate that

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 121 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 29 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 29 of 35

they are required to repay Joseph Asaro for such legal fees, the recovery of such
fees would result in a windfall to Dring and Asaro. The Settlement Agreement was
certainly not intended to provide a windfall to a prevailing party. As a result, Dring
and Asaro should not be able to recover attorneys' fees under the Settlement
Agreement.

### E. DRING AND ASARO ARE NOT ENTITLED TO SUPPLEMENTAL ATTORNEYS' FEES INCURRED IN THE LITIGATION OF THE APPLICATION FOR ATTORNEYS' FEES.

Federal law provides that the time expended by attorneys in obtaining a
reasonable fee under fee-shifting statutes is justifiably included in the attorneys'
fee application. *See Polselli*; *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d
Cir. 1978); *Public Interest Research Group of N.J., Inc. v. Windfall*, 51 F.3d 1179,
1190 (3d Cir. 1995). Pennsylvania courts have carved out an exception to this rule,
holding that an attorney may not recover fees for time spent preparing and
litigating a fee petition when such efforts are directed solely to the benefit of the
attorney and not the client. *See Weidner v. Workmen's Comp. Appeal Bd.*, 442
A.2d 242, 245 (Pa. 1982). In *Weidner*, the client had a contingent fee arrangement
with his attorney, whereby there would be no fee payable to the attorney if the
client did not receive an award. *Id.* The attorney successfully resisted suspension of
the client's benefits but there was no additional award and thus no fee payable to
the attorney. *Id.* The attorney then pursued statutory fees under the Workmen's

Compensation Act. *Id.* The client, however, had no interest in the fee litigation because the outcome of that litigation did not impact the client's obligation to pay his attorney. *Id.* As a result, the attorney was not entitled to recover fees for the time spent seeking attorneys' fees. *Id.; see also Allums v. Workmen's Comp. Appeal Bd.*, 532 A.2d 549, 551-52 (Pa. Cmwlth. Ct. 1987). The determination thus hinges on whether the client has a material interest in the fee litigation. *Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd.*, 659 A.2d 1067, 1070-71 (Pa. Cmwlth. Ct. 1995). The Third Circuit has held that "a client has a material interest in the outcome if the fee proceedings could affect the client's duty to pay her attorney." *Polselli*, 126 F.3d at 538.

In the current matter, all legal fees were paid not by Dring and Asaro, but rather were paid by their father, Joseph Asaro. There is no evidence of record that any legal fees remain to be paid. There is also no evidence of record indicating that Dring and Asaro have paid the legal fees out of their own funds, or that Joseph Asaro paid the legal fees for Dring and Asaro in this litigation with the expectation of repayment. Dring and Asaro thus have no material interest in the outcome of this fee proceeding, as the legal fees are already paid in full, not by themselves but by their father.

The "material interest" analysis above applies to cases involving fee-shifting statutes. It is not clear whether the same analysis applies to attorneys' fees under

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 123 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 31 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 31 of 35

contractual agreements, or whether legal fees incurred in litigating a fee petition are includable in the amount of attorneys' fees at all. Such a question may be resolved by analyzing the contractual language of the Settlement Agreement. Section 14 of the Settlement Agreement provides that "[t]he United States District Court for the Middle District of Pennsylvania shall have exclusive jurisdiction over any action or proceeding involving the interpretation or breach of this Agreement, and the parties hereto submit to the personal jurisdiction of such Court. The prevailing party in any such action shall be entitled to recover reasonable attorneys' fees from the other party." *See* Exhibit "A". The fact that the "prevailing party" is the person entitled to attorneys' fees under the Settlement Agreement lends credence to the argument that the attorneys' fees should be limited solely to the work performed up to the judgment or adjudication on the merits. The Settlement Agreement could have provided that the fees incurred in litigating the fee petition would also be recoverable, but instead it limited such recovery to the prevailing party in an action relating to the Settlement Agreement.

In light of these arguments, Dring and Asaro should not be able to recover supplemental attorneys' fees incurred in the litigation of their attorneys' fees petition.

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 124 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 32 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 32 of 35

F. **THIS COURT SHOULD HOLD A HEARING ON THE ISSUE OF ATTORNEYS' FEES IN THIS MATTER IF IT DOES NOT STAY THE DETERMINATION OF DRING AND ASARO'S ENTITLEMENT TO ATTORNEYS' FEES UNTIL AFTER THE APPEAL.**

In light of the foregoing issues, in the event that the Court does not stay the determination of the entitlement to attorneys' fees, Gillespie requests a hearing so that all factual issues regarding the attorneys' fees can be appropriately addressed by the parties. Factual testimony and evidence could help develop several issues relative to Dring and Asaro's claim for attorneys' fees, including the reasonableness of the fee, through the factors identified in *McMullen*, including the billing rates of the attorneys and the degree of success obtained. In summary, this matter is extremely complicated, with multiple complex issues involved, several attorneys across two (2) states, legal bills spanning over the course of four (4) years which may relate to not only the instant litigation but also to the ALO litigation and unrelated matters, and redaction throughout the legal bills submitted by Dring and Asaro to the Court. Through a hearing, the parties can address all issues in greater detail and likely with greater clarity than through briefing.

## IV. CONCLUSION

WHEREFORE, Gillespie respectfully requests the following relief:

(1) That Dring and Asaro's Application for Attorneys' Fees and Supplemental Attorneys' Fees be denied; OR

(2) Alternatively, that this Court stay determinations regarding attorneys' fees in

this matter and in the ALO litigation until the appeals are resolved, and

consolidate the determinations in both matters into one proceeding; OR

(3) Alternatively, that the Court hold a hearing to determine whether the

attorneys' fees requested in this matter are reasonable.

Respectfully submitted,

/s/Joseph A. O'Brien, Esq.
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103

/s/ Jenna Kraycer Tuzze, Esq.
Jenna Kraycer Tuzze, Esq.
Attorney I.D. No.: 324116
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: mjob@oprlaw.com
**ATTORNEYS FOR PLAINTIFFS**

Case 3:23-cv-01576-JFS   Document 60   Filed 07/15/24   Page 126 of 130
Case 3:23-cv-01576-JPW   Document 47-4   Filed 02/23/24   Page 34 of 35
Case 3:15-cv-00950-MWB   Document 128   Filed 08/01/19   Page 34 of 35

<u>**CERTIFICATE OF WORD COUNT**</u>

Pursuant to L.R.7.8(b)(2), the undersigned certifies that PLAINTIFFS',

MARJORIE M. GILLESPIE, ET AL., BRIEF IN OPPOSITION TO DEFENDANTS'

APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO

SECTION 14 OF THE SETTLEMENT AGREEMENT contains  6,603 words.


                              /s/Joseph A. O'Brien
                              Joseph A. O'Brien, Esq.

29

## CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify that on this date, I caused the foregoing BRIEF via the Court's ECF system on all counsel of record as authorized under Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for the Middle District of Pennsylvania. I further certify that all counsel of record in the case, but for the Plaintiff, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Rosenn, Jenkins and Greenwald, LLP
Robert N. Gawlas, Jr., Esq.
Garry S. Taroli, Esq.
15 South Franklin Street
Wilkes Barre, PA  18711-0075

Michael Profita, Esq.
Decotiss, FitzPatrick & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd., Suite 31
Teaneck, NJ 07666

/s/Joseph A. O'Brien, Esq.
Joseph A. O'Brien, Esq.

P:\O'BRIEN, JOE\ARIEL LAND OWNERS\Gillespie, et al vs. D&A-950\Pleadings\Brief in Opposition to Application for Attorneys Fees - 2019-8-1.docx

30

EXHIBIT "Y"

RIVER
PRICE &
RHODES
Attorneys at Law

1212 North Abington Road
P.O. Box 240
Clarks Summit, Pennsylvania 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Website: www.oprlaw.com

November 26, 2019

Dear Lake Residents:

In my litigation report of November 8, 2018, I provided you with a report as to the 5 lawsuits that have arisen out of the disputes between Ariel Land Owners and Lori Dring and Nancy Asaro and the West Shore Property Owners and Lori Dring and Nancy Asaro.

We met on June 29, 2019 at 10:00am at the St. Thomas More Catholic Church. The meeting was very spirited. I believe that we were able to answer all the good questions posed by Lake Ariel property owners.

The Court of Appeals has affirmed the judgment in favor of ALO and against Dring and Asaro which was entered by Judge Caputo in the United States District Court. The decision of the Court of Appeals is final and means that Dring and Asaro have no right of recovery against Ariel Land Owners. The parties, i.e. ALO and Dring and Asaro, have recently filed requests for counsel fees with the court. We expect (though can never be certain) that our request will be granted and theirs denied as we were the prevailing party in the litigation.

Dring/Asaro have now exhausted any chance for a recovery against ALO. ALO has successfully defended against the decades of litigation with Dring/Asaro. When in 2006 it became apparent to Dring/Asaro that ALO would never agree to allow Dring/Asaro to pursue their real estate development plans for the land along the channel and mud pond to include the full use of the waters of Lake Ariel, Dring/Asaro entered a written settlement agreement in which they agreed to transfer their ownership of the northern portion of the West Shore strip to ALO. Despite this agreement, Dring/Asaro breached the agreement when they never took the necessary steps to effectuate this transfer and then had the temerity to sue ALO for money damages. In other words, they breached the agreement but still sought to extract your money through ALO. Thankfully, the Court properly rejected these attempts by Dring/Asaro. This fight has been lengthy and costly. Still, the effort to preserve Lake Ariel as it has existed for years for the enjoyment of those who have homes along Lake Ariel has been successful and the attempts of Dring/Asaro to recover money from ALO have failed.

Unfortunately, and as we previously informed you, we were not so successful in the lawsuit instituted by Dring and Asaro against the West Shore Property Owners. In that case, Judge Caputo decided in favor of Dring and Asaro concluding that the West Shore Property Owners do not have rights to access Lake Ariel over the west shore strip. We have filed an appeal from that decision to the Third Circuit Court of Appeals and the appeal is pending though it is being held up on a procedural issue. Judge Caputo has also



awarded Dring and Asaro $282,000 in counsel fees and costs against the West Shore Property Owners. We will be filing an appeal from that counsel fee award and anticipate that it will be consolidated with the other appeal. We are hopeful of a successful result in the underlying appeal and, if the Court rules in favor of the West Shore Property Owners, the counsel fee award should be vacated.

The West Shore Property owners and other members of the Lake Ariel community have rightfully questioned on many occasions why this matter has not been settled. The response that I have made to those questions is that ALO has always been willing to settle the dispute and has made various reasonable proposals to Dring and Asaro to do so. Unfortunately, Dring and Asaro have always made unreasonable settlement demands. By way of example, a settlement demand from Dring and Asaro received recently was as follows:

1. ALO convey to Dring and Asaro, for no consideration, 25 unassessable lake rights.
2. The West Shore Property Owners/ALO pay to Dring and Asaro counsel fees of $500,000+.
3. ALO waive all claims for counsel fees from Dring and Asaro.
4. Each property owner on the west shore pay Dring and Asaro $40,000 (payment terms are available) for an easement across the west shore strip.
5. Dring and Asaro to convey the northerly part of the west shore strip to ALO subject to a prescriptive easement in favor of the property owners.
6. This settlement proposal is contingent upon acceptance by at least 50% of West Shore Property Owners.

We will continue to keep you informed as to all aspects of the litigation.

Very truly yours,

OLIVER, PRICE & RHODES

Joseph A. O'Brien, Esq.

JAOB/rs